FILED

MAR 30 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED

2022 MAR 30 P 2: 56

CLERK, US DISTRICT COURT
NO. DIST. OF CA.

paid

C22-02068

TSH

1  Tatyana Evgenievna Drevaleva

2  1099 Fillmore St., Apt. 5N, San Francisco, CA 94115

3  Cell 628-688-6167, tdrevaleva@gmail.com

4  Plaintiff in Pro Per

5  THE UNITED STATES DISTRICT COURT

6  FOR THE NORTHERN DISTRUCT OF CALIFORNIA

7

8  Tatyana Evgenievna. Drevaleva                )
                                                 )
9              *Plaintiff - Petitioner*          )
                                                 )
10                    vs.                         )
                                                 )
11  1) The Narayan Travelstead Professional      )
       Law Corporation                           )
12                                                )
13  2) Mr. Timothy C. Travelstead in his         )
       official and individual capacities as a   )
       President of the Narayan Travelstead      )
14     Professional Law Corporation              )
                                                 )
15  3) Ms. Julie L. Cho in her official and      )
       individual capacities as an Associate     )
16     Attorney of the Narayan Travelstead       )
       Professional Law Corporation              )
17                                                )
18  4) Alameda Health System                     )
                                                 )
19              *Defendants.*                     )
                                                 )
20                                                )
21                                                )
22                                                )
23                                                )
24                                                )
25                                                )
26                                                )
27                                                )
28                                                )

Complaint for Damages,

1) Deprivation me of the Protection by
   of the Eighth, the Thirteenth, and the
   Fourteenth Amendments (both the
   Substantive and the Procedural Due
   Process Clauses) to the U.S.
   Constitution, 42 U.S.C. § 1983;

2) Deprivation me of the Protection by
   the National Labor Relations Act (the
   NLRA) and the Labor Management
   Relation Act (the LMRA);
   42 U.S.C. § 1983;

3) Deprivation of my Civil Rights
   Because I am Russian. 42 U.S.C. §
   1981;

4) Civil Conspiracy that was Aimed to
   Deprive me of the Protection of the
   U.S. Constitution and Federal Laws,
   42 U.S.C. § 1985;

5) Fraud, Penal C. § 484; Civ. C. § 1572

6) Harassment, C.C.P. § 527.6

7) The Intentional Infliction of Emotional
   Distress.

8) The Intentional Interference with a

Complaint for Damages.

| | |
|---|---|
| 1 | )         Prospective Economic Advantage, |
| 2 | )  9)  Loss of Consortium |
| 3 | )  10) Violations of the Racketeer |
| 4 | )         Influenced and Corrupt Organizations |
| 5 | )         Act ("RICO"), 18 U.S.C. § 1962. |

1. Comes now Plaintiff Tatyana Evgenievna Drevaleva and submits a Complaint for Damages against the following Defendants:

1) The Narayan Travelstead Professional Law Corporation

2) Ms. Timothy Carl Travelstead in his both official and individual capacities as a President of the Narayan Travelstead Professional Law Corporation

3) Ms. Julie Lee Cho in her official and individual capacities as an Associate Attorney of the Narayan Travelstead Professional Law Corporation

4) The Alameda Health System

2. **Original Jurisdiction.** The U.S. District Court for the Northern District of California has a Federal question jurisdiction over my Complaint because multiple Federal statutes are involved.

3. **Supplemental Jurisdiction**. Because the U.S. District Court has an original jurisdiction over my Petition, the District Court also has Supplemental Jurisdiction over my State of California claims pursuant to 28 U.S. Code § 1367. Supplemental jurisdiction.

4. **Venue** is appropriate in this Court because the Alameda Health System and the Department of Industrial Relations are located at the Alameda County.

Complaint for Damages.

5. Administrative remedies are not required, see the California Labor Code Section 98.7, "(g) In the enforcement of this section, there is no requirement that an individual exhaust administrative remedies or procedures.

(*Amended by Stats. 2020, Ch. 344, Sec. 1. (AB 1947) Effective January 1, 2021.*)"

Because my underlying lawsuit No. 3:16-cv-07414-LB involved the California Labor Code Section 98.7, and because Attorneys Mr. Travelstead and Ms. Cho criminally conspired with the Alameda Health System, and because Attorneys Mr. Travelstead and Ms. Cho criminally prevented me from obtaining relief pursuant to Labor Code Section 98.7, I am not required to undergo the administrative remedies before filing this current lawsuit.

6. Plaintiff Tatyana Drevaleva is a former Part Time employee (a Monitor or a Telemetry Technician) of the Alameda Health System, a claimant at the California Department of Industrial Relations, the Division if Labor Standards Enforcement, and a Plaintiff in the lawsuit No. 3:16-cv-07414-LB *Drevaleva v. 1) Alameda Health System, 2) Department of Industrial Relations*.

7. **Related case** is No. 3:22-cv-01585-JCS *Drevaleva v. 1) Alameda Health System, 2) The California Department of Industrial Relations (the DIR.)*

8. For the purpose of this pleading, I will cite the Record in case No. 3:16-cv-07414-LB *Drevaleva v. 1) Alameda Health System and 2) Department of Industrial Relations*.

**Statement of Facts.**

9. On December 29, 2016, I filed an Original Complaint No. 3:16-cv-07414-LB *Drevaleva v. 1) Alameda Health System and 2) Department of Industrial Relations* at the U.S. District Court for the Northern District of California. I consented to the jurisdiction of Magistrate Judge Ms. Laurel Beeler. Together with my Original Complaint No. 3:16-cv-07414-LB, I filed an Application to Proceed *in forma pauperis* that Ms. Beeler granted.

10. Please. read my Original December 29, 2016 Complaint (**ER 07414, Vol. 1, pages 3-11**).

"I. Tatyana Drevaleva, am filing a lawsuit against both Alameda Health System and Department of Industrial Relations, the Retaliation Unit.

Complaint for Damages.

<u>Why I am filing this lawsuit</u>.

I was hired as a Monitor Technician by Alameda Health System. My starting day was April 1st, 2013. My job was to observe cardiac monitors. In the offer letter, I was hired for 8-hour shifts on a 0,8 FTE (part-time benefit eligible) status with applicable shift differentials such as 11% for evenings, 15.5% for nights & 5% for weekends (please, see enclosed Attachment 1 – Offer Letter).

When I was hired, I signed paper in Human resources that I agree to be represented by the Union. However, after my employment started, I was informed that my position of a Monitor Technician was not represented by the Union. All my questions about it remained unanswered. The managers of Step Down Unit where I worked refused to give me any explanation. They told me that the paper with signature was destroyed, so I couldn't obtain a copy of that paper. Therefore, I can't attach this document to my lawsuit.

After the initial orientation at Alameda Health System for a few weeks and working for 8 (eight) hour shifts, I was informed by the management that only 12 (twelve) hour shifts were available for Monitor Technicians. I was scheduled to work for three 12 hour shifts per week which is 36 (thirty six) hours per week. According to the policy of Alameda Health System, working for 36 hours a week is considered a full time employment with getting retirement and benefits such as retirement, vacation, educational leave, holiday and suck leave. I worked for 36 hours per week for over three months but I was still considered a part time employee, and I was not getting my retirement and the benefits listed above. Also, I was not getting promised shift differentials such as 11% for evenings, 15.5% for nights & 5% for weekends according to written policies of Alameda Health System.

While performing my duties as a Monitor Technician, I was entitled for breaks. According to written policies of Alameda Health System, I was entitled for three (3) fifteen (15) minute paid breaks and one (1) thirty (30) minute unpaid meal break. Moreover, because I worked with cardiac monitors constantly observing video display screens, I was entitled to 10(ten) minute breaks every hour. In reality, I got only 30 minute unpaid lunch break and 30 minute paid breaks when I worked with Charge Nurses Beverly, Kim and Vera. When I worked

Complaint for Damages.

with Charge Nurse Nidia, I got one 30 minute unpaid lunch break and three 15 minute paid breaks. However, no one Charge Nurse gave me 10 minute breaks every hour according to written policies of Alameda Health System.

I approached Manager of Step Down Unit Mr. Verrilien Clerve and asked him verbally about these issues. I asked Mr. Clerve to update my status to a status of a full-time employee because I was working full time. Mr. Clerve listened to me but never solved these issues. In August 2013, I approached new Director of Step Down Unit Mr. Gilbert Harding and I asked him verbally about the same issues. Mr. Harding promised to think about it. However, I was still considered as a part-time employee, and I was not getting shift differentials.

On September 5th, 2013, I sent a letter to Mr. Harding where I listed all these questions and asked him to answer them and upgrade my status to the status of a full-time employee (see Attachment 2. Please, also see Attachment 2/1 – printouts of selected pages of Alameda County Medical Center, Human Resources, Policy and Procedure Manual and Memorandum of Understanding between SEIU Local 1021 – General Chapter and the Alameda County Medical Center, January 1, 2013 to march 31, 2014).

Two days later, on September 7th, 2013, I was fired in twenty minutes after the beginning of my shift (please, see Attachment 3 – Termination Letter). In the Termination Letter, Mr. Harding said that my employment had been terminated due to discrepancies between acceptable employment standards and those I exhibited during my employment with Alameda Health System. I was totally at a loss. To my understanding, I did everything the best I could for Alameda health System and its patients and staff. When I asked Mr. Harding to give me examples of these alleged discrepancies, his answer was, "we are not talking about it today." So, He didn't give me any examples of what I did wrong.

I filed a claim with the Department of Industrial Relations in September 2013. My case number is 32741 Drevaleva v. Alameda Health System. Deputy of the Labor Commissioner Ms. Catherine Daly was assigned to work on my case. Due to my health issues, I went to Russia in 2014, and I communicated with Ms. Daly via email.

Complaint for Damages.

Alameda Health System misinformed Ms. Daly about the reasons of my termination. They said that I had been fired because my negligence seriously harmed the patient. It is a pure lie. I received a letter from Ms. Daly dated June 16, 2014 via email (please, see Attachment 4/1 – Ms. Daly's letter to me regarding the reasons of my termination). I wrote a letter to Ms. Daly dated June 18, 2014 (please, see attachment 4/2 – my letter to Catherine Daly dated June 18, 2014). I emailed it to her because I was in Russia and could not have submitted this letter in person in the USA. Alameda Health System didn't say what patient s/he was. I guess he was Mr. X (this is a fake name). I wrote about what happened with that patient. I wrote that I had shown the patient's EKG to one of the residents of Alameda Health System Dr. Rachmani who agreed with my interpretation. I reported about it to Mr. Harding. After the patient's death. Alameda Healgh System had three root cause analysis (RCA) meetings where the commission discussed what happened with that patient. At all three RCA meetings, I said that I had shown the patient's EKG to Dr. Rachmani who agreed with my interpretation. The incident with the patient happened in the ,idle of July (I don't remember the exact day but to my best knowledge it was the middle of July 2013). After the patient's death and three RCAs, I was allowed to perform my duties as a Monitor Technician, and I worked until September 7th. 2013.

I returned back to the United States in June 2016.I submitted the same letter to Ms. Daly's office in San Francisco in early August 2016.

<u>The reaction of the Department of Industrial relations to my retaliation claim.</u>

Deputy of the Labor Commissioner Ms. Daly expressed total negligence to my case. On June 16, 2014, she sent me a letter saying that my employment had been terminated due to my negligence to the patient. She gave me only two days to respond.1 She asked me to provide her with a list of witnesses. I responded on June 18, 2014.Despite I sent her my detailed explanation and a list of witnesses, she never contacted all these witnesses and she didn't obtain their

---

1 In my December 29,2016 Complaint No. 3:16-cv-07414-LB, I mistakenly asserted that Ms. Daly gave me only two days to respond to the June 16, 2014 letter, It was my mistake. Ms. Daly gave me over a month to respond to her June 16, 2014 letter. But I responded within two days.

Complaint for Damages.

statements. She ignored my case for another more than two years. On August 25, 2016, Ms. Daly attempted to force me to withdraw my case. She emailed me a withdrawal form which she demanded me to sign (please, see Attachment 5). In this form, it was written that I was going to withdraw my case on my own free will. This statement is a false. I filed a case with the Department of Industrial Relations in hope to find truth and justice but Ms. Daly ignored anything I said.In August 2016, I submitted a letter to the Department of Industrial Relations where I asked to re-assign my case to another Deputy and where I demanded to set a hearing date(please, see Attachment 6). However, that letter remained unanswered. I started to communicate with Ms. Joan Healy who is a Supervisor. I sent her an email dated December 12, 2016 where I asked when my case will be processed and finished (please, see Attachment 7). In her email dated December 19, 2016, Ms. Healy informed me about her intention to dismiss my case. The reason she listed was my evidence was not sufficient for the retaliation case. This is not true. Neither Ms. Daly nor Ms. Healy never made any attempt to contact any of the witnesses whom I listed in my letters dated June 18, 2014 and August 6, 2016. Also, Ms. Healy accused me in not coming to my alleged appointment with Ms. Daly in September 13, 2016 which is a lie because I was never invited to come to that appointment (please, see Attachment 8). I asked Ms. Healy to send me a proof that I was invited to an appointment with Ms. Daly on September 13, 2016. I never got Ms. Healy's answer on this question. However, Ms. Healy informed me that I had a right to file a lawsuit which I am doing now. I am filing this lawsuit because I couldn't find truth and justice through the Department of Industrial Relations for over three years.

     <u>The reasons of my termination from my point of view</u>.

     I was fired by Alameda Health System due to retaliation because I had requested to upgrade my status from a part-time employee to a full-time employee. Alameda health System is lying that I was fired because my negligence seriously harmed the patient.I didn't demonstrate any negligence to that patient, and a Medical Doctor agreed with my EKG interpretation.

     In their communication with Ms. Daly, Alameda Health System said that I had been fired due to neglgence I demonstrated toward the patient. This is a pure lie. Below, I am listing evidence why this statement is a lie.

Complaint for Damages.

<u>Evidence that Alameda Health System is lying about the reasons of my termination</u>.

Let is suggest that I exhibited negligence and really seriously harmed the patient. At this case (if it was REALLY my fault) I would be immediately fired for a cause. In this case:

1) After the incident with the patient, I would not be allowed to perform my duties as a Monitor Technician at Alameda Health System. It means, I would be terminated for a cause immediately after the incident. Let us see the facts. The incident with the patient happened approximately in the middle of July 2013. I was fired on September 7th, 2013. I actually performed my duties as a Monitor Technician observing cardiac monitors from the middle of July to the beginning of September. It is the discrepancy #1 that Alameda Health System (later AHS) exhibited.

2) If I were fired for a cause, Mr. Harding would write it in his termination letter. However, he didn't write it down and he didn't tell me verbally on the day of the termination. This is the discrepancy #2 that AHS exhibited.

3) If I were fired for a cause, I would not be eligible to get unemployment insurance benefits. However, I was actually getting unemployment insurance benefits. This is a discrepancy #3 that AHS exhibited.

4) If I were fired for a cause, my CCT (Certified Cardiographic Technician) certificate would be immediately suspended or revoked as well as my EKG Technician certificate/ However. my CCT and EKG Technician certificates were valid after my termination. My EKG Technician certificate is still valid, and my CCT certificate is expired in 2015 because I didn't pay for the renewal on time. This is the discrepancy #4 that AHS exhibited.

5) If I were fired for a cause. I would not be eligible for another employment as an EKG or Monitor Technician at any other hospital. Actually, after my termination from AHS I was hired for the position of an EKG technician at Children's Hospital in Oakland through the H.E.L.P. staffing agency. I actually got a job offer after getting fully checked by the agency. I was going to accept that job offer but I decided to go to Russia. Children's Hospital decided to hire another EKG Technician only because I

Complaint for Damages.

said that I would go to Russia (please, see Attachments 9/1 and 9/2). This is the discrepancy #5 that AHS exhibited.

6) If I were fired for a cause, I would not get an invitation for a job interview from one of the hospitals of the veterans Affairs system. Usually, they invite candidates for a job interview after they fully check the candidate. When I was in Russia, I got an invitation for a job interview from one of the hospitals of the Veterans Affairs system. This is the discrepancy #6 that AHS exhibited.

7) If I were fired for a cause, I would never get a good Letter of Reference from the Assistant manager of Alameda Health System after the incident with the patient. Actually, I got a good Letter of Reference dated August 21st, 2013 (after the incident with the patient) from Assistant manager Mr. Masangkay (please, see Attachment 10). This is the discrepancy #7 that AHS exhibited.

8) If there was really my fault in wrongfully interpreting the patient's EKG, a medical doctor would never agree with my interpretation. When the incident was happening, I showed the patient's EKG to one of the residents of Alameda health System Dr. Rachmani. I explained to him what was going on with the patient and what my EKG interpretation was. Dr. Rachmani agreed with my interpretation. I reported it to the Unit Manager. After the incident, we had three root cause analysis meetings where we discussed in detail what happened. At every meeting, I said that I had showed the patient's EKG to Dr. Rachmani who agreed with my interpretation. So, Alameda health System can not claim that I exhibited negligence towards the patient. This is the discrepancy #8 that AHS exhibited.

Summary.

I know that Alameda Health System retaliated and fired me for my desire to become a full-time employee while actually working full time. Alameda Health System lied that I had been fired due to my negligence to the patient. This is not true, and I listed eight reasons why it is not true.

Complaint for Damages.

I didn't express any negligence to any patient. I showed patient X's EKG to Dr. Rachmani who agreed with my interpretation. I said it at all three RCA meetings, and also I reported it to Mr. Harding.

The Department of Industrial Relations believed Alameda Health System and didn't believe me. Ms. Daly wanted me to withdraw my case, and Ms. Healy wanted to dismiss my case. I was informed that I had a right to file a lawsuit which I am doing now. I am fighting for my good name. For all my career working as an EKG/Monitor Technician, I've done the best I could for patients, hospitals and my co-workers. Now, I am in the situation wjen every new potential employer calls Alameda Health System, asks about the reasons of my termination, hears the lie that I expressed negligence toward the patient, anf refuses to hire me. After returning back to the United States from Russia, I already had two job onterviews – with Kaiser Permanente in Modesto and with Veterans Affairs Medical Center in San Francisco. I was not hired in Modesto, and Veterans Affairs Medical Center keeps silence about the hiring decision despite I worked for them in 2012 and 2013 and my Performance Evaluation was outstanding and exceptional.

I am asking the court:

1) To overturn the decision of Alameda Health System about firing me and reinstate me to work as a Monitor Technician,

2) To make me a full-time employee

3) To pay all salaries and benefits for all the time that I haven't been working as a Monitor Technican at Alameda health System since September 7th, 2013 until the decision of the Court

4) Make Alameda Health System give me written apologies about firing me so I could show this letter to any potential employer and get hired according to my qualifications and experience

5) Make Alameda Health System pay me moral compensation 5 (five) million U.S. dollars – for not working due to retaliation and mixing my good namewith dirt, for slandering me in front of other potential employers. for delaying my career. for

Complaint for Damages.

withdrawing health insurance from me and therefore forcing me to go to Russia to solve my medical issues, for depriving me the opportunitu to have my own house and car, for depriving me the opportunity to study and get an advanced degreek for pushing me into a deep debt to U.S. banks, etc.

6) Make the Department of Industrial Relations pay me moral compensation 3 (three) million U.S. dollars – one million for each year of processing my case, not paying attention to my statements and the attempt to make me withdraw my case.

I am fighting for my good name. Throughout all my career working in U.S. hospitals I've expressed the best effort for patients, hospitals and my co-workers. I want to get hired, and I want to develop my career. Alameda Health System together with the Department of Industrial Relations delayed my development and career. This is why I want them to pay moral compensation that I determined.

I believe in Justice. I believe that the court will make a favorable decision for me.

Respectfully,

Tatyana Drevaleva."

11. On January 10, 2017, Clerk of the U.S. District Court for the Northern District of California Ms. Felicia Reloba issued a Summons (Doc. No. 5, page 1) to Defendants as follows:

1) Alameda Health System, 15400 Foothill Blvd., San Leandro, CA 94578

2) Department of Industrial Relations: 455 Golden Gate Ave., 10th Floor, San Francisco, CA 94102

12. On January 17, 2017, the U.S. Marshals Service acknowledged a receipt of a Summons to Defendant the Alameda Health System at the following address (**ER 07414 Vol. 1, page 86**) 15400 Foothill Blvd., San Leandro, CA 94578.

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

**SERVE AT** Alameda Health System

ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)

15400 Foothill Blvd., San Leandro, CA 94578

Complaint for Damages.

13. On January 27, 2017, the U.S. Marshals Service returned the Summons to Defendant the Alameda Health System executed at the following address (**ER 07414 Vol. 1, page 90**):

"Vanessa Nushaiwat,

Highland Hospital, Executive Offices, 3rd Floor, 1411 E. 31st, Oakland, CA.

1/23/17 – Endeavor. Told to serve Highland Hosp. 1 HR, 25 miles."

| Name and title of individual served (if not shown above) VANESSA NUSHAIWAT | | | | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode | | |
|---|---|---|---|---|---|---|
| Address (complete only if different than shown above) HIGHLAND HOSPITAL EXECUTIVE OFFICES, 3rd FLOOR 1411 E. 31st OAKLAND, CA | | | | Date 1/25/17 | Time 8:56 | ☐ am ☐ pm |
| | | | | Signature of U.S. Marshal or Deputy | | |
| Service Fee 130.00 | Total Mileage Charges including endeavors) 19.44 | Forwarding Fee | Total Charges 149.44 | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*) $0.00 | |
| REMARKS: 1/23/17 - ENDEAVOR. TOLD TO SERVE @ HIGHLAND HOSP. 1 HR. 25miles | | | | | | |

14. On February 15, 2017, Attorney Mr. Timothy Travelstead filed Consent for Magistrate Jurisdiction (**ER 07414 Vol. 1, page 143**) as follows:

"x Consent to Magistrate Judge Jurisdiction

February 14, 2017

Timothy C. Travelstead

Attorney for Defendant Alameda Health System."

15. In this Consent for Magistrate Jurisdiction, please, notice that there was no indication that:

1) Attorney Mr. Timothy C. Travelstead acted on behalf of the Narayan Travelstead Professional Law Corporation in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB

2) Defendant the Alameda Health System *itself* explicitly consented to be represented by the Narayan Travelstead Professional Law Corporation and by Attorney Mr. Timothy C. Travelstead in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB.

16. In approximately October 2020, I incidentally discovered that the Narayan Travelstead Professional Law Corporation (the NTPC) and its Attorneys Mr. Timothy

Complaint for Damages.

Travelstead, Ms. Julie Cho, Mr. Scott Ku, and Ms. Jenny Paquette unlawfully appeared on behalf of Defendant the Alameda Health System in multiple lawsuits at the U.S. District Court for the Northern District of California, at the U.S. Court of Appeals for the 9th Circuit, at the Superior Court of Alameda County, at the California Court of Appeal for the First District, at the California Supreme Court, and at the U.S. Supreme Court without obtaining Consent of Defendant the Alameda Health System for legal representation.

17. On February 15, 2017, the Narayan Travelstead Professional Law Corporation (the NTPC), its President Attorney at Law who is licensed to practice law in the State of California Mr. Timothy Carl Travelstead, and Attorney at Law who is currently licensed to practice law in the State of California Ms. Julie L. Cho filed a document named DEFENDANT ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1), OR IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) OR MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e) (Doc. No. 19), (**ER 07414, Vol. 1, pages 144-157**.)

18. Prior to filing this Motion to Dismiss, the NTPC didn't file a Notice of Appearance in violation of the Civil Local Rules of the U.S. District Court for the Northern District of California, Rule 5-1(c)(2)(A), "**(A)** A Notice of Appearance must be e-filed whenever counsel joins a case."

19. Please, read the NTPC's February 15. 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB (**ER 07414, Vol. 1, page 146, lines 5-11**),

"1. Plaintiff has not met her burden to invoke federal question jurisdiction. (F.R.C.P 12(b)(1).);

2. Plaintiff's Complaint is barred by the statute of limitations and/or Plaintiff is improperly seeking judicial relief, and thus, the Complaint fails to state a claim upon which relief can be granted. (F.R.C.P. 12(b)(6).);

3. Alternatively, AHS moves for a more definite statement so that AHS may properly respond. (F.R.C.P. 12(e).)."

Complaint for Damages.

20. Further, Mr. Travelstead wrote (**ER 07414 Vol. 1, page 148, lines 5-17**), "**II. FACTUAL SUMMARY**

Plaintiff filed her Complaint on December 29, 2016, in pro per, without any allegations to invoke subject matter jurisdiction in federal court. Plaintiff alleges she was hired as a Monitor Technician at AHS on April 1, 2013. (Plaintiff's Complaint, p. 2.) She alleges she was a part-time employee but should have been considered a full-time employee, because she worked three 12 hour shifts per week which qualified her to be a full-time employee. (Id.) She also alleges she was not given 10 minute breaks every hour pursuant to the written policies of AHS. (Plaintiff's Complaint, p. 3.) After sending a letter to the Director in her department addressing the issues, Plaintiff alleges she was terminated in retaliation on September 7, 2013. (Plaintiff's Complaint, pgs. 3, 6.) Plaintiff filed a claim with the Department of Industrial Relations in September 2013. (Plaintiff's Complaint, p. 4.) The Deputy of Labor Commissioner dismissed her case, because there was insufficient evidence to establish retaliation. (Plaintiff's Complaint, p. 5; see also Plaintiff's Attachment 8.)"

21. Further, Mr. Travelstead argued that the District Court didn't have a subject-matter jurisdiction over my Original December 29, 2016 Complaint, see (**ER 07414 Vol. 1, from page 150, line 27 to page 153, line 21**). "Here, Plaintiff only alleges this Court has jurisdiction "over this complaint because it rises under the law of the United States." (Complaint, p.1, ¶ 1.) Plaintiff's Complaint is completely devoid of any other allegation or inference that this case involves a federal claim. To the contrary, Plaintiff alleges she filed a complaint regarding her termination with the California Department of Industrial Relations which handles complaints of California Labor Code violations. (Complaint, p.4.) In California, an employee's wage rights are closely regulated by the Labor Code. *Cuadra v. Millan*, 17 Cal.4th 855, 858 (1998). Plaintiff's claims of being denied full compensation and insufficient breaks are matters prescribed by California Labor Code. See e.g.. California Labor Code §§ 226.7, 515 and 98.6.

Plaintiff's Complaint does not allege any federal laws or claims. Moreover, the allegations do not suggest any claims under the federal Fair Labor Standards Act. In general, the Fair Labor Standards Act sets a minimum hourly wage and establishes the formula for overtime

Complaint for Damages.

pay. 29 U.S. Code Chapter 8, §§ 201-219. The Fair Labor Standards Act does not prescribe matters such as meal or break requirements for employees. Accordingly, Plaintiff has failed to meet her burden to establish a proper basis for the Court to assert subject matter jurisdiction over this action, and the Court should dismiss Plaintiff's Complaint.

## C. PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.

In the alternative, AHS moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). It is apparent from Plaintiff's allegations that her action is barred by the statute of limitations and by her initial choice of administrative relief remedy.

### 1. Plaintiff's Action is Barred by the Statute of Limitations.

Where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim lies. The complaint fails to state a claim because the action is time-barred. *Frame v. City of Arlington*, 657 F.3d 215, 239-240 (5th Cir. 2011); *Von Saher v. Norton Simon Museum of Art at Pasaden*, 592 F.3d 954, 969 (9th Cir. 2010).

Here, although Plaintiff does not allege a cause of action and AHS is forced to speculate as to the causes of action Plaintiff may be alleging, it is apparent that any plausible any cause of action Plaintiff can bring is barred by the statute of limitations. Plaintiff claims she was she was compensated as a part-time employee but should have been compensated as a full-time employee, and was not given 10 minute breaks every hour pursuant to the written policies of AHS. (Plaintiff's Complaint, pgs. 2-3.) Plaintiff alleges she was terminated in retaliation after she complained about these issues to the Director in her department. (Plaintiff's Complaint, p. 6.) Those allegations appear to assert violations of Labor Code sections 98.6 [prohibiting retaliation for making complaint about unpaid wages] and 6310 [prohibiting retaliation for making complaint about employee health and safety issues].

The time for Plaintiff to bring an action for Labor Code violations or wrongful termination in retaliation for Labor Code violations has passed. The statute of limitations to bring

Complaint for Damages.

a suit for wage liabilities created by statute, including Labor Code violations, is three years. (California Code of Civil Procedure § 338(a); *Cuadra v. Millan*, 17 Cal.4th 855, 859 (1998). The statute of limitations for wrongful termination based on a Labor Code violation is two years. (California Code of Civil Procedure § 335.1) Plaintiff alleges she was terminated from her employment at AHS on September 7, 2013. (Plaintiff's Complaint, p. 3.) Plaintiff filed this lawsuit on December 29, 2016, more than 3 years after her termination from AHS. The statute of limitations to bring a suit for Labor Code violations or for wrongful termination in retaliation for Labor Code violations has passed, and Plaintiff's Complaint should be dismissed for failure to state a claim."

22. Please, take a Judicial Notice that in the February 15, 2017 Motion to Dismiss the December 29, 2016 Complaint No. 3:16-cv-07414-LB the NTPC and Mr. Travelstead didn't mention the HSC § 101850.

23. Please, notice that the NTPC's February 15, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB was not accompanied by a Declaration that was signed by an Officer of the Alameda Health System who would declare under the penalty of perjury and under both the Federal laws and the laws of the State of California that:

1) The AHS received my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB

2) The AHS explicitly consented to be represented by the Narayan Travelstead Professional Law Corporation in my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB

3) The AHS provided the NTPC with the truthful material facts of the case

4) The AHS provided the NTPC with the documents that are related to my employment at the AHS from April 01 to September 07, 2013, with the documents that are related to my performance at the AHS, and with the documents that are related to the termination of my employment on September 07, 2013

Complaint for Damages.

5) Everything the NTPC and Mr. Travelstead wrote in the February 15, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB was a true and genuine point of view of the Alameda Health System

6) Everything the NTPC and Mr. Travelstead wrote in the February 15, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB was true and correct.

24. Therefore, the NTPC's (not the AHS's) February 15, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB violated 28 U.S.C. § 1746. Therefore, the NTPC's (not the AHS's) February 15, 2017 Motion to Dismiss was hearsay that was not supposed to be reviewed.

25. Also, the NTPC's (not the AHS's) February 15, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB was not accompanied by the F.R.C.P. Rule 11(b) statement that would state that, by presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it – the NTPC and Mr. Travelstead would certify that to the best of Mr. Travelstead's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Complaint for Damages.

26. Therefore, the NTPC's (not the AHS's) February 15, 2017 Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB violated the F.R.C.P. Rule 11(b), and therefore this Motion was supposed to be dismissed in its entirety,

27. On February 26, 2017, I filed an Opposition to the AHS's Motion to Dismiss my Original December 28, 2016 Complaint (**ER 07414 Vol. 1, pages 198-209**),

**"I. STATEMENT OF FACTS**

On February 15, 2017 Defendant AHS moved for an Order dismissing the AHS as a defendant in this action for ONE of two reasons: 1) pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 2) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, Mr. Travelstead who is an outsourced attorney at law, thinks that my lawsuit is barred by the Statue of Limitations. As an alternative, AHS moves the Court for an Order granting AHS's Motion for more Definite Statement under the Federal Rule of Civil Procedure 12(e).

I strongly oppose these two reasons.

The reason #1 – I believe my case should be heard in a Federal Court because this court has subject-matter jurisdiction over my case according to both the U.S. Constitution, Art III, Sec 2 and 28 USC 1331.

The reason #2 - As a Plaintiff, I did NOT fail to state a claim upon which relief can be granted. Definitely, my lawsuit is NOT barred by the Statue of Limitations because I filed it during the period of investigation that was conducted by the Division of Labor Standards Enforcement of the Department of Industrial Relations.

I am ready to provide Mr. Travelstead with a more definite statement even though I believe that I explained everything in my initial lawsuit very clearly.

Reading Mr. Travelstead's Motion to Dismiss my lawsuit, I got the impression that this lawyer intentionally omitted a lot of important facts that I listed in my claim. I understand that Mr. Travelstead is getting paid big money for his attempt to defend AHS. I believe in Fair Justice, and I believe that Honorable Judge Laurel Beeler will make a decision based on real facts and not on attempts of lawyers to defend my retaliator for money.

Complaint for Damages.

## II. ARGUMENT

FACTUAL SUMMARY

AHS's statement.

Plaintiff filed her Complaint on December 29, 2016, in pro per, without any allegations to invoke subject matter jurisdiction in federal court. Plaintiff alleges she was hired as a Monitor Technician at AHS on April 1, 2013. (Plaintiff's Complaint, p. 2.) She alleges she was a parttime employee but should have been considered a full-time employee, because she worked three 12 hour shifts per week which qualified her to be a full-time employee. (Id.) She also alleges she was not given 10 minute breaks every hour pursuant to the written policies of AHS. (Plaintiff's Complaint, p. 3.) After sending a letter to the Director in her department addressing the issues, Plaintiff alleges she was terminated in retaliation on September 7, 2013. (Plaintiff's Complaint, pgs. 3, 6.) Plaintiff filed a claim with the Department of Industrial Relations in September 2013. (Plaintiff's Complaint, p. 4.) The Deputy of Labor Commissioner dismissed her case, because there was insufficient evidence to establish retaliation. (Plaintiff's Complaint, p. 5; see also Plaintiff's Attachment 8.)

My response.

I filed my lawsuit in a Federal Court because my claim includes Federal matters. In this Opposition, I will explain in detail what these matters are and what provisions of a Federal law AHS broke.

Yes, I was hired as a Monitor Technician at AHS on April 1st, 2013 for 32 (thirty two) hours per week which is considered a part-time position with benefits such as Medical, Dental, Vision, paid sick leave, paid vacation, life insurance. As a part-time employee, I was not entitled for retirement benefits and educational benefits for which full-time employees are eligible. As a part-time employee, I paid more money for my health insurance that I would pay if I were officially a full-time employee.

The list of issues that Mr. Travelstead intentionally omitted:

Complaint for Damages.

1) In my Offer Letter, I was promised to work for four 8 (eight) hour shifts per week which is 32 (thirty two) hours a week. It is considered a part-time position. I was promised to work evening shifts.

2) Before I got hired, I was promised shift differentials such as 11% for evenings, 15.5% for nights & 5% for weekends (Attachment 1 – Offer Letter). After I started my employment, I NEVER got these promised payments additionally to my base salary. I worked night shifts and occasionally weekends.

3) Before I started working for AHS, I signed a document that I agree to be represented by the Union. Unfortunately, after my employment started, I was informed that my position of a Monitor Technician is NOT represented by the Union. My former Manager Verrilien Clerve (if I remember his last name correctly) informed me that the document with my signature was shredded. I asked a lot of questions why the Human Resources department destroyed that paper with my signature and why I was cheated in this matter. I never received any answer. All my co-workers Monitor Technicians had the same experience. You can ask Ms. Doniea Lawson who is a Monitor Technician. Before getting hired at AHS, she was also told that she would be represented by the Union and signed a paper with Human Resources that she agreed to be represented by the Union. After her employment started, she was informed that her position of a Monitor Technician was not represented by the Union.

4) When I started to work at AHS, initially I worked for four 8 (eight) hour shifts per week which was 32 (thirty two) hours per weeks. In a few weeks, Mr. Clerve told me that only 12 (twelve) hour shifts were available for Monitor Technicians. I was scheduled three twelve hour night shifts per week which is 36 (thirty six) hours per week which is considered to be a full-time position according to policies of AHS. See Attachment 2/1__5.

5) After a few months working for 36 (thirty six) hours per week, I realized that AHS was cheating me. Despite of working for 36 (thirty six) hours a week which is considered full time. I was still considered a part-time employee. I was not acquiring

Complaint for Damages.

my retirement benefits, my educational benefits, and I was overpaying for my health insurance. Initially, I approached Mr. Clerve several times, and I ask him why I am still considered a part-time employee while actually working full-time. Also, I asked Mr. Clerve why I was not getting shift differentials. Also, I asked him why I was actually not represented by the Union even though I signed paper that I agreed to be represented by the Union. Mr. Clerve promised to give me the answer but never gave it to me. On my pay stubs, I still did not see that I was getting shift differentials.

6) Despite I worked for 12 (twelve) hour shifts, I never got overtime payments. If any employee works for more than 8 (eight) hours per day in California, the employee is entitled to get 1.5 overtime payments from the 8th to the 12th hour of work. I never got these overtime payments.

7) In his attempt to mislead Honorable Judge Laurel Beeler, Mr. Travelstead talked only about 10 minute breaks that I was entitled to get every hour as an employee who is constantly observing video display screens according to the policies of AHS (see Attachment 2/1). In my letter to Mr. Harding, I talked about two types of breaks: a) 15 (fifteen) minute breaks that I was not receiving as an employee who works for 12 hour shifts, and b) 10 (ten) minute breaks every hour that I was entitled to receive as an employee who was constantly observing video display screens according to the policy of AHS. I worked for 12 hour shifts, therefore I was entitled to get one unpaid 30 (thirty) minute break and three paid 15 (fifteen) minute breaks. However, most of the time I got only two paid fifteen minute breaks instead of three. I never got ten minute breaks which I was entitled to get according to the policy of AHS. As a knowledgeable and reputable Attorney at Law, Mr. Travelstead, of course, knows very well that not getting paid fifteen minute breaks is a Federal issue which is described at 29 CFR 785.18. For each not received fifteen minute break, an employee is entitled to get paid for additionally one hour of an hourly pay rate. I did not receive at least one fifteen minute break per shift, and I did not receive the payment for one hour of job for each non-received break. Mr. Travelstead intentionally omitted the 15

Complaint for Damages.

minute break issue in his attempt to cheat the Court and claim that there were no Federal issues in my lawsuit. Because of that, the court can not grant Defendant AHS's Motion to Dismiss my lawsuit because of subject-matter jurisdiction according to FRCP 12(b)(1).

8) Mr. Travelstead pretended that he did not know that not received 10 (ten) minute breaks is a violation of a Federal law. Firing me for complaining about not received 10 (ten) minute breaks is a violation of a 29 CFR Part 1977 - DISCRIMINATION AGAINST EMPLOYEES EXERCISING RIGHTS UNDER THE WILLIAMS-STEIGER OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970. Source: https://www.law.cornell.edu/cfr/text/29/part-1977 Ten minute breaks every hour for employees who constantly observe video display screens are designed to protect employees' eyes from computer hazard. This policy was written at the Alameda County Medical Center, Human Resources, Policy and Procedure Manual that was posted on the intranet web-site while I was working. It says: "Employees using video display screens 2 consecutive hours or more are entitled to a 10-minute break every hour." See Attachment 2/1 to my initial lawsuit. The Occupational Safety and Health Act of 1970 ( 29 U.S.C. 651, et seq.) ...is a Federal statute of general application designed to regulate employment conditions relating to occupational safety and health and to achieve safer and healthier workplaces throughout the Nation. Source: https://www.law.cornell.edu/cfr/text/29/1977.1  Because of that, the Court can not grant Mr. Travelstead's Motion to dismiss my lawsuit according to FRCP 12(b)(1)..

9) Firing me for complaining that AHS denied my affiliation to the Union is a violation of 29 U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc.(source: https://www.law.cornell.edu/uscode/text/29/157) and falls under 29 U.S. Code § 158 - Unfair labor practices (source: https://www.law.cornell.edu/uscode/text/29/158 ). 29 U.S. Code § 157 says: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing,

Complaint for Damages.

and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title" 29 U.S. Code § 158(a)(2) says: "It shall be an unfair labor practice for an employer to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay". The truth is that before getting hired at AHS I signed a paper that I agreed to be represented by the Union. After my employment started, I was informed by Mr. Clerve that my position of a Monitor Technician is not represented by the Union and the paper with my signature was shredded. It violates 29 U.S. Code § 157. When I wrote about it to Mr. Harding, I was fired. It falls under 29 U.S. Code § 158(a)(2) that I already cited and 29 U.S. Code § 158(a)(3) that says: "It shall be an unfair labor practice for an employer...by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization" Of course, Mr. Travelstead knew about it but preferred to mislead the Court in his attempt to defend my retaliator. This is another reason why my case should not be dismissed under FRCP 12(b)(1).

10) After not getting any answer from Mr. Clerve, I approached the new assigned Director of Step Down Unit Mr. Gilbert Harding and asked him the same questions. Mr. Harding also did not give me any answer. On September 5th, 2013 I sent a letter to Mr. Harding asking these questions. Two days later, I was retaliated and unlawfully terminated from AHS. My employer did not have any right to retaliate and terminate me for asking questions about my employment and occupational health questions such as 10 minute breaks. AHS broke Federal law 42 U.S.C. § 2000e-3(a)

Complaint for Damages.

which Mr. Travelstead also knows very well.   Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." This is another reason why my case should not be dismissed under FRCP 12(b)(1).

11) I had a legal right to ask Mr. Harding about unpaid wages and benefits, not received breaks as well as to ask why I was denied my affiliation to the Union. AHS retaliated and unlawfully terminated me. It broke 29 U.S. Code § 158(c) - Expression of views without threat of reprisal or force or promise of benefit. "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." Mr. Travelstead knew about it but preferred to mislead the Court. This is another reason why my case should not be dismissed under FRCP 12(b)(1).

12) I have a suggestion that I did not state in my initial claim. I might be retaliated for my Russian origin. The fact is that I am the second Monitor Technician of the Russian origin who was fired from AHS. The first lady was also born in Russia. Her name is Svetlana Muzychenko (if I remember her last name correctly). She was fired from the position of a Monitor Technician at AHS. If my suggestion is correct, AHS definitely broke a Federal Law Title VII of the Civil Rights Act of 1964.

Yes, I was retaliated and unlawfully terminated from AHS after sending a letter to Mr. Harding on September 05, 2013. I thought that his action was wrong and unlawful. However, I wanted to give AHS a chance to reinstate me back to work peacefully. without law enforcement. After being terminated. I sent letters to Mr. Wright L. Lassiter III who is the Chief Executive Officer of AHS and to Ms. Jeanette Louden-Corbett who is the Chief of Human Resources

Complaint for Damages.

1 Officer of AHS. I sent both letters on September 08, 2013 by certified mail with return receipts. I
2 never got any answers. My next step was that I filed a complaint with DIR. My claim was
3 dismissed. The next step was that I filed a lawsuit against both AHS and DIR.

4     AHS's statement.

5     This Court lacks subject matter jurisdiction as it is apparent that there is no diversity of
6 citizens and this case does not arise from federal law. Furthermore, the Complaint fails to state a
7 claim because it is barred by the statute of limitations and Plaintiff is improperly seeking judicial
8 review when she sought the alternative remedy of administrative review. Finally, Plaintiff's
9 Complaint does not allege any cause of action such that AHS can ascertain any claims against it.
10 Accordingly, AHS respectfully requests the Court to dismiss Plaintiff's Complaint for lack of
11 subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the
12 alternative, dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be
13 granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, grant AHS's
14 request for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

15     My answer.

16     My lawsuit should be heard in a Federal Court because it meets the requirements of both
17 US Const, Art III, Sec 2 and 28 USC 1331.

18    1) it is a civil action arising under the Constitution,
19    2) it includes a lot of Federal issues. 29 CFR 785.18 – Rest; 29 CFR Part 1977 –
20       Discrimination Against Employees Exercising Rights Under the Williams-Steiger
21       Occupational Safety and Health Act of 1970; 29 U.S.C. 651 – OSHA; 29 U.S. Code §
22       157 - Right of employees as to organization, collective bargaining, etc.; 29 U.S. Code §
23       158 - Unfair labor practices; 29 U.S. Code § 158(a)(2); 29 U.S. Code § 158(a)(3); 29 U.S.
24       Code § 158(c); 42 U.S. Code § 2000e–3 - Other unlawful employment practices; possibly
25       Title VII of the Civil Rights Act of 1964.

26     My case is not barred by the Statue of Limitations because I filed this lawsuit during the
27 period of investigation conducted by DIR. I was specifically advised by DIR that I had a right to

28

Complaint for Damages.

1  file a lawsuit. There is no exhaustion requirement according to Labor Code section 98.7(f). See

2  Ms. Ng's Motion to Dismiss my claim, page 6.

3      I did not fail to state the claim upon which relief could be granted. I am stating this claim

4  again: AHS broke Federal and State of California's laws by not paying me overtime, not giving

5  me 10 and 15 minute breaks, did not pay me promised wages such as shift differentials, retaliated

6  and unlawfully terminated me for asking questions about occupational safety, not received

7  overtime payments, wages and breaks, about my affiliation to the Union, about my status of a

8  part-time employee while actually working full time. I already proved all these issues.

9  Additionally, I might have been retaliated and unlawfully terminated for my Russian origin

10 because I am the second Monitor Technician of the Russian origin who was fired from AHS.

11     I will be happy to provide Mr. Travelstead with a more definite statement. I will answer

12 all his questions.

13     AHS's statement.

14     **A. LEGAL STANDARD**

15     **1. Rule 12(b)(1)**

16     Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for lack of

17 subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited

18 jurisdiction, and limits upon federal jurisdiction must not be disregarded or evaded. *Owen*

19 *Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A plaintiff has the burden to

20 establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.

21 375, 377 (1998). That burden, at the pleading stage, must be met by pleading sufficient

22 allegations to show a proper basis for the Court to assert subject matter jurisdiction over the

23 action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

24     My answer.

25     Asking the Court to dismiss my case over FRCP 12(b)(1) is not relevant. See my

26 explanations above.

27     AHS's statement.

28     **2. Rule 12(b)(6)**

Complaint for Damages.

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To survive a motion to dismiss, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.*, at 679.

My answer.

I am sure that Honorable Judge Laurel Beeler has no doubt that everything I described in my complaint is true. I am protecting my professional and personal pride. I sincerely worked reading electrocardiograms, doing the best for patients, co-workers and Alameda Health System. My intention has always been to do the best for patients. It is not my fault that due to internal dirty politics of AHS I was fired from my favorite job that I had tried to get for many months. It was my first part-time job, and I was so excited when I got it! It is not my fault that AHS did not pay me as much as it was supposed to pay and used me by having me work for 36 hours a week and not giving me benefits according to the full-time position. I still want to believe that hospitals are designed for treating patients and not for inventing dozens of methods to cheat their employees. If I come to work, I want to perform my direct duties for which I was hired – to observe cardiac monitors and report EKG abnormalities to nurses and doctors. Instead, I spent many hours and years chasing initially Mr. Clerve, later Mr. Harding, later the executives of AHS, later DIR, and now the Federal Court in order to find out why I was cheated, underpaid, used and thrown out from my job. My health benefits were cancelled, and I ended up staying in

Complaint for Damages.

Russia for 2.5 years in order to solve my health issues. I lost the opportunity to study in the USA and become a Physician Assistant how I was planning to do. I lost my skills reading EKGs. I lost an opportunity to buy a car and a home. Now, I am homeless. I live with friends and at my client's places (I am forced to work as a caregiver taking care of elderly patients instead of performing professional duties as a Monitor Technician). Before, I had an excellent credit history. After being terminated from AHS and spending a long time in Russia, my credit history is ruined. I am in the deepest debt that I ever had for my whole life. I owe approximately 45-50 thousand U.S. dollars to American banks and to my friends. I am not eligible for a student loan, so I can't study in the USA. I don't have money to buy a car and a home. I will have to work as a caregiver for another 5-7 years in order for me to pay this huge debt off. This is what AHS did to me. This is why I filed a lawsuit.

I am defending myself without a lawyer. I don't have money to hire a lawyer. I am sure that Honorable Judge Laurel Beeler will make a correct decision whom to defend – an honest employee or a dishonest employer who hired a lawyer for money. I wrote my lawsuit myself, and I am writing this Opposition myself using the Internet resources.

I think that I stated the claim upon which relief could be granted very clearly. So, mentioning FRCP 12(b)(6) is irrelevant in my case.

AHS's statement.

**3. Rule 12(e)**

Under Federal Rule of Civil Procedure rule 12(e): If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. This motion is proper where the complaint is so indefinite that the defendants cannot ascertain the nature of the claim being asserted. In such cases, defendant cannot reasonably be expected to frame a proper response. *See e.g., Cellars v. Pacific Coast Packaging Inc.,* 189 F.R.D. 575, 578 (N.D. CA 1999). Furthermore, a motion for more definite statement has been held to be necessary for compliance with Rule 8 which requires that plaintiffs be clear and concise. Indeed, *Anderson v. District Board of Trustees of Central Florida*

Complaint for Damages.

*Community College*, 77 F.3d 364, 366-367 (11th Cir. 1996), went to the extent of saying that a defendant faced with a lengthy, 'shotgun' complaint is 'expected to move' for a more definite statement such that defendant will be able to discern what plaintiff is claiming and to frame a responsive pleading and if defendant fails to do so, the trial court should sua sponte require a more definite statement.

My answer.

My complaint is very definite and clear.  I am repeating again that as an outsourced attorney at law who agreed to defend my retaliator and who receives money for that, Mr. Travelstead is trying to mislead the Court. Mr. Travelstead understands my complaint perfectly but intentionally omits a lot of important facts. However, I will be happy to provide Mr. Travelstead with a more definite statement according to FRCP 12(e).

AHS's statement.

**B. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THIS COURT LACKS SUBJECT MATTER JURISDICTION**

The Constitution vests federal courts with the authority to hear cases "arising under th[e] Constitution [or] the Laws of the United States." (U.S. Const. Article III, § 2.) Congress also vests federal district courts with subject matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (28 U.S.C. § 1331.) When determining whether a claim arises under federal law, a court will "examine the 'well pleaded' allegations of the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).) The "wellpleaded complaint" rule requires plaintiff to set forth the federal claim in sufficient detail that a right to recover under federal law is apparent. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). Here, Plaintiff only alleges this Court has jurisdiction "over this complaint because it rises under the law of the United States." (Complaint, p.1, ¶ 1.) Plaintiff's Complaint is completely

Complaint for Damages.

devoid of any other allegation or inference that this case involves a federal claim. To the contrary, Plaintiff alleges she filed a complaint regarding her termination with the California Department of Industrial Relations which handles complaints of California Labor Code violations. (Complaint, p.4.) In California, an employee's wage rights are closely regulated by the Labor Code. *Cuadra v. Millan*, 17 Cal.4th 855, 858 (1998). Plaintiff's claims of being denied full compensation and insufficient breaks are matters prescribed by California Labor Code. *See e.g.*, California Labor Code §§ 226.7, 515 and 98.6.

Plaintiff's Complaint does not allege any federal laws or claims. Moreover, the allegations do not suggest any claims under the federal Fair Labor Standards Act. In general, the Fair Labor Standards Act sets a minimum hourly wage and establishes the formula for overtime pay. 29 U.S. Code Chapter 8, §§ 201-219. The Fair Labor Standards Act does not prescribe matters such as meal or break requirements for employees. Accordingly, Plaintiff has failed to meet her burden to establish a proper basis for the Court to assert subject matter jurisdiction over this action, and the Court should dismiss Plaintiff's Complaint.

My answer.

I agree with Mr. Travelstead that AHS broke a lot of State of California's laws that are listed on the web-site of DIR. They are:

1) Unpaid wages such as shift differentials - Labor Code Section 1194, Labor Code Section 204.

1) Breaks - Labor Code Section 226.7.

2) Retaliation and unlawful termination - Labor Code section 98.6 for "...complaining orally or in writing about unpaid wages, or for exercising (on behalf of oneself or other employees) any of the rights provided under the Labor Code or Orders of the Industrial Welfare Commission, including, but not limited to, the right to demand payment of wages due, the right to express opinions about, support or oppose an alternative workweek election, or the exercise of any other right protected by the Labor Code". Source: http://www.dir.ca.gov/dlse/howtofilelinkcodesections.htm

Complaint for Damages.

1    I already listed a lot of Federal laws that AHS broke. See this list above. Therefore, my

2    case should not be dismissed over FRCP 12(b)(1).

3    AHS's statement.

4    **C. PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO**

5    **STATE A CLAIM.**

6    In the alternative, AHS moves to dismiss Plaintiff's Complaint for failure to state a claim

7    upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). It is

8    apparent from Plaintiff's allegations that her action is barred by the statute of limitations and by

9    her initial choice of administrative relief remedy.

10   My answer.

11   Mr. Travelstead repeats the same issues over and over again. I already explained why my

12   case should not be dismissed over FRCP 12(b)(6). Please, see my explanations above.

13   AHS's statement.

14   **1. Plaintiff's Action is Barred by the Statute of Limitations.**

15   Where the facts and dates alleged in the complaint indicate the claim is barred by the

16   statute of limitations, a motion to dismiss for failure to state a claim lies. The complaint fails to

17   state a claim because the action is time-barred. *Frame v. City of Arlington*, 657 F.3d 215, 239-

18   240 (5th Cir. 2011); *Von Saher v. Norton Simon Museum of Art at Pasaden*, 592 F.3d 954, 969

19   (9th Cir. 2010).

20   Here, although Plaintiff does not allege a cause of action and AHS is forced to speculate

21   as to the causes of action Plaintiff may be alleging, it is apparent that any plausible any cause of

22   action Plaintiff can bring is barred by the statute of limitations. Plaintiff claims she was she was

23   compensated as a part-time employee but should have been compensated as a full-time

24   employee, and was not given 10 minute breaks every hour pursuant to the written policies of

25   AHS. (Plaintiff's Complaint, pgs. 2-3.) Plaintiff alleges she was terminated in retaliation after

26   she complained about these issues to the Director in her department. (Plaintiff's Complaint, p. 6.)

27   Those allegations appear to assert violations of Labor Code sections 98.6 [prohibiting retaliation

28

Complaint for Damages.

1  for making complaint about unpaid wages] and 6310 [prohibiting retaliation for making
2  complaint about employee health and safety issues].

3      The time for Plaintiff to bring an action for Labor Code violations or wrongful
4  termination in retaliation for Labor Code violations has passed. The statute of limitations to bring
5  a suit for wage liabilities created by statute, including Labor Code violations, is three years.
6  (California Code of Civil Procedure § 338(a); *Cuadra v. Millan*, 17 Cal.4th 855, 859 (1998). The
7  statute of limitations for wrongful termination based on a Labor Code violation is two years.
8  (California Code of Civil Procedure § 335.1) Plaintiff alleges she was terminated from her
9  employment at AHS on September 7, 2013. (Plaintiff's Complaint, p. 3.) Plaintiff filed this
10  lawsuit on December 29, 2016, more than 3 years after her termination from AHS. The statute of
11  limitations to bring a suit for Labor Code violations or for wrongful termination in retaliation for
12  Labor Code violations has passed, and Plaintiff's Complaint should be dismissed for failure to
13  state a claim.

14      My answer.

15      It is very sad that such a reputable Attorney at Law Mr. Travelstead does not know the
16  law. Please, see Labor Code section 98.7(f). See Ms. Ng's Motion to Dismiss my claim, page 6. I
17  already wrote my explanations above.

18      AHS's statement.

19  **2. Plaintiff Chose Administrative Remedy.**

20      Plaintiff's Complaint also fails to state a claim, because Plaintiff's Complaint indicates
21  she chose the administrative relief remedy and is now limited to state judicial review of the
22  administrative order. As set forth above, in California, an employee's wage rights are closely
23  regulated by the Labor Code. *Cuadra v. Millan*, 17 Cal.4th 855, 858 (1998). An employee
24  seeking unpaid wages has two principal options: "The employee may seek judicial relief by
25  filing an ordinary civil action against the employer for breach of contract and/or for the wages
26  prescribed by statute… Or the employee may seek administrative relief by filing a wage claim
27  with the commissioner pursuant to a special statutory scheme codified in [Labor Code] sections
28  98 to 98.8." *Id.* (emphasis added).

Complaint for Damages.

Furthermore, materials submitted with the complaint may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990); *Paulemon v. Tobin*, 30 F.3d 307, 308-309 (2nd Cir. 1994). Documents attached to the complaint and incorporated therein by reference are treated as part of the complaint for purposes of a Rule 12(b)(6) motion. *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003), 16; *Kaufman & Broad-South Bay v. Unisys Corp.*, 822 F.Supp. 1468, 1472(N.D. CA 1993); *see also* Federal Rule of Civil Procedure 10(c).

Here, Plaintiff chose the administrative remedy when she filed a claim with the Labor Commissioner in September 2013 after she was terminated. (Plaintiff's Complaint, p. 4.) The Deputy of Labor Commissioner dismissed her case, because there was insufficient evidence to establish retaliation and her case was closed. (Plaintiff's Complaint, p. 5; see also Plaintiff's Attachment 8.) Plaintiff may seek review of the Labor Commissioner's order by filing an appeal to the appropriate superior court within 10 days after service of the order and the court will conduct a de novo review of the Labor Commissioner's order. Labor Code § 98.2(a). Plaintiff is not seeking a review of the Labor Commissioner's order in this lawsuit. Plaintiff cannot now seek federal judicial relief when she first chose to seek administrative relief at the state level.

Not only does Plaintiff's Complaint fail because it is time-barred, Plaintiff's Complaint fails because choose administrative relief at the outset.

My answer.

I filed a lawsuit against DIR and AHS on December 29th, 2016, during the period of investigation conducted by DIR. Only in the middle of February 2017 I found out that DIR actually issued the decision on my case. I read this decision only in Ms. Ng's Motion to Dismiss my lawsuit. I did not file the appeal because of three reasons: 1) I never received the decision of DIR by mail or by email. Without reading the actual decision and knowing the issue date of the decision, I can't file an appeal with DIR even though this appeal is already prepared in my computer, 2) DIR never answered my questions about why my evidence was insufficient, 3) it is

Complaint for Damages.

1   my right to file a lawsuit against anybody. Mr. Travelstead can not tell me what to do. He can not

2   order me to file an administrative appeal instead of a lawsuit.

3       AHS's statement.

4   **D. PLAINTIFF MUST ALLEGE A MORE DEFINITE STATEMENT.**

5       It is clear that Plaintiff's lawsuit lacks subject matter jurisdiction and in the alternative,

6   the Motion to Dismiss should be granted on either ground that Plaintiff's Complaint is

7   timebarred or Plaintiff is improperly seeking judicial relief. However, if the Court finds that

8   additional information is necessary, then this Court should, in the alternative, grant AHS's

9   Motion for a more Definite Statement.

10      Federal Rule of Civil Procedure 10(b) states: "A party must state its claims or defenses in

11   numbered paragraphs, each limited as far as practicable to a single set of circumstances." Here,

12   Plaintiff does not set forth any cause of action. Plaintiff's Complaint alleges a series of events

13   and lengthy conclusions, but it does not set forth a single cause of action. AHS is entitled to

14   know what statute it is alleged to have violated and should not be forced to guess as to what

15   Plaintiff is alleging. The Court should grant AHS's Motion for a more Definite Statement and

16   require Plaintiff to clearly allege her cause of action(s) and her factual allegations supporting

17   each cause of action.

18      My answer.

19      I am not a lawyer. I explained everything to the Court using my own words and the

20   provisions of the law that I found on the Internet. My complaint is not timebarred. I already gave

21   a lot of information to Defendants and the Court. If the Court orders me to write a more definite

22   statement, I will do it. However, I don't know what else I can say and what words I should use to

23   make my lawsuit understandable for Mr. Travelstead. If I have a Court's order for FRCP 12(e), I

24   will try my best to explain again about the nature of my claim.

25      I believe that my lawsuit and explanations meet all the requirements of FRCP 10(b). See

26   https://www.law.cornell.edu/rules/frcp/rule_10#rule_7_a

27      (b) Paragraphs; Separate Statements. A party must state its claims or defenses in

28   numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later

Complaint for Damages.

pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

In my initial lawsuit and my Opposition to  Mr. Travelstead's Motion to Dismiss my claim, I stated my claims to defenses separately in numbered paragraphs, each limited as far as practicably to a single set of circumstances. It promoted clarity, each claim founded on a separate transaction of occurrence.

AHS's statement.

**IV. CONCLUSION**

Based on the foregoing, AHS respectfully requests the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. Plaintiff has not met her burden to invoke federal question jurisdiction. In the alternative, AHS's Motion to Dismiss should be granted on either ground that Plaintiff's Complaint is time-barred or Plaintiff is improperly seeking judicial relief. If the Court finds that additional information is necessary, then this Court should, in the alternative, grant AHS's Motion for a more Definite Statement.

My answer.

I proved many times that my lawsuit should not be dismissed over FRCP 12(b)(1) and 12(b)(6). My lawsuit is not timebarred. I am ready to provide Mr. Travelstead with a more definite statement according to FRCP 12(e).

Mr. Travelstead listed a lot of lawsuits that in his opinion are applicable to my case. I decided not to check on any lawsuit because it is clear for me that this Attorney at Law intentionally tries to mislead the Court about the issues that I stated in my initial claim. I already demonstrated these issues to Honorable Judge Laurel Beeler.

My lawsuit contains both Federal and the State of California's issues. I believe that my case should be heard in a Federal Court. I believe in Justice, and I want to get a fair decision about my case.

**III. CONCLUSION**

Based on the foregoing. I request that the Court deny the Motion.

Complaint for Damages.

Date: February 26, 2017.

Tatyana Evgenievna Drevaleva.'

28. On February 26, 2017, I filed a Declaration in support to my Opposition to the NTPC's Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB (**ER 07414 Vol. 1, pages 210-211**), "In support of Plaintiff's Opposition to the Motion to Dismiss.

I, Tatyana Evgenievna Drevaleva, declare as follows:

1) I am a Plaintiff.

2) I have a personal knowledge of all facts stated in this Declaration, and if called to testify, I could and would testify competently thereto.

3) The fact is that I was retaliated and unlawfully terminated from my position of a Monitor Technician at Alameda Health System (AHS) on September 07, 2013 only after two days after I sent a letter to a Director of Step Down Unit Mr. Harding where I asked questions why I was not getting paid shift differentials as promised in my offer letter, why I was still considered a part-time employee while actually working full time, why I was not receiving my paid 15 minute breaks, why I was denied my affiliation to the Union after I signed a paper that I agree to be represented by the Union, why I was not receiving 10 minute breaks every hour as an employee who constantly observes video display screens according to the policies of AHS, and where I asked AHS to assist me paying for college.

4) The fact is that I filed a claim with DIR in September 2013.

5) The fact is that I filed a lawsuit against both AHS and DIR on December 29, 2017 during the period of investigation that was committed by DIR.

6) The fact is that AHS filed a Motion to Dismiss my lawsuit on February 15, 2017. In this Motion, Mr. Travelstead asked the Court to dismiss my lawsuit for one of two reasons: 1) pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 2) for failure to state a claim upon which relief can be granted

Complaint for Damages.

pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, Mr. Travelstead thought that my lawsuit was barred by the Statue of Limitations. As an alternative, AHS moved the Court for an Order granting AHS's Motion for more Definite Statement under the Federal Rule of Civil Procedure 12(e).

7) The fact is that should be heard in a Federal Court because this court has subject-matter jurisdiction over my case according to both the U.S. Constitution, Art III, Sec 2 and 28 USC 1331.

8) The fact is that as a Plaintiff, I did NOT fail to state a claim upon which relief can be granted. AHS retaliated and unlawfully terminated me for asking questions about not received overtime and shift differentials, not received 10 and 15 minute breaks, about asking a question why I was denied my affiliation to the Union, asking to make me a full time employee because I was actually working full time, asking to provide me with benefits that full time employees are entitled to get. As a result of this termination, I am behind the level of poverty, I am in a deepest debt for my whole life, I don't have a home and a car, and I don't have a chance to study.

9) The fact is that lawsuit is NOT barred by the Statue of Limitations because I filed it during the period of investigation that was conducted by the Division of Labor Standards Enforcement of the Department of Industrial Relations. See Labor Code section 98.7(f).

10) The fact is that if I have a Court's order for a more definite statement according to FRCP 12(e), I will happily provide Mr. Travelstead with this statement.

11) The fact is that AHS broke a lot of Federal and the State of California's laws.

12) The fact is that Mr. Travelstead intentionally omitted a lot of Federal issues that I stated in my initial claim.

13) The fact is that by not giving me 15 (fifteen) minute breaks AHS broke 29 CFR 785.18 - Rest.

14) The fact is that by firing me for asking why I was not getting 10 (ten) minute breaks every hour as an employee who were constantly observing video display screens and

Complaint for Damages.

who was entitled to get these breaks according to the policy of AHS, this employer broke 29 CFR Part 1977 - DISCRIMINATION AGAINST EMPLOYEES EXERCISING RIGHTS UNDER THE WILLIAMS-STEIGER OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970.

15) The fact is that by denying my affiliation to the Union after I signed the document that I agreed to be represented by the Union AHS broke 29 U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc.

16) The fact is that by firing me for asking a question why I was denied my affiliation to the Union AHS broke 29 U.S. Code § 158 - Unfair labor practices, specifically 29 U.S. Code § 158(a)(2) and 29 U.S. Code § 158(a)(3).

17) The fact is that by firing me for asking questions about not getting paid overtime and shift differentials, not receiving 10 and 15 minute breaks and not being affiliated with the Union AHS broke 42 U.S.C. § 2000e-3(a) and 29 U.S. Code § 158(c).

18) I could possibly be retaliated and unlawfully terminated because of my Russian origin. The fact is that I was the second Monitor Technician of the Russian origin who was fired from AHS. The first lady's name is Svetlana Muzychenko (if I remember her last name correctly).   Svetlana was also born in Russia. If this assumption is correct, AHS broke Title VII of the Civil Rights Act of 1964.

19) It is a fact that besides breaking a lot of Federal laws AHS broke a lot of the State of California's laws such as Labor Code Section 1194, Labor Code Section 204 (unpaid wages), Labor Code Section 226.7 (breaks), Labor Code section 98.6 (retaliation and unlawful termination).

20) It is a fact that my case meets the requirements of FRCP 10(b).

WHEREFORE. I respectfully ask the Court to deny the above-referenced motion.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 20, 2017.

Date: January 20. 2017.

Signature:  [my original signature]

Complaint for Damages.

Printed name: Tatyana Evgenievna Drevaleva."

29. On March 08, 2017, the NTPC filed a document named (**ER 07414 Vol. 2, pages 227-233**) "**DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY BRIEF TO PLAINTIFF'S OPPOSITION**

**I. <u>INTRODUCTION</u>**

Plaintiff's Opposition cites federal statutes that have no relevance to Plaintiff's Complaint in an attempt to frame her case as arising under federal law. However, it is clear Plaintiff cannot meet her burden to invoke federal question jurisdiction. Plaintiff's Opposition also fails to effectively oppose AHS's arguments that Plaintiff's Complaint is time-barred and that Plaintiff is improperly seeking judicial relief in federal district court.

**II. <u>DISCUSSION</u>**

The Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction without leave to amend. Plaintiff has not and cannot meet her burden to invoke federal question jurisdiction. In the alternative, AHS's Motion to Dismiss should be granted on the grounds that Plaintiff's Complaint is time-barred and Plaintiff is improperly seeking judicial relief.

**A. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THIS COURT LACKS SUBJECT MATTER JURISDICTION.**

Although Plaintiff's Complaint does not allege a single federal law or claim to establish a proper basis for the Court to assert subject matter jurisdiction over this action, Plaintiff's Opposition references many federal regulations and statutes which AHS allegedly violated. But the federal regulations and statutes cited are inapplicable to this case and Plaintiff cannot reasonably allege a federal cause of action.

**1. Plaintiff's Claim Does Not Arise Under the Code of Federal Regulations.**

Plaintiff first cites federal regulations pertaining to breaks in the workplace. 29 Code of Federal Regulations ("CFR") Section 785.15 generally states that rest periods are "common in industry" and "must be counted as hours worked." It does not address the specific alleged violations of ten-minute breaks every hour or fifteen-minute breaks, which Plaintiff alleges were

Complaint for Damages.

1   required pursuant to the written policies of AHS, not federal law. (Complaint, p. 3; Plaintiff's

2   Opposition, p. 3, ¶ 7.)

3       Plaintiff also claims in her Opposition that her termination for complaining about not

4   receiving the ten-minute breaks is a violation 29 CFR Part 1977. (Plaintiff's Opposition, p.4, ¶

5   8.) However, again, the ten-minute breaks were allegedly provided for in the written policies of

6   AHS, not in the Federal Regulations. Furthermore, to pursue a claim under 29 CFR Part 1977, a

7   complaint must be lodged with the Secretary of Labor within 30 days after such violation occurs.

8   Accordingly, complaints not filed within 30 days of an alleged violation will ordinarily be

9   presumed to be untimely. 29 CFR § 1977.15(d)(2). Plaintiff does nothing to demonstrate such a

10  claim is not time-barred or that she has exhausted administrative remedies.

11      **2. AHS Is Not Subject to the National Labor Relations Act.**

12      Plaintiff's Opposition then asserts AHS's denial of her affiliation to the Union were

13  violations of various sections of the National Labor Relations Act ("NLRA") codified at 29 USC

14  Sections 141 et seq. (Plaintiff's Opposition, p. 4, ¶ 9, p. 5, ¶ 11.) However, by its own terms the

15  NLRA does not apply to state public entities. 29 U.S.C. § 142. Thus, Plaintiff fails in her attempt

16  to raise a federal claim under the NLRA.

17      **3. Plaintiff's Complaint Did Not Assert Any Discrimination Claim.**

18      Plaintiff's Opposition suggests she may bring a national origin discrimination claim for

19  violation of Title VII of the Civil Rights Act of 1964. (Plaintiff's Opposition, p. 5, ¶ 12.) Plaintiff

20  did not plead it in her Complaint, and she cannot properly assert it based on her sole allegation

21  that she was the second Monitor Technician of Russian origin to be fired from AHS. The facts

22  alleged in the Complaint, or suggested in the Opposition, do not give rise to any discrimination

23  cause of action, and furthermore, Plaintiff gives no indication her claim is not time-barred or that

24  she exhausted administrative remedies.

25      Accordingly, the Court must dismiss Plaintiff's Complaint, because Plaintiff has failed to

26  meet her burden to establish a proper basis for the Court to assert subject matter jurisdiction over

27  this action, and also failed to show she can invoke federal questions jurisdiction with leave to

28  amend.

Complaint for Damages.

**B. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM.**

Plaintiff's Opposition does not effectively oppose AHS's arguments that Plaintiff's action is barred by the statute of limitations and by her initial choice of administrative relief remedy.

**1. <u>Plaintiff's Action is Barred by the Statute of Limitations</u>.**

Plaintiff's only response to AHS's arguments that her claims are time-barred is to "see Labor Code section 98.7(f)" and Defendant Labor Commissioner's "Motion to Dismiss, page 6." (Plaintiff's Opposition, p. 9.) Neither is relevant to the argument that Plaintiff's claims are barred by the statute of limitations. Labor Code section 98.7(f) states: "The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other law." Defendant Labor Commission's Motion to Dismiss, page 6, is a portion of the factual and procedural background in which Plaintiff's failure to file an administrative appeal is discussed.

Because Plaintiff's Complaint is unintelligible and AHS is forced to speculate as to the claims it may be asserting, AHS points out that whether Plaintiff is asserting a claim for unpaid wages or for wrongful termination in retaliation for Labor Code violations, the time to bring either has passed. The statute of limitations to bring a suit for wage liabilities created by statute, including Labor Code violations, is three years. California Code of Civil Procedure § 338(a); *Cuadra v. Millan*, 17 Cal.4th 855, 859 (1998). The statute of limitations for wrongful termination based on a Labor Code violation is two years. California Code of Civil Procedure § 335.1. Plaintiff alleges she was terminated from her employment at AHS on September 7, 2013. (Plaintiff's Complaint, p. 3.) Plaintiff filed this lawsuit on December 29, 2016, more than 3 years after her termination from AHS. The statute of limitations to bring a suit for either Labor Code violations or for wrongful termination in retaliation for Labor Code violations has passed, and Plaintiff's Opposition does not oppose that argument in any way.

Plaintiff does not assert the doctrine of equitable tolling applies in either her Complaint or Opposition, and thus, she has not preserved the argument. For the sake of argument, AHS disputes that the doctrine of equitable tolling applies in this case. The application of the doctrine of equitable tolling requires the plaintiff to satisfy the following elements: timely notice, lack of

Complaint for Damages.

prejudice to the defendant, and reasonable good faith conduct on the part of the plaintiff. See *Addison v. State of California*, 21 Cal.3d 313, 319 (1978). In *Addison*, the plaintiffs originally filed an action in federal district court which was dismissed for lack of jurisdiction. *Id.* at 315. The plaintiffs then filed the action based on same facts in state court after the six-month government claims statute of limitations period had passed. *Id.*; see California Government Code § 945.6. The Court held the doctrine of equitable tolling applied to suspend the six-month limitations period during the time plaintiffs' suit in federal court was pending and the state court action was deemed timely filed, because plaintiffs satisfied the elements necessary to invoke the doctrine. *Id.* at 319.

The *Addison* case is distinguishable from the case at bar. Plaintiffs in *Addison* filed in good faith in federal court but the action was dismissed without prejudice for lack of jurisdiction when the court determined a federal civil rights action would not lie against public entities. *Id.* at 315, 317. Here, Plaintiff had ample time to bring her claims to court. Indeed, Plaintiff did not bring an action in court despite the Labor Commissioner's communications to her that she may withdraw her claim so that a written negative decision would not issue. (Complaint, p. 5.) Plaintiff did not act in good faith or reasonably in bringing her claim in court. Thus, the doctrine of equitable tolling, which Plaintiff has the burden of raising and showing the elements were satisfied, does not apply in this case, and Plaintiff cannot show that her claims are not barred by the statute of limitations.

### 2. Plaintiff Chose Administrative Remedy.

In Plaintiff's Opposition, she boldly asserts it is her "right to file a lawsuit against anybody" apparently in any forum she chooses. (Plaintiff's Opposition, p. 10.) To the contrary, Plaintiff is bound by jurisdictional laws and her choice of remedies. Again, because Plaintiff's Complaint does not assert any cause of action, AHS speculates as to what claims Plaintiff is asserting. To the extent Plaintiff is asserting a retaliation claim, the statute of limitations has run for her to bring this claim as set forth above in *Section II. B. 1*. To the extent Plaintiff is making a claim for unpaid wages and compensation, the statute of limitations has run as set forth above in

Complaint for Damages.

*Section II. B. 1.*, and Plaintiff has also not complied with the statutory scheme provided for in the Labor Code.

The California Labor Code's statutory scheme for the administrative claims with the Division of Labor Standards Enforcement ("DLSE") for retaliation claims is different from that for claims for other Labor Code violations, such as for unpaid wages and compensation. California Labor Code §§ 98 – 98.2, 98.7. After a non-favorable determination by the Labor Commissioner of a retaliation claim, the employee can bring an action in an appropriate court to determinate whether a violation occurred, or appeal to the Director of Industrial Relations within 10 days of the determination. California Labor Code § 98.7 subd. (d)(1) and (e). After a non-favorable determination by the Labor Commissioner of a claim for non-retaliation claim, the employee may seek review of the Labor Commissioner's order by filing an appeal to the appropriate superior court within 10 days after service of the order and the court will conduct a de novo review of the Labor Commissioner's order. California Labor Code § 98.2 subd. (a). An employee seeking unpaid wages has two principal options: "The employee may seek judicial relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute… Or the employee may seek administrative relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in [Labor Code] sections 98 to 98.8." *Cuadra v. Millan*, 17 Cal.4th 855, 858 (1998) (emphasis added).

If Plaintiff is asserting a claim for unpaid wages or compensation, Plaintiff may seek review of the Labor Commissioner's order by filing an appeal to the appropriate superior court, not a federal district court, within 10 days after service of the order and the court will conduct a de novo review of the Labor Commissioner's order. California Labor Code § 98.2(a). Plaintiff is not seeking a review of the Labor Commissioner's order in this lawsuit. Plaintiff cannot now seek federal judicial relief when she first chose to seek administrative relief at the state level.

**III. CONCLUSION**

Based on the foregoing and the moving papers, AHS respectfully requests the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction without leave to amend. Plaintiff has not and cannot met her burden to invoke federal question jurisdiction. In the

Complaint for Damages.

1   alternative, AHS's Motion to Dismiss should be granted on either ground that Plaintiff's

2   Complaint is time-barred or Plaintiff is improperly seeking judicial relief. If the Court finds that

3   additional information is necessary, then this Court should, in the alternative, grant AHS's

4   Motion for a more Definite Statement.

5          Dated: March 8, 2017          NARAYAN TRAVELSTEAD P.C.

6                                /s/ Timothy C. Travelstead

7                                Timothy C. Travelstead

8                                Attorney for Defendant

9                                Alameda Health System."

10

11       30. Please, notice that in his Reply Mr. Travelstead committed fraud because he

12   maliciously lifted the Alameda Health System up to the level of the State Public Agencies, see

13   **(ER 07414 Vol. 2, page 230, lines 1-6)**, "**2. AHS Is Not Subject to the National Labor**

14   **Relations Act.**

15       Plaintiff's Opposition then asserts AHS's denial of her affiliation to the Union were

16   violations of various sections of the National Labor Relations Act ("NLRA") codified at 29 USC

17   Sections 141 et seq. (Plaintiff's Opposition, p. 4, ¶ 9, p. 5, ¶ 11.) However, by its own terms the

18   NLRA does not apply to state public entities. 29 U.S.C. § 142. Thus, Plaintiff fails in her attempt

19   to raise a federal claim under the NLRA."

20       31. Please, notice that during my employment with the Alameda Health System from

21   April 01 to September 07, 2013 the Alameda Health System was a private employer, and the

22   Alameda heath System was not a Public Agency at all. For the purpose of this current Complaint,

23   I will not discuss this issue in detail. I reserve the right to provide the U.S. District Court for the

24   Norther District of California with a full discussion about the status of the Alameda Health

25   System as a private employer from April 01 to September 07, 2013.

26       32. Please, notice that at the time of filing my Original December 29, 2016 Complaint

27   No. 3:16-cv-07414-LB the Alameda Health System was a local Public Agency pursuant to the

28   California Government Code Section 900.4. " "Local public entity" includes a county, city,

district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State."

33. Also, at the time of filing my Original December 29, 2016 Complaint No.3:16-cv-07414-LB, the Alameda Health System was a local Public Agency pursuant to the California Government Code Sections 53050 and 53051.

34. Please, notice that in his Reply Mr. Travelstead maliciously lifted the Alameda health System up to the level of the State Public Agencies within the meaning of the California Government Code Section 900.6, " "State" means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller."

35. Please, notice that the Alameda Health System has never been and will never be a State Public Agency within the meaning of the California Government Code Section 900.6.

36. On March 21, 2017, Magistrate Judge Ms. Laurel Beeler granted Mr. Travelstead's (not the AHS's) Motion to Dismiss my Original December 29, 2016 Complaint No. 3:16-cv-07414-LB, see (**ER 07414 Vol. 2, page 256, lines 8-13**), "As to Ms. Drevaleva's claims against her former employer Alameda Health, she mentions wage-and-hours violations and other labor complaints, her discharge for negligence (surrounding the care of a patient who died), and her complaints about both, but her claim for relief is based only on her allegedly retaliatory discharge in violation of California law. (Compl. at 2–7.) This also was the basis of her appeal to the Department of Industrial Relations. She does not state a federal claim against her employer."

37. See the March 21, 2017 Order (**ER 07414 Vol. 2, page 257, lines 20-28**), "Ms. Drevaleva similarly does not state a plausible federal claim for discharge against her former employer based on its alleged violations of the California Labor Code or for its conclusion that she was negligent. She did not plead any claims regarding wage-and-hours violations, including a claim under the federal Fair Labor Standards Act (—FLSAⅡ). That claim in any event generally is subject to a two-or three-year statute of limitations. 29 U.S.C. § 255(a). Any FLSA was apparent by the date of her discharge in September 2013; she did not file her federal complaint until December 2016. And while her pursuit of claims through the agency process might toll her

Complaint for Damages.

state claims (though the parties do not discuss this), they do not obviously toll any federal FLSA claim."

38. In her March 21, 2017 Order, Judge Beeler granted me with leave to amend my Original December 29, 2016 Complaint, see (**ER 07414 Vol. 2, page 258, line 3**), "The court will accordingly dismiss the complaint with leave to amend."

39. On April 02, 2017, I relocated to the State of New Mexico because I had gotten a full time job at the New Mexico VA Health Care System. On April 10, 2017, I filed an Amended Complaint from the State of New Mexico, see (**ER 07414 Vol. 2, from page 265, line 17 to page 300, line 3**), "<u>Why I am filing this amended complaint.</u>

On December 29, 2016, I filed a complaint against both Alameda Health System (AHS) and Department of Industrial Relations (DIR). The nature of my complaint was: retaliation, unlawful termination, slander (DIR slandered me that I exhibited negligence towards the patient), unpaid wages such as shift differentials and unpaid overtime, possibly Title VII of the Civil Rights Act of 1964 (discrimination against my Russian origin), denial of my affiliation to the Union, occupational health issues (not giving me 10 minute breaks as to an employee who constantly observes video display screens according to the internal policy of AHS), not giving me paid 15 minute breaks.

Under California Labor Code Section 2699(e)(1), I have a right to file a lawsuit: "For purposes of this part, whenever the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, has discretion to assess a civil penalty, a court is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty".

Both defendants AHS and DIR filed motions to dismiss my complaint for lack of federal subject-matter jurisdiction and for failure to state a claim (Motions ECF Nos. 16, 19).

On March 21st, 2017, Honorable Judge laurel Beeler granted both motions to dismiss on the ground that Plaintiff Drevaleva did not state plausible federal claims. However, Judge Beeler gave me a chance to amend my complaint.

**Amended complaint.**

Complaint for Damages.

1    I, Plaintiff Tatyana Drevaleva, was hired as a Monitor technician at Alameda County
2    Medical Center starting April 1st, 2013 for 8-hour shifts on a 0.8 FTE (part-time, benefit eligible
3    – only medical, dental, vision, and life insurance) status with applicable shift differentials such as
4    11% for evenings, 15.5% for nights & 5% for weekends (Attachment 1 – Offer letter).

5    During the hiring process, I signed paper in Human resources that I agree to be
6    represented by the Union. After my employment started, I was informed that I had been denied
7    my affiliation to the Union, and the paper with my signature was destroyed. Thus, AHS broke 29
8    U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc.        :
9    "Employees shall have the right to self-organization, to form, join, or assist labor organizations,
10   to bargain collectively through representatives of their own choosing, and to engage in other
11   concerted activities for the purpose of collective bargaining or other mutual aid or protection,
12   and shall also have the right to refrain from any or all of such activities except to the extent that
13   such right may be affected by an agreement requiring membership in a labor organization as a
14   condition of employment as authorized in section 158(a)(3) of this title" Also, 29 U.S. Code §
15   158(a)(2) says: "It shall be an unfair labor practice for an employer to dominate or interfere with
16   the formation or administration of any labor organization or contribute financial or other support
17   to it: Provided, That subject to rules and regulations made and published by the Board pursuant
18   to section 156 of this title, an employer shall not be prohibited from permitting employees to
19   confer with him during working hours without loss of time or pay". The provisions of 29 U.S.
20   Code § 157 do not say that public employees are exempt from this Federal law.

21   AHS attempted to cite the National Labor Relations Act (N.L.R.A.) codified at 29 USC,
22   Sections 141 et seq. and said that the NLRA does not apply to state public entities. 29 U.S.C. §
23   142. This is a libel (Code of Civil Procedure 340 (c)). In fact, see 29 U.S. Code § 141 - Short
24   title; Congressional declaration of purpose and policy. This law is defined as "Labor
25   Management Relations Act, 1947" (part (a)). Part (b) says: "Industrial strife which interferes
26   with the normal flow of commerce and with the full production of articles and commodities for
27   commerce, can be avoided or substantially minimized if employers, employees, and labor
28   organizations each recognize under law one another's legitimate rights in their relations with

Complaint for Damages.

each other, and above all recognize under law that neither party has any right in its relations with any other to engage in acts or practices which jeopardize the public health, safety, or interest. It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce". Therefore this provision of law doesn't say about the right of an employee to be represented by the Union.  Source: https://www.law.cornell.edu/uscode/text/29/141   Also, 29 U.S.C. § 142 doesn't say even one word about state public entities. It says: "When used in this chapter—

(1) The term "industry affecting commerce" means any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce.

(2) The term "strike" includes any strike or other concerted stoppage of work by employees (including a stoppage by reason of the expiration of a collective-bargaining agreement) and any concerted slowdown or other concerted interruption of operations by employees.

(3) The terms "commerce", "labor disputes", "employer", "employee", "labor organization", "representative", "person", and "supervisor" shall have the same meaning as when used in subchapter II of this chapter".

Source: https://www.law.cornell.edu/uscode/text/29/142

Therefore, the attempt of AHS to claim that the Federal law regarding collective bargaining agreements does not apply to this employer because it is a public employer is a libel (Code of Civil Procedure 340 (c)).

Complaint for Damages.

I worked for a few weeks for 8 (eight) hour shifts. Afterwards, I was informed my Management that only 12 (twelve) hour night shifts were available. I was scheduled for three 12 hour shifts per week which is 36 (thirty six) hours per week. According to the internal policy of AHS, working for 36 hours a weeks is considered a full time employment with additional benefits such as retirement, vacation, educational leave, holiday and sick leave. See Attachment 2 – Alameda County Medical Center, Human Resources, Policy and Procedure Manual (pages 64 and 65 - Wage and hour terms and definitions, Page 67 - Meal and break periods), and Attachment 3 - Memorandum of Understanding between SEIU Local 1021 – General Chapter and the Alameda County Medical Center, January 1, 2012 to March 31, 2014 (page 15 - The definition of a full-time employee, Page 39 - Shift differentials). However, despite working for 36 hours a week, I was still considered a part-time employee. I was not getting promised shift differentials. Thus, AHS broke Labor Code Section 1194, Labor Code Section 204.

I worked for 12 (twelve) hour shifts, so I was entitled to getting paid overtime one and one-half times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday. However, I did not receive overtime payments. Thus, AHS broke IWC 4-2001, 3(A)(1)(a): "Employment beyond eight (8) hours in any workday … is permissible provided the employee is compensated for such overtime at not less than: (a) One and one-half (1 and 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday". Also, AHS broke IWC 4-2001, 3(B)(1): "No employer shall be deemed to have violated the daily overtime provisions".

As a Monitor Technician employed by AHS, I was a nonexempt employee because AHS is not a political subdivision of the State of California. According to the Section 218 of the Social Security Act, "A political subdivision is a separate legal entity of a State which usually has specific governmental functions. The term ordinarily includes a county, city, town, village, or school district, and, in many States, a sanitation, utility, reclamation, drainage, flood control, or similar district. A political subdivision's legal status is governmental". "Political subdivision"

Complaint for Damages.

1  ordinarily includes counties, cities, townships, villages, schools, sanitation, utility, irrigation,

2  drainage and flood-control districts, and similar governmental entities.

3        Source: https://www.ssa.gov/section218training/advanced_course_9.htm#3

4        There were entities who claimed themselves as political subdivisions but the Court

5  determined they were not. In *Seagrave Corporation v. Commissioner 38 T.C. 247 (1962),* the

6  Court held that the corporations are not political subdivisions, and stated as follows: "They may

7  be political, in the sense that 'political' is synonymous with 'public,' but they are not

8  subdivisions of the State. It may be conceded the volunteer fire companies perform a public

9  function in the sense that they perform the same function that is generally carried on by

10 municipal fire departments. But the volunteer fire companies here involved are not in any sense

11 subdivisions of the States where they are located. They were not created by any special statutes

12 and they received no delegation of any part of the State's power. It is not enough that they

13 perform a public service. They cannot be called a subdivision of the State unless there has been a

14 delegation to them of some functions of local government".  Alameda County Medical Center

15 which reorganized to Alameda Health System has not been delegated some functions of local

16 government, therefore AHS can not name itself a political subdivision of the State of California.

17 Therefore, I was not an employees directly employed by the **State or any political subdivision**

18 **thereof**, including any city, county or special district (IWC-4), and therefore I am not an exempt

19 from overtime payments.

20       Also, see the definition of political subdivision on the web-site of Internal Revenue

21 Service https://www.irs.gov/irb/2016-10_IRB/ar17.html "The Proposed Regulations clarify and

22 further develop the eligibility requirements for a political subdivision. To qualify as a political

23 subdivision under the Proposed Regulations, an entity must meet three requirements, taking into

24 account all of the facts and circumstances: sovereign powers, governmental purpose, and

25 governmental control. The Proposed Regulations also authorize the Commissioner to set forth in

26 future guidance to be published in the Internal Revenue Bulletin additional circumstances in

27 which an entity qualifies as a political subdivision". Internal Revenue Bulletin, 2016-10, dated

28 March 7, 2016. AHS does not meet all the requirements to be considered as a political

Complaint for Damages.

1    subdivision of the State of California because it doesn't have all three requirements such as

2    sovereign powers, governmental purpose and governmental control.

3         While performing my duties as a Monitor Technician for 12 hour shifts, I was entitled for

4    three (3) fifteen (15) minute paid breaks and one (1) thirty (30) minute unpaid meal break. In

5    reality, I got only 30 minute unpaid lunch break and two 15 minute paid breaks when I worked

6    with Charge Nurses Beverly, Kim and Vera. I was not getting one 15 minute break. Thus, AHS

7    broke Labor Code Section 226.7. Also, AHS broke 29 CFR 785.18. For each not received fifteen

8    minute break, an employee is entitled to get paid for additionally one hour of an hourly pay rate.

9    I did not receive at least one fifteen minute break per shift, and I did not receive the payment for

10   one hour of job for each non-received break. When I worked with Charge Nurse Nidia, I got one

11   30 minute unpaid lunch break and three 15 minute paid breaks.

12        Moreover, because I worked with cardiac monitors constantly observing video display

13   screens, I was entitled to 10(ten) minute breaks every hour according to the policy of AHS.

14   However, no one Charge Nurse gave me 10 minute breaks every hour according to written

15   policies of Alameda Health System. Thus, AHS broke The Occupational Safety and Health Act

16   of 1970 (29 U.S.C. 651, et seq.) which is a Federal statute of general application designed to

17   regulate employment conditions relating to occupational safety and health and to achieve safer

18   and healthier workplaces throughout the Nation.

19        I approached Manager of Step Down Unit Mr. Verrilien Clerve and asked him questions

20   about my part-time employment status while actually working full time, about not received shift

21   differentials and overtime, not received 15 minute breaks and why I was denied my affiliation to

22   the Union. Mr. Clerve promised to think about the situation but I continued to get paychecks

23   without shift differentials, overtime payments, I was not receiving paid 15 minute breaks, and I

24   was still considered a part-time employee while working full time. I started to approach a new

25   appointed Director of Step Down Unit Mr. Gilbert Harding, and I asked him the same questions.

26   Mr. Harding promised to think but nothing changed. I had a verbal conversation with Mr.

27   Harding approximately on August 25th, 2013 but nothing changed.

28

Complaint for Damages.

On September 5, 2013 I sent a letter to Mr. Harding where I listed these questions (Attachment 4 – my letter to Mr. Harding dated September 5th, 2013). Two days later, on September 7, 2013, I was fired in twenty minutes after the beginning of my shift (Attachment 5 – Termination letter). In this letter, Mr. Harding said that my employment had been terminated due to discrepancies between acceptable employment standards and those I exhibited during my employment with AHS. I was totally at a loss. To my the best of my knowledge, I did all the best I could for AHS, its patients and staff. When I asked Mr. Harding to give me examples of these alleged discrepancies, his answer was, "We are not talking about it today". So, he didn't give me any examples of what I did wrong.

By firing me on September 7th, 2013, AHS broke a lot of Federal laws and one State of California law:

1) for firing me for asking the question why I was denied my affiliation to the Union, AHS broke 29 U.S. Code § 158 - Unfair labor practices. 29 U.S. Code § 158(a)(3) says: "It shall be an unfair labor practice for an employer...by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization"

2) for firing me for complaining about not getting my 10 minute breaks, AHS broke 29 CFR Part 1977 - DISCRIMINATION AGAINST EMPLOYEES EXERCISING RIGHTS UNDER THE WILLIAMS-STEIGER OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970. Please, read § 1977.12(a): "...section 11(c) also protects employees from discrimination occurring because of the exercise "of any right afforded by this Act". For filing a complaint under 29 CFR §1977, I don't have to initially file a claim with the Secretary of Labor within 30 days "where the employer has concealed, or misled the employee regarding the grounds for discharge or other adverse action; or where the discrimination is in the nature of a continuing violation". See 29 CFR §1977.15(3). In my case, the employer AHS concealed (never notified) me that I was eligible for 10 minute breaks every hour because I was constantly observing video display screens. AHS claimed that this policy had not been applied

Complaint for Damages.

since 2011. However, this policy was active on the Intranet while I was working in 2013, and there was no document or written decision of the Committee of AHS that this policy is no longer active. Thus, AHS continuously violated this policy.

1) for firing me for asking questions regarding my employment status, not received shift differentials, overtime, breaks, and for asking about making me a full-time employee and assisting me in my tuition, AHS broke 29 U.S. Code § 158(c) - Expression of views without threat of reprisal or force or promise of benefit. "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit"

2) for the same purpose, AHS broke 42 U.S. Code § 2000e–3 - Other unlawful employment practices.

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

3) also, by retaliating and unlawfully terminating me, AHS broke the Californian law - Labor Code section 98.6 for "…complaining orally or in writing about unpaid wages, or for exercising (on behalf of oneself or other employees) any of the rights provided under the Labor Code or Orders of the Industrial Welfare Commission, including, but

Complaint for Damages.

not limited to, the right to demand payment of wages due, the right to express opinions about, support or oppose an alternative workweek election, or the exercise of any other right protected by the Labor Code"

4) According to Cal. Lab. Code §§ 201, 202, and 227.3, AHS was obligated to pay me my final paycheck on the day of termination which was September 7, 2013. In fact, I got my last paycheck in mail only on October 5, 2013 (Attachments 6 and 7)

5) another possible reason of termination was discrimination against my Russian origin. The fact is that I was the second Monitor Technician of the Russian origin who was fired from AHS. The first lady was Svetlana Muzychenko, and she was fired soon after the beginning of her employment. If my suggestion is correct, AHS broke Title VII of the Civil Rights Act of 1964

6) by denying my affiliation to the Union, by retaliating and unlawfully terminating me, by refusing to pay me promised shift differentials and overtime, by refusing to promote me to a full-time position and denying my educational benefits, AHS conducted acts of "Malice" which means "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others", "Oppression" which means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights", and "Fraud" which means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury". See California Civil Code 3294.

Source:

http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=3294.&lawCode=CIV

Complaint for Damages.

1         I filed a claim with DIR, DLSE in September 2013. My case number is 32741 Drevaleva

2   v Alameda Health System. Deputy of the Labor Commissioner Ms. Catherine Daly was assigned

3   to work on my case. Due to my health issues, I went to Russia in 2014, and I communicated with

4   Ms. Daly via email.

5         Ms. Daly emailed me a letter dated June 16, 2014 (Attachment 8). She stated that I had

6   been fired from AHS due to negligence that I expressed towards the patient. It was a pure lie and

7   defamation (Code of Civil Procedure 340 (c)). Source:

8   http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=CCP&sectionNum

9   =340  Ms. Daly's statement that I expressed negligence towards the patient is a libel which is a

10   written defamation. It damages my both personal and professional reputation in the community.

11   In fact, I have not exhibited negligence towards any patient. The incident with the patient

12   happened in the middle of July 2013 (if I remember it correctly). I was observing the patient's

13   electrocardiogram on the monitor. There were some changes on the EKG that I documented. I

14   showed these changes to Medical Doctor Sina Rachmani who read the EKG and agreed with my

15   EKG interpretation. It means that I did not make a mistake reading the patient's EKG, and a

16   Medical Doctor confirmed it. The patient died. I immediately reported to Mr. Harding that I had

17   reported the patient's EKG to Dr. Rachmani who agreed with my interpretation. After the

18   patient's death, I reported at three Root Cause Analysis (RCA) meetings that I had shown the

19   patient's EKG to Dr. Rachmani who agreed with my interpretation. It means that I did not

20   exhibit negligence towards the patient because I accurately documented changes on the patient's

21   EKG (I printed out rhythm strips with the periods of normal EKG and the periods with changes

22   on the EKG), I wrote my EKG interpretation, and the physician agreed with what I wrote.

23   Because I had a lower position (a Medical Technician) and Dr. Rachmani had a higher position

24   (a Medical Doctor), his opinion prevailed. For example, if any Registered Nurse read the EKG

25   differently, the opinion of a Medical Doctor would prevail over RN's interpretation. In my case,

26   my EKG interpretation and Dr. Rachmani's one were the same.

27         After the patient's death and three RCA meetings, I was allowed to continue performing

28   my duties as a Monitor Technician. During my employment with AHS, from the patient's death

Complaint for Damages.

1  until the moment of my termination, nobody ever said to me that I had exhibited negligence
2  towards the patient. My Certified Cardiographic Technician (CCT) certificate issued by
3  Cardiovascular Credentialing International (CCI) was not revoked or restricted, and it remained
4  active. I remained a part-time employee while working full-time. Assistant Manager Mr.
5  Masangkay gave me a good Letter of Reference dated August 21st, 2013 (Attachment 9). I did
6  not get any verbal warning, and I was not written up. All cases where healthcare providers really
7  expressed negligence towards the patient are subjects to an investigation. I remember how one
8  RN at Kaiser Permanente really exhibited negligence towards the patient, and the patient died. I
9  worked during that shift, and I underwent an investigation as well as other employees of Kaiser
10 Permanente who worked on that night. That RN was immediately fired from his job. His license
11 was immediately revoked. After the patient died at AHS, I did not undergo any investigation due
12 to negligence, and nobody started a lawsuit against me for professional negligence.

13      According to Code of Civil Procedure 340.5 (2), ""Professional negligence" means a
14 negligent act or omission to act by a health care provider in the rendering of professional
15 services, which act or omission is the proximate cause of a personal injury or wrongful death,
16 provided that such services are within the scope of services for which the provider is licensed
17 and which are not within any restriction imposed by the licensing agency or licensed hospital". I
18 did not exhibit a negligent act because I accurately documented the changes on the patient's
19 EKG. I did not exhibit any omission because my EKG reading was confirmed by a Medical
20 Doctor. So, according to the law, I did not exhibit negligence to that patient or any other one.

21      If I really exhibited negligence (a negligent act or an act of omission), I would have been
22 immediately fired for cause. AHS would revoke my CCT certificate, I would be written up, and
23 it would stay on my personnel record, I would undergo a process of investigation which is
24 different from RCA, probably I would be sued by the patient's relatives or AHS, the word
25 "negligence" would be written in my Termination Letter, I would not get a good Letter of
26 Reference, AHS would report the act of negligence to Employment Development Department
27 (EDD), and I would not get my Unemployment Insurance benefits. In fact, AHS reported to
28 EDD that a reason of my termination was "Probationary release"(Attachment 10), and I was

Complaint for Damages.

getting Unemployment Insurance benefits (Attachment 11). Also, if I really exhibited negligence, I would not be hired by any healthcare facility. In fact, after being terminated from AHS, I was hired twice by the H.E.L.P agency for the position of an EKG Technician at Children's Hospital in Oakland in 2013 and by Albuquerque Veterans Affairs Medical Center in New Mexico for a full time position of a Medical Instrument Technician (EKG) (Attachment 12). Besides, I was hired by two caregiving agencies: In-Home Supportive Services in November 2016 and California Caregivers in January 2017. Before getting hired, I got my background checked a few times and got my fingerprints dome three times in 2016 and 2017. If I exhibited medical negligence, it would stay on my permanent record, and I would not be privileged to take care of elderly people with being registered with the State of California (I have my HCA number), and I would not be privileged to serve veterans at the VA hospital.

In my letter to Ms. Daly (Attachment 13) dated June 18, 2014 and August 6, 2016, I listed these reasons why I did not exhibit negligence to the patient. However, Ms. Daly and her Supervisor Ms. Healy did not want to take into their consideration all these facts. They said that my evidence is not sufficient, and they never explained why all these facts that I listed are not sufficient. I asked them to give me written explanations but I got nothing. Ms. Daly even attempted to get me withdraw my case (Attachment 14). She did it not because she wanted to avoid a negative decision that would become a public record. She intentionally committed it because she wanted to support my retaliator AHS. If I withdrew my claim from DIR, I would lose an opportunity to file a lawsuit against AHS and get back what I am entitled to get (unpaid wages, reinstating me back to work and a financial compensation for moral damage).

In her letter dated June 16, 2014, Ms. Daly committed another libel (Code of Civil Procedure, 340 (c)). She said, "Moreover, it asserted you already knew you faced termination when you emailed your September 5, 2013 complaints. Therefore your emailed communication could not have triggered the termination. Finally, it explained why all your complaints lacked merit". This is a pure libel. Prior to sending my letter to Mr. Harding on September 05, 2013, I did not know that I "faced termination". Ms. Daly didn't explain to me how I should have known that I "faced termination".

Complaint for Damages.

1    Moreover, Supervisor Ms. Healy committed another libel (Code of Civil Procedure, 340

2    (c)). She accused me in missing an appointment with DIR on September 13, 2016 (Attachment

3    15). To the best of my knowledge, I never had an appointment with DIR on September 13, 2016.

4    I asked Ms. Healy many times to send me proof that I was really scheduled an appointment with

5    DIR on September 13, 2016 (Attachment 16) but I never got an answer.

6    In her email to me dated December 19, 2016, Ms. Healy notified me about her intention

7    to deny my case (Attachment 15). She notified me that I would have to appeal to Director of

8    DIR. Ms. Baker within 10 (ten) days since receiving the Determination letter. I sent a few emails

9    to Ms. Healy, and I provided her with my postal address in Mountain View, CA. I asked to send

10   the Determination Letter to that address. However, I never got the letter. It means that Ms. Healy

11   and Mr. Rood never sent it to me. It means that Ms. Healy and Mr. Rood committed negligence

12   (California Civil Code Section 1714 (a)): "Everyone is responsible, not only for the result of his

13   or her willful acts, but also for an injury occasioned to another by his or her want of ordinary

14   care or skill in the management of his or her property or person, except so far as the latter has,

15   willfully or by want of ordinary care, brought the injury upon himself or herself". Sources:

16   http://statelaws.findlaw.com/california-law/california-negligence-laws.html                and

17   http://codes.findlaw.com/ca/civil-code/civ-sect-1714.html#sthash.raYzJYCE.dpuf

18   Without getting the Denial letter, I was unable to appeal to Ms. Baker because I didn't

19   know the date of the letter and I didn't know the text of the letter. I saw the letter only when I

20   read a Motion to dismiss my case filed by Ms. Ng (Attachment 17).

21   In the Determination letter dated December 29th, 2016, employee of DIR Mr. Eric Rood

22   committed another libel (Code of Civil Procedure, 340 (c)). The letter says, "You claim that your

23   oral and written complaints caused Alameda Health to terminate you on September 7, 2013.

24   However, Alameda Health denied your September 5, 2013 complaints led to your termination. It

25   produced a September 4, 2013 email from your direct supervisor Dana LIttlepage, RN,

26   announcing you would be let go from probation and seeking Human Resource's advice on next

27   steps. This predated your September 5, 2013 letter to Harding". This is a pure libel. I don't know

28   who Ms. Littlepage is. She was never my direct Supervisor. My direct Supervisors were Mr.

Complaint for Damages.

Clerve and Mr. Harding. I never got any letter from Ms. Littlepage. I view the whole statement as a libel. Even if AHS wanted to terminate me from a probationary period for whatever reason, they would notify me in advance, at least in 10-14 days prior to their planned termination date. They would write in my Termination letter that I was released from a probationary period. In my Termination letter, AHS wrote that I was released from my employment due to discrepancies between acceptable employment standards and those I exhibited during my employment with AHS. I was fired in 20 minutes after the beginning of my shift without any warning. Mr. Harding never explained to me what these alleged discrepancies are, and he never advised me to seek advice from Human Resources. Moreover, employees of DIR (Ms. Daly, Ms. Healy, Mr. Rood) never provided me and the Court with a copy of that alleged email from Ms. Littlepage. It means that this alleged email is a fiction and a libel.

In the Determination Letter dated December 29, 2016 Mr. Rood committed another libel (Code of Civil Procedure, 340 (c)). On page 2, Mr. Rood wrote: "On September 7, 2013 Alameda Health dismissed you for "discrepancies between acceptable employment standards and those you exhibited during your employment with us". The evidence established the patient died during your employment". First of all, neither Ms. Daly, nor both Ms. Healy and Mr. Rood together with AHS never specified how I was "guilty" in the patient's death. If Ms. Daly, Ms. Healy or Mr. Rood state that I was guilty in the patient's death, they should give me and the Court a written detailed explanation what were my specific actions that committed a negligent act or an act of omission which led to the patient's death. I never heard these explanations neither from Ms. Daly, Ms. Healy, Mr. Rood nor from AHS.  As I explained many times, I was not guilty in the patient's death. I showed the patient's EKG to Dr. Rachmani who said that I read the EKG correctly. During my employment with AHS, not only one patient died. Ms. Daly, Ms. Healy, Mr. Rood and AHS can't put blame on me for each patient who died in the facility.  I can list a number of omissions that I observed while working with Registered Nurses. I wrote these observations in my letter to Ms. Daly on June 18, 2014. In the case with that particular patient, I observed how the patient's nurse was standing for several minutes in a hallway next to the cardiac monitoring station and saying to the Charge Nurse that the patient was unconscious. To

Complaint for Damages.

1   the best of my knowledge, the nurse was not supposed to leave an unconscious patient

2   unattended in his room. If the nurse found the patient unconscious in his room, the nurse was

3   never supposed to leave the room. She was supposed to immediately start performing CPR doing

4   chest compressions and breaths and yelling for help. My observation was that the Registered

5   Nurse: 1) left the unconscious patient alone in his room, 2) spent too much time (a few minutes

6   which is critical for the unconscious patient) in the hallway staying next to the cardiac

7   monitoring station and reporting to the Charge Nurse that the patient was unconscious. As a

8   Monitor Technician, the scope of my practice was to observe cardiac monitors. I accurately

9   documented changes on the patient's EKG, reported them to Dr. Rachmani, and he said that my

10  EKG reading was correct. That was the only I was legally allowed to do, and I did it. I was not

11  allowed to leave my cardiac monitoring station, go to the patient's room and start performing

12  CPR (Cardio-Pulmonary Resuscitation). So, Ms. Daly's and Mr. Rood's statements that I was

13  fired because the patient had died are libels that puts dirt on my professional and personal

14  reputation (Code of Civil Procedure, 340 (c)).

15      I can give you another incident of the patient's death during my employment with AHS.

16  I don't exactly remember the date of the incident. I noticed that the patient's electrocardiography

17  leads were off, and I didn't see the patient's electrocardiogram.  I reported it to the RN and asked

18  the RN to put the leads back on the patient. The RN ignored my request saying that s/he was

19  busy and didn't have time to go to the patient's room. I repeated my request a few times with

20  intervals of 10-15 minutes. The RN still refused to go to the patient's room and put the leads

21  back. Finally, I heard that the patient was dying. The Code Blue team arrived, and they put the

22  electrodes back on the patient's chest. I observed the patient's EKG which looked as a Normal

23  Sinus Rhythm. In fact, the patient was dead. That discrepancy is called PEA – Pulseless

24  Electrical Activity when the person is dead but the EKG still shows Normal Sinus Rhythm. In

25  this case, like in the first case, I am no way to be considered guilty in the patient's death. In cases

26  with PEA, there is no way for a Cardiac Monitor Technician to report any changes on the

27  Electrocardiogram because there are no changes even if the patient is dead. It is a responsibility

28  of a Registered Nurse to visit the patient's room frequently to make sure that the patient has a

Complaint for Damages.

1  pulse and s/he is breathing. It is also the responsibility of the RN to comply with the Monitor

2  Technician's request to put the leads back on the patient's chest in order to observe the patient's

3  EKG. However, it is a problem with many nurses in many facilities.

4        The Monitor Technician observes cardiac monitors and interprets EKG but s/he doesn't

5  go to the patient's room, checks the patient's pulse and breathing, doesn't have a right to see and

6  evaluate lab results, and doesn't have a right to treat the patient. If the Technician observes

7  changes on the EKG, the Technician is obligated to report these changes to a RN or a physician.

8  The RN or the Physician may confirm the EKG interpretation or deny it. The RN and the

9  Physician may have different interpretations of the same Electrocardiogram.  The Physician's

10  opinion always prevails over the RN's opinion. Since the moment that the EKG Technician

11  reported the changes, s/he is not liable for the next steps of the process of diagnosing and

12  treatment. The RN or the Physician may still have a wrong interpretation but it is no longer the

13  Technician's responsibility. If the Monitor Technician intentionally of by a fact of an omission

14  does not report the changes, s/he is considered to commit a negligent act or an act of an

15  omission, and s/he is liable for the process of diagnosing and treatment of the patient. Like I said

16  many times before, I acted within my scope of practice. I documented changes on EKG and

17  reported them to a physician. The physician agreed with my EKG interpretation. Therefore,

18  nobody can say that I committed a negligent act or an act of the omission, and I am not liable for

19  all next steps that occurred with the patient.

20        On the same page 2 of the Determination Letter, Mr. Rood committed a negligent act

21  (California Civil Code Section 1714 (a)). Mr. Rood wrote: "You denied any negligence and

22  noted Alameda Health kept you working as a monitor technician during the ensuing

23  investigation, failed to stop your unemployment, and never reported you to state licensing. While

24  these arguments are compelling, whether or not you performed negligently or others were

25  responsible are issues well outside the Labor Commissioner's jurisdiction". Ms. Daly acted

26  negligently by: 1) failing to ask AHS for a detailed explanation about what were my specific

27  actions that constituted medical negligence (or what exactly was the negligent act or what was

28  the act of omission that constituted medical negligence towards that particular patient. For

Complaint for Damages.

1    example, I did not perform CPR, or I didn't inform an RN or an MD about the changes on the

2    EKG, or was it something else?). The statement that "the patient died" is too broad. Ms. Daly

3    must describe in detail my specific actions or acts of omission that led to the death of that

4    particular patient, 2) failing to accept into her consideration all my explanations that I wrote in

5    my letter dated June 18, 2014 and August 6, 2016, for example, my explanation that the Medical

6    Doctor confirmed my correct EKG reading, 3) not meeting with all witnesses whom I listed in

7    my June18, 2014 letter (   a) Mr. Adam Cole who can confirm that the word "medical

8    negligence" was never mentioned during the process of my termination on September 7, 2013, b)

9    Ms. Doniea Lawson who can confirm that she was also denied her affiliation to the Union and

10   was not paid promised shift differentials, c) Dr. Sina Rachmani who can confirm that I showed

11   the patient's EKG to him and he agreed with my interpretation, d) Ms. Alana Bell who can

12   confirm that after being fired from AHS I was hired by the H.E.L.P. agency to work as an EKG

13   technician at Children's hospital in Oakland, e) Human Resources of AHS who could give Ms.

14   Daly a copy of my Personal Record where I was never written up and where the word

15   "negligence" was never mentioned, f) Employment Development Department who could

16   confirm that I was getting Unemployment Insurance benefits and who could demonstrate that the

17   reason of termination that AHS gave was "Probationary release" and not "Medical Negligence"/)

18   Why did Ms. Daly ask me to provide a list of witnesses if she never attempted to interview

19   them? Why did Ms. Daly assume that AHS told her the truth about the reason of my termination?

20   The fact is that AHS retaliated and unlawfully terminated me for asking questions about unpaid

21   salary, breaks, and my part-status of employment while actually working full time. Of course,

22   AHS lied to the Labor Commissioner by saying that I committed negligence and the patient died.

23   AHS did it in order to avoid civil penalties for retaliation and unlawful termination. Ms. Daly's

24   direct responsibility was to investigate my case and suspect that AHS was lying. Ms. Daly didn't

25   perform her direct duties thus committing acts of negligence and omissions (California Civil

26   Code Section 1714 (a)).

27        On the same page 2 of the Determination Letter, Mr. Rood committed another negligent

28   act (California Civil Code Section 1714 (a)). Mr. Rood wrote: "On September 14, 2013 Alameda

Health dismissed your workplace complaints by pointing out public employees did not qualify for daily overtime, you miscalculated the overtime given the employer's 24 hour workday; you needed to, and could have, notified your supervisor about missing breaks; the additional 10 minute break ergonomic rule has not been applied since 2011; and your probationary status disqualified you from any Collective bargaining Agreement (CBA) educational benefits. In the claim you filed with the Labor Commissioner's Wage Adjudication unit office these issues were dismissed for lack of jurisdiction". Yes, I got a letter from Mr. Dodson dated September 23, 2013 (not September 14, 2013) – see Attachment 18. In this letter, AHS attempted to answer my questions that I asked Mr. Harding on September 5, 2013. However, AHS committed a lot of negligent acts (California Civil Code Section 1714 (a)) and libel (Code of Civil Procedure, 340 (c)) in this letter. First of all, AHS was supposed to answer my questions before terminating me – this is an act of negligence. Secondly, AHS committed a lot of libel. Here are examples:

1) In an attempt to answer my question about transitioning from a part-time employment status to a full-time, AHS wrote (page 2 of the September 23, 2013 letter): "Full time status is granted when there is a full time position available. Employees who work extra shifts are not automatically made full time unless there is a union contract clause governing such changes in status. The only such clause is in the SEIU General Chapter MOU and requires a six month look back period. While you were employed with AHS you were not represented by SEIU so this clause did not apply to you. Further, if you had been an SEIU member while still employed with AHS, you had not yet worked for the Health System for six months and would not have met the necessary amount of time stipulated by this clause".

During my hiring process, I signed paper in Human Resources of AHS that I agreed to be represented by the Union. After my employment started, I was informed that I was not eligible to be represented by the Union, and the paper with my signature was shredded. Thus, AHS broke a Federal law 29 U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc. (see citation above). This law doesn't

Complaint for Damages.

1    say that both county and public employees are not eligible for the Union

2    representation as well as specific types of workers such as Monitor Technicians.

3    Please, read Page 53 of Memorandum of Understanding between SEIU Local 1021 –

4    General Chapter and the Alameda County Medical Center, January 1, 2012 to March

5    31, 2014 (Attachment 3). "Conversion of Regular Part-Time Employees to Full-Time

6    Status. Any Part-Time employee who regularly works straight hours over his/her base

7    FTE for a period of 26 consecutive weeks shall, upon request, be converted to higher

8    FTE status provided that the extra hours or shifts are not replacing someone out or on

9    a leave who will return to the position". So, this document does not say that I must

10   belong to the Union or a full time position must be available at AHS in order to

11   become a full-time employee. So, this is an example of the libel (Code of Civil

12   Procedure, 340 (c)).

13   2)  Answering my questions about not received overtime payments, AHS wrote: "As a

14       public employer, this state provision does not apply to AHS (see IWC 4-2001). We

15       are obligated by law to pay time and a half only after 40 hours worked in any one

16       week. This policy which you cited, HR policy 2.10 – Wage and hour terms and

17       definitions was out of date. The current version is available on our intranet and reads

18       (which was last revised in June, 2011)". In IWC 4-2001, there is no one word about

19       **public employers**. IWC-4 says only about **State or any political subdivision**

20       **thereof**, including any city, county or special district. I already explained above that

21       this provision does not apply to AHS because it is not the State entity, not a political

22       subdivision, not a city, county or special district. In the HR policy 2.10 – Wage and

23       hour terms and definitions, there is no one word about overtime payments (pages 6

24       and 7 of Alameda County Medical Center, Human Resources, Policy and Procedure

25       Manual). This document was on the Intranet while I was working at AHS. It means

26       that the document was current. After AHS fired me, I lost access to Intranet.

27       Therefore, everything AHS wrote in this paragraph is a libel (Code of Civil

28       Procedure, 340 (c)).

Complaint for Damages.

3) On the same page, AHS wrote: "It does not stipulate that a work day is 8 hours as we employ many employees on a 12 hour shift schedule and our past practice establishes that these employees do not receive overtime unless they cross the 40 hours worked per week threshold. Again, these employees do not receive daily overtime for working more than 8 hours". AHS must follow California overtime law that I cited above. AHS has not demonstrated that it does not have to pay time and a half overtime premiums for working for more than 8 hours. So, this AHS's statement is a libel (Code of Civil Procedure, 340 (c))

4) When I requested to pay me for 2 hours that I spent at the RCA meeting, AHS said: "You will be paid 2 hours for this time worked". I believe I never got that payment in my final check. I was not also compensated for accrued vacation

5) Responding about shift differentials, AHS wrote: "As an unrepresented employee, the SEIU MOU did not apply to you. Your offer letter does not stipulate that you would receive the shift differentials you listed". Again, by denying my affiliation to the Union after I signed the agreement between SEIU MOU and me, AHS broke 29 U.S. Code § 157 - Right of employees as to organization, collective bargaining, etc. (see citation above). The offer letter did not say anything that only SEIU MOU represented employees are eligible to receive shift differentials. By intentionally denying my affiliation to the Union in order not to pay me promised shift differentials, AHS committed fraud. See California Code of Civil Procedure § 338(d). "An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery. by the aggrieved party, of the facts constituting the fraud or mistake".

Also see *Sun'n Sand, Inc. v. United California Bank (1978) 21 Cal.3d 671, 701; Fox v. Ethicon Endo-Surgery, Inc. (2005) 35 Cal.4th 797, 808; Kline v. Turner (2001) 87 Cal.App.4th 1369, 1374.* Source:

http://www.christianattorney.net/statute_of_limitations_fraud_misreprentation_califor nia.html

Complaint for Damages.

The false promise (fraud) committed by AHS meets all descriptions of this category of fraud such as:

a) The defendant made a promise

b) The promise was important to the transaction

c) At the time he or she made the promise, the defendant did not intend to perform it

d) The defendant intended the victim to rely upon the promise

e) The victim reasonably relied upon the promise

f) The defendant did not perform the promise

g) The victim was harmed as a result of defendant not carrying out his or her promise

h) The victim's reliance on the defendant's promise was a substantial factor in causing the victim's harm

Source:

http://www.streetdirectory.com/travel_guide/13711/legal_matters/a_fraud_lawsuit_under_california_law.html

6) In an attempt to answer my question about missing breaks, AHS wrote: "As stated before, the SEIU MOU did not apply to you as an unrepresented employee. Frequently missed breaks are an issue that should have been addressed to your manager as soon as possible. You are entitled to two fifteen minute breaks and a 30 minute lunch break. If you have instances of missed lunch breaks, those should be substantiated and reported so you can be compensated. Missed 15 minute breaks, however, are already compensated". This statement is a libel (Code of Civil Procedure, 340 (c)). As a 12 hour employee, I was entitled to three 15 minute breaks and one 30 minute lunch break. Sometimes, I got three 15 minute breaks but most of the time I got only two. I complained orally to Mr. Clerve and Mr. Harding but nothing changed. After my written complaint, I was fired. These missed 15 minute breaks were supposed to be compensated at a rate of 1 hour of work for each missed break (29 CFR 785.18). Also, AHS broke Labor Code Section 226.7. The statement

Complaint for Damages.

that these breaks were already compensated is a libel (Code of Civil Procedure, 340 (c)) because they were not. See a copy of my pay stub (Attachments 19 and 20) and a copy of my schedule confirming that I worked for 36 hours a week which is considered full time (Attachment 21).

7) Further, AHS wrote: "You were not a member of SEIU. When you worked for AHS your title was unrepresented. To become represented it needed to be claimed by SEIU, and while SEIU has recently done so, we are still in the negotiating process". Again, this statement is a libel (Code of Civil Procedure, 340 (c)). According to 29 U.S. Code § 157, I had a federal right to be represented by the Union. This law does not say that the Union has to start the process for an employee in order to represent him or her, and the Union has to initially negotiate this process with an employer.

8) In an attempt to answer my request to transfer me to a full-time position, AHS wrote: "Given your recent release from employment with AHS these final questions are irrelevant. However, please, be aware that education reimbursement would have required approval from your manager prior to enrollment". The action of AHS firing me in order to avoid transferring me to a full-time position which is eligible for tuition reimbursement is a fraud (California Code of Civil Procedure § 338(d)).

After I signed my agreement to be represented by the Union, AHS committed fraud (California Code of Civil Procedure § 338(d)) by denting my affiliation to the Union in order to avoid transferring me to a full-time position with extended benefits, avoiding paying me shift differentials and paying for my education. See the description of the fraud above.

Employee of DIR, DLSE Mr. Santos denied my wage claim on January 7, 2014 (Attachment 22). In his letter, Mr. Santos said that "the Division does not have jurisdiction over claims for overtime, rest period premiums, differential pay, or waiting time penalties for county employees. This case has been closed for lack of jurisdiction." Mr. Santos didn't cite any provision of law that DLSE really doesn't have jurisdiction over claims for overtime, rest period premiums, differential pay, or waiting time penalties for county employees. Thus, Mr. Santos

Complaint for Damages.

1   committed a negligent act (California Civil Code Section 1714 (a)). Also, Mr. Santos didn't give

2   me any written advice how I can pursue my rights to get paid promised shift differentials etc. It

3   is another negligent act (California Civil Code Section 1714 (a)). When I was hired by Alameda

4   County Medical Center, I did not sign any paper that I am a county employee, and the law for

5   county employees is different that for other employees. Mr. Santos broke Labor Code 98.6 (b)(1)

6   that says that an employee is entitled to " reimbursement for lost wages and work benefits caused

7   by those acts of the employer". Labor Code 98.6 does not say that the Division of Labor

8   Standards Enforcement does not have jurisdiction over county employees.

9        Ms. Daly, Ms. Healy and Mr. Rood are liable for reinstating me back to work at AHS and

10  compensating me with all lost wages and benefits. See Labor Code 98.6 (b)(1): "Any employee

11  who is discharged, threatened with discharge, demoted, suspended, retaliated against, subjected

12  to an adverse action, or in any other manner discriminated against in the terms and conditions of

13  his or her employment because the employee engaged in any conduct delineated in this chapter,

14  including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing

15  with Section 1101) of Part 3 of Division 2, or because the employee has made a bona fide

16  complaint or claim to the division pursuant to this part, or because the employee has initiated any

17  action or notice pursuant to Section 2699 shall be entitled to reinstatement and reimbursement

18  for lost wages and work benefits caused by those acts of the employer". Also, see Labor Code

19  98.6 (3): "In addition to other remedies available, an employer who violates this section is liable

20  for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation

21  of this section, to be awarded to the employee or employees who suffered the violation".

22       Ms. Daly processed my claim for an enormous amount of time - more than three years

23  and four months (from September 2013 to December 2016). Throughout all this time, I was not

24  employed by AHS thus losing my salary and benefits, also losing my opportunities for

25  advancement. I contacted Ms. Healy but she continued performing negligent acts, omissions and

26  libel that Ms. Daly started. Ms. Healy libeled that I had missed my appointment on September

27  13, 2016, and she refused to send me proof that I really had that appointment. She also refused to

28  give me a written explanation about why my evidence was not sufficient despite my numerous

Complaint for Damages.

requests. She failed to send me a Determination letter to my address in Mountain View, CA. I was patiently waiting for a decision for over three years but I got a denial letter signed by Mr. Rood. Also, I got a denial letter from Mr. Santos without any explanations why DLSE doesn't have jurisdiction over public employees and what my next steps should be.

Because of all these actions committed by officials of DLSE, I suffered from:

1) Losing my health and dental insurance that I was getting from AHS. I had some health problems, and I went to Russia to solve these problems because I was uninsured in the USA. For solving my health problems, I stayed in Russia for 2.5 years. My salary in Russia was significantly less than my salary at AHS. I got into a huge debt to U.S. banks, and now I owe a lot of money to American banks (probably, about $20 thousand U.S. dollars) and my friends from whom I borrowed money (approximately, $25 thousand U.S. dollars) for my stay and medical treatment in Russia

2) Losing my life insurance that I was getting from AHS

3) Not performing my professional duties in the USA as a Monitor Technician, losing my professional reputation in the USA

4) Losing my personal reputation because I was accused in committing negligence towards the patient

5) Not having a chance to study in the United States to obtain a license of, for example, a Registered Nurse or a Physician Assistant. Before getting fired, I contacted with Samuel Merritt College about how I can become a Physician Assistant (PA). I was completing classes at Peralta Colleges in order for me to become a PA. Because I was fired and therefore I was forced to travel to Russia and stay there for 2.5 years, I lost that opportunity. So, I lost potential wages as a PA which are much higher than wages of Monitor Technicians

6) Not having a chance to purchase a house in the USA. While I was working at AHS, I investigated the opportunity to buy my own house. I contacted with the Unity Council in the East Bay, and I was promised to get twenty thousand U.S. dollars for

Complaint for Damages.

purchasing my own house. I contacted with the Wells Fargo bank, and I was filling out application to get mortgage. I was fully qualified to get twenty thousand U.S. dollars from the Unity Council and the mortgage from the bank. I had no problems with IRS regarding my tax return forms in order for me to buy a house. Now, after being absent from the USA for a long time, not working in the USA and not filing out tax return documents, I am not qualified for purchasing my own home

7) I am in the same situation regarding purchasing my own car. Now, I am in a deep debt to U.S. banks and my friends. Before leaving to Russia, my credit history was excellent. Now, no one bank will give me a loan to buy a car, a home, and a student loan

Now, I am in the situation that I need to work for a few years (I think not less than 5-7 years) to pay my debt off to the U.S. banks and my friends, to work for three years to file IRS tax return documents, to fully repair my credit history and get qualified to get a student loan and a mortgage and a car loan. Also, I feel very morally damaged that I was retaliated and unlawfully terminated for asking questions about unpaid wages, breaks, and about my part time employment status while actually working full time.

Officials of DIR, DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood violated my rights that I have pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution.

The Fifth Amendment says: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Source: http://constitution.findlaw.com/amendments.html

The Fourteenth Amendment, Section 1 says: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the

Complaint for Damages.

1    State wherein they reside. No State shall make or enforce any law which shall abridge the

2    privileges or immunities of citizens of the United States; nor shall any State deprive any person

3    of life, liberty, or property, without due process of law; nor deny to any person within its

4    jurisdiction the equal protection of the laws".

5    Source: http://constitution.findlaw.com/amendments.html

6         Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood deprived me of liberty and property.

7         Although the Eleventh Amendment shields unconsenting states from actions brought by

8    private parties (*Supreme Court: Hans v. Louisiana, 134 U.S. 1, 10, 10S. Ct. 504, 33L, Ed. 842*

9    *(1890)*), not all conduct my agents of the state is protected from litigation by the Eleventh

10   Amendment (*Supreme Court: Edelman v. Jordan, 415 U.S. 651, 94, 94 S. Ct. 1347, 39 L. Ed. 2nd*

11   *662 (1974)*).  Whether an action against a state official is barred by the Eleventh Amendment

12   depends largely on whether the action is brought against the official in the official's official or

13   personal capacity and on what type of relief is sought. Actions for money damages against state

14   officials in their official capacity are barred by the Eleventh Amendment (*Supreme Court:*

15   *Alabama v. Pugh, 438 U.S. 781, 98, 98 S. Ct. 3057, 57 L. Ed. 2nd 1114 (1978); Ex parte Ayers,*

16   *123 U.S. 443, 8, 8 S. Ct. 164, 31 L. Ed. 216 (1887); Hagood v. Southern, 117 U.S. 52, 6, 6 S. Ct.*

17   *608, 29 l. Ed. 805 (1886)*), but state officials acting in their official capacities can be subjected to

18   suit in federal court unprotected by Eleventh Amendment immunity when other kinds of relief

19   are sough (*Supreme Court: Kentucky v. Graham, 443 U.S. 159, 105, 105 S. Ct. 3099, 87 L. Ed.*

20   *2nd 114 (1985)* – official capacity actions for prospective relief and personal capacity actions for

21   damages against state official not barred by Eleventh Amendment; *Alabama v. Pugh, 438 U.S.*

22   *781, 98, 98 S. Ct. 3057, 57 L. Ed. 2nd 1114 (1978)* – inmate suit against state agency and state

23   officials in federal court for violation of Eight and Fourteenth Amendments dismissed by

24   Eleventh Amendment against state agency but not dismissed against state officials). On the other

25   hand, officials may be sued in their personal capacities regardless of the type of relief sought

26   (*Ninth Circuit: Demery v. Kupperman, 735 F. 2nd 1139 (9th Cir. 1984)* – action against state

27   officials in personal capacity not barred under 42 U.S. Code §1983 or by Eleventh Amendment).

28

Complaint for Damages.

Source: Trial Practice Series. Civil Actions Against State and Local Government, its Divisions, Agencies and Officers. Second edition.

I am suing officials of Department of Industrial Relations, Division of Labor Standards Enforcement: Ms. Catherine Daly, Ms. Joan Healy, Mr. Bobbit Santos and Mr. Eric Rood **in their personal capacities.**

Government Code Section 820 says that:

a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person.

b) The liability of a public employee established by this part (commencing with Section 814) is subject to any defenses that would be available to the public employee if he were a private person.

Source:

http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=820.&lawCode=GOV

In her Motion to dismiss my first Complaint, Ms. Ng tried to say that DLSE's employees are immune under Government Code Section 820.2 which says: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused".

In *Johnson v. State of California (1968) 69 Cal.2d 782,* the California Supreme Court granted review define the meaning of "discretionary acts" for which governmental entities are immune under Gov. Code §820.2. (the state official chose not to warn potential foster parents about the boy's medical, psychiatric and other institutional records). **This issue presented: Whether there is a duty of care** when government officials are involved, where they fail to warn of dangerous conditions. Or. as the defendants argued. whether the decision not to warn of dangerous conditions was a "discretionary" act. triggering Gov. Code §820.2 immunity. The

Complaint for Damages.

Supreme Court held that the decision as to whether to advise of latent, dangerous characteristics in the youth did not constitute "the exercise of the discretion". As such, Gov. Code, § 820.2 immunity does not apply.

Johnson went further giving meaning to the term "discretionary" for future litigation.

First, stating that courts should not casually decree governmental immunity; through a literal interpretation of "discretionary" or otherwise, [that] 820.2 should not be made a "catchall section broadly encompassing every judgment exercised at every level.... [That,] to borrow the language of Justice Frankfurter ... [would be] to make the act `self-defeating by covertly imbedding the casuistries' of some of the pre-Muskopf cases." (*Sava v. Fuller, supra, 249 Cal. App.2d 281, 291*.) [that the 1963 Tort Claims Act alter the basic teaching of *Muskopf v. Corning Hospital Dist., supra, 55 Cal.2d 211, 219 " (1961)*, **that when there is negligence, the rule is liability, immunity is the exception.**"]

Next, stating that "the existence of... alternatives facing the employee does not perforce lead to a holding that the governmental unit thereby attains the status of non-liability under section 820.2. These alternatives may well play a major part in the resolution of the substantive question of negligence; they do not, however, dispose of the threshold question of immunity.

Instead, the court distinguished between "planning" and "operational" levels of decision-making (cf. *Dalehite v. United States, supra, 346 U.S. 15, 35-36 [97 L.Ed. 1427, 1440-1441, 73 S.Ct. 956]*), the latter not immune. [To maintain a Separation of Powers] AND [furthermore] that "to be entitled to immunity the state must make a showing that such a policy decision, [that] consciously balancing risks and advantages, took place. The fact that an employee normally engages in `discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. APPLYING THESE CONCLUSIONS TO THE CASE BEFORE IT, the Johnson Court found the decision to grant parole to be the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination. However, to the extent that a parole officer consciously considers pros and cons in deciding what information, if any, should be given the foster parents of latent dangers facing them, he makes

Complaint for Damages.

1  such a determination at the lowest, ministerial rung of official action, and no immunity applies.

2

3  SUBSEQUENT HISTORY:

4  "In *Barner v. Leeds (2000) 24 Cal.4th 676, 102 Cal.Rptr.2d 97, 13 P.3d 704*, this court

5  rejected a request by 59 California cities and towns that we reconsider and overrule our 1968

6  decision in Johnson, supra, *69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352*. We observed in

7  Barner that the principles set forth in Johnson reflected more than three decades of authoritative

8  precedent, and that the Legislature during that time had made no changes to the governmental

9  immunity provision of section 820.2 addressed in Johnson. (*Barner v. Leeds, supra, 24 Cal.4th

10  at p. 685, fn. 2, 102 Cal.Rptr.2d 97, 13 P.3d 704.)*"   *Perez-Torres v. State 42 Cal.4th 136 (2007)*.

11          Source: http://cal-tort.blogspot.com/2010/03/year-was-1968.html

12

13          I demonstrated all examples how officials of DLSE Ms. Daly, Ms. Healy, Mr. Santos and

14  Mr. Rood demonstrated negligence during the investigation of my case. Under Johnson, they are

15  not protected by Gov. Code §820.2, they are liable and not immune.

16

17          <u>Statutes of limitations.</u>

18          For the lawsuit against AHS, the general rules are:

19      1)  The statute of limitations to bring a suit for wage liabilities created by statute,

20          including Labor Code violations, is three years (California Code of Civil Procedure §

21          338(a)

22      2)  The statute of limitations for wrongful termination based on a Labor Code violation is

23          two years (California Code of Civil Procedure § 335.1).

24          However, the Plaintiff has no guilt that employees of DLSE processed my claim for an

25  enormously long time – for over three years and four months. I was waiting for a decision, and I

26  was hoping that Ms. Daly will take into her consideration all facts that I presented in my June 18,

27  2014 letter. After I sent this letter to her, Ms. Daly processed my claim for more than two years. I

28  delivered the same letter to her office on August 6, 2016 after I returned back to California. It

Complaint for Damages.

took five and a half more months for Ms. Daly to process my claim which is a considered a negligent act (California Civil Code Section 1714 (a)). When a case is under an investigation, all statutes of limitations must be tolled.

On July 27, 2016, in *Reginald Mitchell v. California Department of Public Health ("Mitchell") (Superior Court Case No. BC550911)*, the Court of Appeal for the Second Appellate District held that the one year statute of limitations for filing a California Fair Employment and Housing Action ("FEHA") civil action **was equitably tolled while the employee's complaints were investigated**. Under the Court's ruling, an employee may have substantially longer than one year to file a civil discrimination case against his or her employer. In Mitchell, the Court held that Plaintiff's Complaint was timely even though it was filed nearly three years after the DFEH issued its "right to sue" letter

In *Mitchell*, plaintiff was a health facilities investigator for the California Department of Health ("Department"). Plaintiff resigned from the Department in 2011 after filing internal complaints for race discrimination. Mitchell subsequently filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC referred the complaint to the California Department of Fair Employment and Housing ("DFEH"). Pursuant to California Government Code section 12965(b), employees must exhaust their administrative remedies with the DFEH and receive permission to sue in the form of a "right to sue" notice before they can file a civil lawsuit. The DFEH issued Mitchell a "right to sue" letter on July 9, 2011. The DFEH's letter stated that Mitchell had one year from July 9, 2011 to bring a civil lawsuit. The letter also stated that "pursuant to [California] Government Code section 12965, subdivision (d)(a), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint.

More than two years after the DFEH issued its "right to sue" letter, the EEOC issued a "letter of determination" stating there was "reasonable cause" to believe Mitchell had suffered racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.

Complaint for Damages.

(Title VII)). The EEOC was unable to settle the matter, and the United States Department of Justice issued a federal "right to sue" notice on March 21, 2014. Under federal law, an aggrieved employee only has ninety days to file a lawsuit after receiving a federal "right to sue" notice. Mitchell filed a civil lawsuit for racial discrimination on July 8, 2014. The lawsuit was filed almost three years after the DFEH issued its "right to sue" notice, 11 months after the EEOC issued its "letter of determination" and 107 days after the issuance of the federal "right to sue" notice. The Department demurred to Mitchell's Complaint arguing that it was barred by the 90 day federal statute of limitations time period. The trial court sustained the Department's demurrer without leave to amend.

The Court of Appeal reversed the trial court. The Court held that the one year time period triggered by the DFEH's issuance of a "right to sue" notice on September 9, 2011 was "equitably tolled" while the EEOC investigated Mitchell's allegations. The statute of limitations did not begin to run again until the EEOC issued its "letter of determination" on September 30, 2013. Since Mitchell's Complaint was filed less than a year after the issuance of the EEOC's "letter of determination," his Complaint was "timely" even though it was filed several years after the DFEH issued its notice, and 17 days past the expiration of the federal statute of limitations.

The *Mitchell* case is a reminder that employers need to consider more than just the statutory deadlines when calendaring the statute of limitations for employee discrimination lawsuits. As made clear by *Mitchell* and the cases it relies on, equitable factors can frequently extend the time period for filing a civil lawsuit. Thus, while the statutes provide "dates certain" for the period in which an employee must file his or her civil lawsuit, the courts will look carefully at the specific facts of the case and will exercise their equitable powers to permit employees to file claims that might be barred by the black letter of the statutes.

Source: http://www.jdsupra.com/legalnews/eeoc-investigation-can-toll-statute-of-33677/

**Summary**.

Complaint for Damages.

1) The District Court has jurisdiction over this Amended Complaint under diversity of citizenship and because it rises under the Constitution, laws and treaties of the United States

2) I am filing an Amended Complaint against AHS. I already listed Federal and State of California's provisions of law that AHS broke. I already demonstrated that applicable statutes of limitations must be tolled because my case was under the investigation conducted by DIR, DLSE. I was retaliated and unlawfully terminated for asking questions about my workplace conditions, wages and overtime, breaks, my affiliation to the Union, occupational safety question, and I asked to make me a full time employee. I am asking the Court to get me reinstated back to work. Also, according to Labor Code 98.6 (b)(1), I am also asking the Court to order AHS to pay me all not received wages and benefits from September 7, 2013 to the moment when a Court will make a decision about my case. Also, according to Cal. Lab. Code §§ 201, 202, and 227.3, I am asking the Court to order AHS to pay a penalty for delaying my last pay check for almost one month. Labor Code Section 203(a) says: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days". Source: https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=LAB& sectionNum=203.

Also, I am asking the Court to order AHS to pay me additionally 10 thousand U.S. dollars as a penalty for discriminating and unlawfully terminating me according to Labor Code 98.6 (3). Also, according to California Civil Code 3294(a), I am asking the Court to grant me with a compensation for exemplary damages from AHS as much as 5 (five) million U.S. dollars. California Civil Code 3294(a) says: "In an action for the breach of an obligation not arising from contract, where it is proven by

Complaint for Damages.

clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant"

There is no maximum dollar amount of punitive damages that a defendant can be ordered to pay. In the case of *Liebeck v. McDonald's Restaurants (1994)*, 79-year-old Stella Liebeck spilled McDonald's coffee in her lap which resulted in second and third degree burns on her thighs, buttocks, groin and genitals. The burns were severe enough to require skin grafts. Liebeck attempted to have McDonald's pay her $20,000 medical bills as indemnity for the incident. McDonald's refused, and Liebeck sued. During the case's discovery process, internal documents from McDonald's revealed the company had received hundreds of similar complaints from customers claiming McDonald's coffee caused severe burns. At trial, this led the jury to find McDonald's knew their product was dangerous and injuring their customers, and that the company had done nothing to correct the problem. The jury decided on $200,000 in compensatory damages, but attributed 20 percent of the fault to Liebeck, reducing her compensation to $160,000. The jury also awarded Liebeck $2.7 million in punitive damages, which was at the time two days of McDonald's coffee sales revenue. The judge later reduced the punitive damages to $480,000.

Source: https://en.wikipedia.org/wiki/Punitive_damages

3) I am filing this Amended Complaint against officials of DIR, DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood in their personal capacities. Therefore, these employees are not protected by the Eleventh Amendment to the Constitution and 42 U.S. Code §1983. Officials may be sued in their personal capacities regardless of the type of relief sought (see citation above). Therefore, am asking the Court to grant me with monetary compensations from each official: Ms. Daly - $200 thousand U.S. dollars, Ms. Healy - $200 thousand U.S. dollars, Mr. Santos - $200 thousand U.S. dollars and Mr. Rood - $200 thousand U.S. dollars for committing libel, negligence, and for violating my rights that I have under the Fifth and the Fourteenth

Complaint for Damages.

Amendments to the U.S. Constitution. I explained in detail all acts of libel and negligence which led to severe financial, professional, personal, moral damages as well as damages of my health.

4) This is an Amended Complaint. When I filed my first Complaint on December 29, 2016, Honorable Judge Laurel Beeler granted my application to proceed *in forma pauperis,* and my first complaint was delivered to defendants AHS and DIR (DLSE) by the U.S. Marshals. Because this is an Amended Complaint, and I am suing officials of DIR, DLSE Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood, I am asking the Court to order the U.S. Marshals to deliver the Amended Complaint to Defendants Ms. Daly, Ms. Healy, Mr. Santos and Mr. Rood.

**A list of attachments.**

Attachment 1 – Offer letter

Attachment 2 –Alameda County Medical Center, Human Resources, Policy and Procedure Manual

Attachment 3 - Memorandum of Understanding between SEIU Local 1021 – General Chapter and the Alameda County Medical Center, January 1, 2012 to March 31, 2014

Attachment 4 – my letter to Mr. Harding dated September 5th, 2013

Attachment 5 – Termination letter dated September 7, 2013

Attachments 6 – my final pay check

Attachment 7 – the envelope from my final pay check, the date on the envelope is October 4, 2013. I got it in mail on October 5, 2013

Attachment 8 - Ms. Daly's letter to me dated June 16, 2014

Attachment 9 – a Letter of Reference from Mr. Masangkay dated August 21, 2013

Attachment 10 – a letter from Employment Development Department. AHS stated a reason of my termination as "Probationary Release" and not "Negligence"

Attachment 11 – form 1099G from Employment Development Department confirming that I was receiving Unemployment Insurance benefits after being terminated from AHS

Complaint for Damages.

1        Attachment 12 – Letter from Albuquerque Veterans Affairs Medical Center confirming

2  my appointment for a full time position of a Medical Instrument Technician (EKG) starting April

3  2nd, 2017

4        Attachment 13 – my letter to Ms. Daly dated June 18, 2014 and August 6, 2016

5        Attachment 14 - Ms. Daly's withdrawal form

6        Attachment 15 – Ms. Healy's email dated December 19, 2016 where she accused me in

7  missing an appointment with DIR on September 13, 2016 and where she notified me about her

8  decision to deny my case

9        Attachment 16 – four my emails to Ms. Healy dated December 20, 2016, December 29,

10  2016, again December 29, 2016, January 1, 2017 where I asked to prove me that I really had an

11  appointment on September 13, 2016 and where I asked to explain why my evidence was not

12  sufficient

13        Attachment 17 – Determination letter from DLSE dated December 29, 2016

14        Attachment 18 – a letter from Mr. Dodson dated September 23, 2013

15        Attachments 19 and 20 – a copy of my pay stub

16        Attachment 21 – a copy of my schedule confirming that I worked for 36 hours a week

17        Attachment 22 – a letter from Mr. Santos denying my wage claim without any citation of

18  the law and without any instructions what my other options are."

19

20        40. Please, see my Verification at (**Doc. No. 40-23, ER 07414 Vol. 3, page 616, lines 25-**

21  **28**), "I, Plaintiff Tatyana Drevaleva, declare under the penalty of perjury that everything I wrote

22  in my Amended Complaint is true and correct.

23        Date: April 10, 2017

24        Tatyana E. Drevaleva."

25

26        41. On April 24, 2017, the NTPC and Attorneys Mr. Travelstead and Ms. Cho filed a

27  document named (**ER 07414 Vol. 4, pages 617-637**) "DEFENDANT ALAMEDA HEALTH

28  SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP

Complaint for Damages.

1   12(b)(1), OR IN THE ALTERNATIVE, MOTION TO DISMISS PURSUANT TO FRCP

2   12(b)(6.) Proposed Order.

3

4        TO PLAINTIFF IN PRO SE:

5        PLEASE TAKE NOTICE that on June 1, 2017, at 9:30 a.m. in Courtroom C, 15th Floor

6   of the above entitled Court, Defendant ALAMEDA HEALTH SYSTEM ("AHS") moves this

7   Court for an Order granting AHS's Motion to Dismiss the Amended Complaint filed by Plaintiff

8   TATYANA EVGENIEVNA DREVALEVA ("Plaintiff") pursuant to Federal Rule of Civil

9   Procedure 12(b)(1) for lack of subject matter jurisdiction. In the alternative, AHS moves this

10  Court for an Order granting AHS's Motion to Dismiss Plaintiff's Amended Complaint for failure

11  to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure

12  12(b)(6).

13        Specifically, this motion is made on the following grounds:

14        1. Plaintiff has not met her burden to invoke either diversity or federal question

15  jurisdiction (F.R.C.P 12(b)(1).) ;

16        2. Plaintiff's claims based on the California Labor Code and Industrial Welfare

17  Commission Order fail because they do not apply to public entities (F.R.C.P 12(b)(6).) ;

18        3. Plaintiff's tort claims for libel, fraud and negligence fail because Plaintiff has not pled

19  compliance with the claims presentation (F.R.C.P 12(b)(6).);

20        4. Plaintiff has failed to set forth a prima facie case of discrimination based on national

21  origin (F.R.C.P 12(b)(6).);

22        5. Plaintiff's request for punitive damages is barred against public entities as a matter of

23  law (F.R.C.P 12(b)(6).);

24        The motion will be based on this Notice and Motion, the Memorandum of Points and

25  Authorities, and the pleadings and papers filed herein.

26      Dated: April 24, 2017              NARAYAN TRAVELSTEAD P.C.

27                                         /s/ Timothy C. Travelstead

28                                         Timothy C. Travelstead

Complaint for Damages.

1

Attorney for Defendant

2

Alameda Health System

3

4  Timothy C. Travelstead, Esq. (SBN 215260)

5  Julie L. Cho, Esq. (SBN 225401)

6  NARAYAN TRAVELSTEAD P.C.

7  24301 Southland Drive, Suite 607

8  Hayward, CA 94545

9  Telephone: (650) 403-0150

10  Facsimile: (650) 403-0157

11  Attorneys for Defendant

12  ALAMEDA HEALTH SYSTEM

13

14  DEFENDANT ALAMEDA HEALTH SYSTEM'S MEMORANDUM OF POINTS

15  AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL

16  RULE OF CIVIL PROCEDURE 12(b)(1), OR IN THE ALTERNATIVE, MOTION TO

17  DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND

18  STRIKE UNDER RULE 12(f)

19  ....

20  **I. INTRODUCTION**

21  Defendant ALAMEDA HEALTH SYSTEM ("AHS") moves this Court for an order

22  dismissing Amended Complaint filed by Plaintiff TATYANA EVGENIEVNA DREVALEVA

23  ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

24  jurisdiction. Plaintiff has not met her burden to invoke diversity or federal question jurisdiction.

25  In the alternative, AHS's Motion to Dismiss pursuant to Federal Rule of Civil Procedure

26  12(b)(6) should be granted on the following grounds: (1) Plaintiff's claims based on the

27  California Labor Code and Industrial Welfare Commission Order fail because they do not apply

28  to public entities, (2) Plaintiff's tort claims for libel, fraud and negligence fail because Plaintiff

Complaint for Damages.

1    has not pled compliance with the claims presentation, (3) Plaintiff has failed to set forth a prima

2    facie case of discrimination based on national origin, and (4) Plaintiff's request for punitive

3    damages is barred, because public entities are not liable for punitive damages under California

4    law[1].

5         [1] AHS's request to strike punitive damages is made pursuant to a Rule 12(b)(6) motion in

6    light of *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), which held Rule

7    12(f) "does not authorize district courts to strike claims for damages on the ground that such

8    claims are precluded as a matter of law." Id. at 974-975. The request to strike punitive damages

9    may be treated as a Rule 12(f) motion if the Court prefers.

10

11   **II. BACKGROUND**

12   **A. Procedural Summary[2].**

13        Plaintiff filed her Complaint on December 29, 2016, in pro per, against AHS, her former

14   employer, without any allegations to invoke subject matter jurisdiction in federal court. (ECF

15   No. 1.)[3] Plaintiff did not allege any cause of action and AHS was forced to speculate as to the

16   causes of action Plaintiff may be alleging. AHS moved to dismiss for lack of subject matter

17   jurisdiction and failure to state a claim. (ECF No. 16.) Plaintiff's Opposition alleged various

18   federal laws and regulations in an attempt to assert a federal claim. (ECF No. 24.) The Court

19   granted the motion ruling Plaintiff does not state a plausible federal claim and the Complaint

20   lacks subject matter jurisdiction, but gave Plaintiff an opportunity to amend to plead a federal

21   claim. (ECF No. 36.)

22        Plaintiff was offered a job in New Mexico to start on April 3, 2017. (ECF No. 40-12

23   [Attachment 12 to Amended Complaint].) On April 10, 2017, Plaintiff filed the Amended

24   Complaint alleging diversity jurisdiction based on her new residence in New Mexico and federal

25   question jurisdiction. (ECF No. 40 at 1-2.) Plaintiff's Amended Complaint cites the same federal

26   laws and regulations the Court previously ruled were not plausible federal claims. Plaintiff's

27   Amended Complaint again fails to allege any cause of action and AHS must again speculate as to

28   the causes of action Plaintiff may be alleging.

Complaint for Damages.

[2] This procedural summary does not address the procedural status of co-defendant Department of Industrial Relations.

[3] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

### B. Amended Complaint's Allegations.

Plaintiff alleges she was hired as a Monitor Technician at AHS on April 1, 2013. (ECF No. 40 at 3.) She agreed to be represented by the Union when she was hired, but she was denied membership in the Union when she started employment. (*Id.*) Plaintiff claims she was classified as a part-time employee but should have been considered a full-time employee, because she worked three 12 hour shifts per week, which qualified her to be a full-time employee and to be paid overtime that she never received. (*Id.* at 5.) She also claims she at times was not given her third 15-minute break on her twelve-hour shifts, nor did she receive ten-minute breaks every hour, as she claims is required under the written policies of AHS. (*Id.* at 7.) After sending a letter to the Director in her department addressing the issues, Plaintiff says she was terminated on September 7, 2013, in retaliation for raising these issues. (Id. at 8.) Plaintiff filed a claim with the Department of Industrial Relations in September 2013. (Id. at 11.) The Deputy of Labor Commissioner dismissed her case, because there was insufficient evidence to establish retaliation. (Id. at 15.)

### III. <u>ARGUMENT</u>

This Court lacks subject matter jurisdiction here. There is no diversity jurisdiction because Plaintiff was a resident of California at the time she initiated this litigation and has named California public entities as defendants. There is no federal question jurisdiction because Plaintiff does not state a claim arising under federal law.

Even if jurisdiction existed, the Amended Complaint fails to state a claim in any case, because: (1) Plaintiff's claims based on the California Labor Code and Industrial Welfare Commission Order fail because these provisions do not apply to public entities; (2) Plaintiff's tort claims for libel, fraud and negligence fail because Plaintiff has not pled compliance with the

Complaint for Damages.

1    California Government Claims Act's claims-presentation requirement; (3) Amended Complaint

2    does not set forth a prima facie case of discrimination based on national origin; and (4) Amended

3    Complaint cannot state a claim for punitive damages because punitive damage are not

4    recoverable against public entities under California law.

5         Accordingly, AHS respectfully requests the Court to dismiss Plaintiff's Amended

6    Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

7    12(b)(1), or in the alternative, dismiss Plaintiff's Complaint for failure to state a claim upon

8    which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

9         .....

10   **B. Plaintiff's Amended Complaint Must Be Dismissed As This Court Lacks Subject**

11   **Matter Jurisdiction.**

12        The Court must dismiss this matter most fundamentally because it does not have subject

13   matter jurisdiction here. "Federal courts are courts of limited jurisdiction. They possess only that

14   power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Company*

15   *of America*, 511 U.S. 375, 377 (1994). Federal subject matter jurisdiction is possible here under

16   federal statute only if the case presents a federal question or diversity jurisdiction exists. 28

17   U.S.C. §§ 1331, 1332. Neither exist here, and as a result, the case must be dismissed.

18        *1. There Is No Diversity of Citizenship.*

19        Diversity jurisdiction exists where the parties are citizens of different states. 28 U.S.C. §

20   1332. Such diversity requires complete diversity between all plaintiffs and all defendants.

21   *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005). The citizenship of the parties is a jurisdictional

22   fact in diversity actions. The burden is on the plaintiff, as the party invoking federal jurisdiction,

23   to plead and prove such facts. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 186

24   (1936); *Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546; 552 (9th Cir. 1987). Any

25   doubt as to whether jurisdiction exists is normally resolved against a finding of such jurisdiction.

26   *Kanor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).

27        Plaintiff's Amended Complaint alleges this Court has jurisdiction over this case because

28   Plaintiff is a citizen of the Russian Federation and now resides in New Mexico, while Defendants

Complaint for Damages.

are citizens of California. (ECF No. 40 at 1.) However, citizenship and domicile is assessed at the time the original complaint was filed. *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2nd Cir. 2001). In *LeBlanc*, the plaintiff brought an action against New York citizen defendant when she was a Canadian citizen and not a legal permanent resident of the United States. *Id.* at at 98. When the plaintiff amended her complaint, she had obtained legal permanent resident status in New York and therefore no longer diverse from the defendant. *Id.* The Court held, "an amendment to allege diversity jurisdiction relates back under Rule 15 of the Federal Rules of Civil Procedure, and therefore we assess LeBlanc's [plaintiff's] citizenship at the time the complaint was first filed." *Id.* at 99.

Here, Plaintiff filed her original complaint on December 29, 2016. Plaintiff was offered a job in New Mexico to start on April 3, 2017, and moved after she filed her original complaint. (ECF No. 40-12 [Attachment 12 to Amended Complaint].) It is evident Plaintiff's domicile at the time of filing her original complaint was California. Plaintiff was employed with AHS in California from April 1, 2013 to September 2013. (ECF No. 40 at 2-4.) Plaintiff went to Russia for health issues, then returned to California on June of 2016. (Id. at 4-5.) She worked at other hospitals, such as the Childrens Hospital in Oakland, after she returned to California from Russia. (Id. at 13.) Plaintiff is registered as Monitor Techinician in California. (Id.)

Plaintiff now alleges she is citizen of the Russian Federation and now resides in New Mexico. As shown above, her domicile at the relevant time was California. Title 28 of the United States Code Section 1332(a) provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... (2) citizens of a State and citizens or subjects of a foreign state, *except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State...* (emphasis added)

There is no diversity or alienage jurisdiction for lawful permanent residents who sue or are sued by a U.S. citizen from the same state in which they reside. *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 627 (7th Cir. 1998). Since at the time of filing the original complaint

Complaint for Damages.

1   Plaintiff was domiciled in California, the same of citizenship of Defendants, there is no basis for

2   diversity jurisdiction in this case.

3      ## 2. There is No Federal Question Subject Matter Jurisdiction.

4          The Constitution vests federal courts with the authority to hear cases "arising under th[e]

5   Constitution [or] the Laws of the United States." U.S. Const. Article III, § 2. Congress also vests

6   federal district courts with subject matter jurisdiction over cases involving questions of federal

7   law: "The district courts shall have original jurisdiction of all civil actions arising under the

8   Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When determining

9   whether a claim arises under federal law, a court will "examine the 'well pleaded' allegations of

10  the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of

11  the United States only when the plaintiff's statement of his own cause of action shows that it is

12  based upon those laws or that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6

13  (2003) quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). The "well-

14  pleaded complaint" rule requires plaintiff to set forth the federal claim in sufficient detail that a

15  right to recover under federal law is apparent. Celli v. Shoell, 40 F.3d 324, 327 (10th Cir. 1994).

16         Plaintiff's Amended Complaint cites the same federal statutes cited in Plaintiff's

17  Opposition to the Motion to Dismiss (ECF No. 24.) which are not relevant to this case. The

18  Court previously granted the Motion stating Plaintiff does not state a federal claim against her

19  employer. (ECF No. 36 at 3.) Although the Court already ruled Plaintiff's case is not based on

20  federal statutes cited by Plaintiff, Defendant sets forth the reasons that they are inapplicable to

21  this case, because Plaintiff again asserts they are the basis of federal subject matter jurisdiction.

22     ### a. __AHS Is Not Subject to the Federal Union Labor Laws.__

23         Plaintiff's Amended Complaint again asserts AHS's denial of her affiliation to the Union

24  were violations of various sections of the federal labor union law known as either National Labor

25  Relations Act ("NLRA") or Labor Management Relations Act ("LMRA") codified at 29 U.S.C.

26  sections 141 et seq. (ECF No. 40 at 3-5, 8-9, 20-21.) However, by its own terms the NLRA or

27  LMRA does not apply to state public entities. "The term 'employer' includes any person acting

28  as an agent of an employer, directly or indirectly. but shall not include the United States or any

Complaint for Damages.

wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof..." 29 U.S.C. § 152(2). The provision has been interpreted to exempt public entities. "[P]ublic entities are not 'employers' within the meaning of the federal law. (29 U.S.C. § 152(2).)" *Santa Clara Valley Transportation Authority v. Rea*, 140 Cal.App. 4th 1303, 1308 (2006). Thus, Plaintiff fails in her attempt to raise a federal claim under the NLRA or LMRA.

### b. Plaintiff's Claim Does Not Arise Under the Code of Federal Regulations.

Plaintiff again cites federal regulations pertaining to breaks in the workplace which this Court previously ruled does not state a plausible federal claim againt AHS. (EFC No. 36.) 29 Code of Federal Regulations ("CFR") section 785.15 generally states that rest periods are "common in industry" and "must be counted as hours worked." It does not address the specific alleged violations of ten-minute breaks every hour or fifteen-minute breaks, which Plaintiff alleges were required pursuant to the written policies of AHS, not federal law. (ECF No. 40 at 7.)

Plaintiff also again claims that her termination for complaining about not receiving the ten-minute breaks is a violation 29 CFR Part 1977. (ECF No. 40 at 8-9.) However, again, the ten-minute breaks were allegedly provided for in the written policies of AHS, not in the Federal Regulations. Furthermore, to pursue a claim under 29 CFR Part 1977, a complaint must be lodged with the Secretary of Labor within 30 days after such violation occurs. Accordingly, complaints not filed within 30 days of an alleged violation will ordinarily be presumed to be untimely. 29 CFR § 1977.15(d)(2). Plaintiff does not demonstrate such a claim is not time-barred or that she has exhausted administrative remedies.

### c. Plaintiff's Amended Complaint Did Not Assert A Discrimination Claim.

Plaintiff's Amended Complaint does not allege a cause of action under Title VII of the Civil Rights Act of 1964. Plaintiff alleges another "possible reason of termination was discrimination against my Russian origin," and "if [her] suggestion is correct," AHS violated Title VII of the Civil Rights Act of 1964 (ECF No. 40 at 10.). Not only is it not clear whether Plaintiff is asserting the discrimination, but for the reasons fully set below in Section C. 3, Plaintiff's claim fails to set forth a prima facie case of discrimination under Title VII, and furthermore, Plaintiff has not alleged that she exhausted the required administrative remedies.

Complaint for Damages.

d. **Plaintiff's Allegations Are Based On State Law**.

Plaintiff cites numerous federal laws in a failed effort to invoke federal jurisdiction. However, Plaintiff's claims are based on alleged violations of state law. Plaintiff alleges various sections of the California Labor Code and the Industrial Welfare Commission Wage Order 2001-4 were violated when she was not compensated for overtime and not given sufficient breaks. Accordingly, the Court must dismiss Plaintiff's Amended Complaint, because Plaintiff has failed to meet her burden to establish a proper basis for the Court to assert subject matter jurisdiction over this action, and also failed to show she can invoke federal question jurisdiction with leave to amend.

C. **Plaintiff's Amended Complaint Must Be Dismissed Because It Fails To State A Claim**.

In the alternative, AHS moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). All of Plaintiff's claims fail as a matter of law. It is indisputable that AHS is a public entity. Cal. Health & Safety Code § 101850. Plaintiff's claims against AHS for violations of the Labor Code and Industrial Welfare Commission Wage Order 2001-4 ("Wage Order 4") fails, because the alleged Labor Code provisions and Wage Order 4 do not apply to AHS, a public entity. Plaintiff's negligence, libel and fraud fail, because Plaintiff has not alleged compliance with the California Government Claims Act. Furthermore, Plaintiff's "possible" claim for federal discrimination also fails, because her factual allegations cannot support it. Lastly, Plaintiff's request for punitive damages is barred against public entities as a matter of law.

*1. The Labor Code Provisions Do Not Apply To Public Entities.*

Plaintiff alleges AHS violated Cal. Labor Code sections 201, 202, 204, 227.3, 1194 and 98.6. Plaintiff alleges violations of sections 201, 201 and 227.3 occurred when she did not receive her final paycheck on the day of termination (ECF No. 40 at 10.); sections 1194 and 204 were violated when she was not paid as a full-time employee (ECF No. 40 at 5.); and section 98.6 was violated when she was retaliated for making a complaint of a Labor Code or IWC

Complaint for Damages.

1    Order (ECF No. 40 at 10.). However, these Labor Code sections do not apply to AHS, because

2    AHS is a public entity.[4]

3          It is a settled question that the Labor Code sections governing meal breaks, rest periods,

4    and overtime requirements do not apply to public entities. The Court of Appeals in *Johnson v.*

5    *Arvin-Edison Water Storage District*, 174 Cal.App.4th 729 (2009) ("*Johnson*"), resolved this

6    question, addressing the exact same claims raised here. The plaintiff filed a class action

7    complaint alleging the water storage district violated the Labor Code and wage orders by failing

8    to pay overtime and provide meal breaks. *Id.* at 733. The district demurred, arguing that public

9    employees are not covered by the Labor Code's provisions, and that the wage order expressly

10   excludes public entities from its meal and overtime rules. *Id.*

11         The court sustained the demurrer based on two maxims of statutory construction. First,

12   "'absent express words to the contrary, governmental agencies are not included within the

13   general words of a statute.'" *Id.* at 733, quoting *Wells v. One2One Learning Foundation*, 39

14   Cal.4th 1164, 1191 (2006). The *Johnson* court noted that Cal. Labor Code sections 512 and

15   226.7 do not have express language that would apply them to public entities. Second, "'[w]hen

16   the legislature has employed a term or phrase in one place and excluded it in another, it should

17   not be implied where excluded.'" *Id.* at 733, quoting *Pasadena Police Officers Association v.*

18   *City of Pasadena*, 51 Cal.3d 564 (1990). When the legislature wanted Labor Code provisions to

19   apply to public entities, it included express language to that effect. *Id.* [noting that Labor Code

20   section 555 specifically states that it applies to cities and counties]. The court, therefore, could

21   not imply such language for Labor Code provisions that omit it. *Id.* This combination makes the

22   intent of the legislature clear, the Labor Code's meal break and rest period provisions do not

23   apply to public entities. *Id.* at 737.

24         Other courts have reached the same conclusion. In *Curcini v. County of Alameda*, 164

25   Cal.App.4th 629 (2008), the plaintiff sought compensation for unpaid overtime, and for missed

26   meal and rest periods. *Id.* at 633. The court sustained a demurrer, ruling public employees cannot

27   bring claims under the Labor Code's overtime, meal or rest period provisions. *Id.* In *California*

28   *Correctional Peace Officers Association v. State of California*, 188 Cal.App.4th 646 (2010),

Complaint for Damages.

prison guard union filed a complaint based on the Labor Code and wage orders for missed meal and rest periods, and the court likewise rejected such claims. *Id*. at 651-657.

Following the Courts' line of reasoning, Labor Code section 98.6 also would not apply to AHS. "[U]nless Labor Code provisions are specifically made applicable to public employers, the only apply to employers in the private sector." *Johnson*, supra, 174 Cal.App.4th at 733. The Legislature did not specifically state Labor Code section 98.6 applies to public employers.

None of the Labor Code sections Plaintiff alleges AHS violated are applicable to public entities, and thus, Plaintiff's Labor Code claims should be dismissed without leave to amend.

[4] AHS also reserves the right to argue that Plaintiff's claims for wage and compensation are time-barred and barred by Plaintiff's choice of remedy as s set forth in AHS's Motion to Dismiss Plaintiff's original complaint.

### 2. Industrial Wage Commission Order Excludes Public Entities.

Plaintiff also contends the Industrial Welfare Commission Wage Order 2001-4 ("Wage Order 4") applies to public employers. (ECF No. 40 at 20, ¶ 2.) The Industrial Wage Commission was the state agency authorized to formulate the wage orders that govern employment in California. *Industrial Welfare Commission vs. Superior Court*, 27 Cal.3d 690, 700 (1980). In *California Correctional Peace Officers Association v. State of California*, 188 Cal.App.4th 646 (2010), the court rejected arguments that the IWC Orders applied to public employees. *Id*. at 656. The court based its ruling both on the language of the wage orders and the fact that "[i]t is well established that public employees have historically been exempt from IWC wage orders." *Id*.

### 3. Plaintiff Has Failed to Set Forth a Federal Discrimination Claim.

Plaintiff's Amended Complaint is ambiguous as to whether she is asserting a Title VII cause of action. If it does, it should be dismissed because it fails to allege any of the requisite elements to set forth a claim. To establish a prima facie case of discrimination, a plaintiff must submit evidence to show: "(1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available

Complaint for Damages.

1    job, and (4) some other circumstance suggests discriminatory motive." *Nidds v. Schindler*

2    *Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417,

3    1421 (9th Cir. 1990).

4           Here, Plaintiff was allowed a chance to amend to state a federal claim. However,

5    Plaintiff's allegations are insufficient. The only allegations are that she was the second Monitor

6    Technician of Russian origin to be fired from AHS and the first lady was fired soon after the

7    beginning of her employment. (ECF No. 40 at 10, ¶ 5.) The Amended Complaint is devoid of

8    any allegations of any circumstance suggesting a discriminatory motive or that the other

9    terminated employee was performing competently in her position. These allegations do not set

10   forth a prima facie case of discrimination. Furthermore, Plaintiff again gives no indication that

11   she exhausted administrative remedies. Plaintiff had an opportunity to allege a discrimination

12   claim, and has failed to do so, because she cannot. Thus, the discrimination should be dismissed

13   without leave to amend.

14          ***4. Plaintiff Has Not Complied with the Claims Presentation Requirement Set Forth in***

15   ***Government Code Section 905.***

16          Plaintiff's Amended Complaint appears to also allege tort claims of negligence, libel and

17   fraud against AHS. (ECF No. 40 at 19, 21-22.) However, Plaintiff has not pled that she has

18   complied with the Claims Presentation Requirement pursuant to the Tort Claims Act. An action

19   for money damages may not be maintained against a public entity unless a written claim has first

20   been timely presented to the defendant and rejected in whole or in part. Cal. Gov. Code § 905.

21   The complaint should allege the presentation and rejection of a claim, or excuse from the

22   presentation requirement, in all actions to which the claims procedures apply. *Chase v. State*, 67

23   Cal.App.3d 808 (1977). If the plaintiff fails to include the necessary allegations, the complaint is

24   subject to attack. *State vs. Superior Court*, 32 Cal.4th 1234, 1239 (2004). Here, Plaintiff does

25   not, and cannot, allege compliance with the claims presentation requirement, and thus Plaintiff's

26   tort claims should be dismissed without leave to amend.

27          ***5. Plaintiff's Request for Punitive Damages Is Improper.***

28

Complaint for Damages.

Plaintiff's Amended Complaint requests exemplary damages pursuant to Cal. Civil Code section 3294. (ECF No. 40 at 34.) Plaintiff's claim for punitive damages against AHS is barred as a matter of law because AHS is a public entity. Government Code section 818 states: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by the way of punishing the defendant." AHS is a public entity. Cal. Health & Safety Code section 101850. Accordingly, Plaintiff's request for punitive damages against AHS is improper and not in conformity with the law, and the Court should strike Plaintiff's request for exemplary damages and all related language from the Amended Complaint contained in Plaintiff's Amended Complaint pages 10 to 11 in paragraph 6 and pages 34 to 35 in paragraph 2.

## IV. CONCLUSION

Based on the foregoing, AHS respectfully requests the Court dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction. Plaintiff has not met her burden to invoke diversity or federal question jurisdiction. In the alternative, AHS's Motion to Dismiss should be granted on grounds that Plaintiff's Labor Code and Wage Order claims do not apply to AHS, Plaintiff's tort claims for libel, fraud and negligence fail because Plaintiff has not complied with the claims presentation, Plaintiff has failed to set forth a prima facie case of discrimination based on national origin, and Plaintiff's request for punitive damages is barred as a matter of law.

Dated: April 24, 2017                     NARAYAN TRAVELSTEAD P.C.

/s/ Timothy C. Travelstead

Timothy C. Travelstead

Attorney for Defendant

Alameda Health System."

42. **My May 08, 2017 Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint**. On May 08, 2017, I filed an Opposition to M. Travelstead's Motion to Dismiss my Amended Complaint (**Doc. No. 47, ER 07414 Vol. 4, pages 642-678**). "**INTRODUCTION**

Complaint for Damages.

1  On April 24, 2017, defendant AHS filed a Motion to dismiss my amended complaint alleging

2  that:

3    1) The District court doesn't have both federal question and diversity jurisdiction over my

4        amended complaint

5    2) AHS is a public entity, and therefore California Labor Code and Industrial Welfare

6        Commission Order fail because they do not apply to public entities

7    3) Plaintiff's tort claims for libel, fraud and negligence fail because Plaintiff has not pled

8        compliance with the California Government Claims Act's claims-presentation

9        requirement

10   4) Plaintiff has failed to set forth a prima facie case of discrimination based on national

11        origin

12   5) Plaintiff's request for punitive damages is barred, because public entities are not liable for

13        punitive damages under California law

14   6) Failure to state a claim upon which relief can be granted FRCP 12(b)(6).

15  None of these allegations is true excepting the fact that I really did not state a prima facie case of

16  discrimination based on a national origin.

17  **ARGUMENT**

18  **Part 1**. The District court has both federal question and diversity jurisdiction over my complaint.

19  The District court has had a federal question jurisdiction since my initial complaint according to:

20   1) both the U.S. Constitution, Art III, Sec 2 and 28 USC 1331

21   2) the 5th and 14th Amendments to the Constitution

22   3) 29 U.S. Code § 101 over labor disputes

23   4) 28 U.S. Code § 1343 to redress the deprivation and to recover damages in a civil action

24   5) 28 U.S. Code § 1357 to recover damages for any injury or property in a civil action

25   6) FLSA or 29 U.S. Code § 216 that says that my case should be heard in a Federal Court

26   7) FLSA or 29 U.S. Code § 217 that says that my case should be heard in a Federal Court

27   8) 29 U.S. Code § 662 (OSHA) that says that my case should be heard in a Federal Court.

28  The District court also has supplemental jurisdiction over State laws under 28 U.S. Code § 1367.

Complaint for Damages.

1    **Artful pleading**: A court will have federal question jurisdiction over a plaintiff's claim

2    that turns on an issue of federal law even if the plaintiff did not explicitly plead the federal issue

3    in the complaint. Even if I did not explicitly state FLSA in my original complaint and stated

4    mostly  State laws, the District court still **has had** a federal question jurisdiction since my first

5    complaint.

6       "A plaintiff cannot avoid federal court simply by omitting a necessary federal question in

7       the complaint; in such a case the necessary federal question will be deemed to be alleged

8       in   the   complaint."   15   Moore's   Federal   Practice   ¶   103.43.   Source:

9       https://jenner.com/system/assets/assets/5507/original/Federal_20Subject_20Matter_20Jur

10      isdiction_20Outline_Jenner_20_26_20Block_0611.pdf?1323113751

11   **FEDERAL   QUESTION   JURISDICTION.**   By   citing   *Kokkonen*   (1994),   defendant   AHS

12   alleged that District courts should hear cases that arise only under the Constitution.

13      *Kokkonen* (1984) doesn't apply to my case. *Kokkonen* is about the power of District

14   courts to exercise jurisdiction over settlement agreements. Even if *Kokkonen* says that "A federal

15   district court, possessing only that power authorized by Constitution and statute," (source:

16   https://supreme.justia.com/cases/federal/us/511/375/case.html  ), Article III, Section 2 of the

17   Constitution says that "The judicial Power shall extend to **all Cases, in Law and Equity, arising**

18   **under this Constitution, the Laws of the United States, and Treaties** made……."

19      28 U.S. Code § 1331 says that "The district courts shall have original jurisdiction of **all**

20   **civil actions arising under the Constitution, laws, or treaties of the United States**."

21      The 5th Amendment to the Constitution says: "No person shall be … deprived **of life,**

22   **liberty, or property, without due process of law**; nor shall private property be taken for public

23   use, without just compensation."

24      14th Amendment, Section 1 says: "All persons born or **naturalized** in the United States

25   and subject to the jurisdiction thereof, are **citizens of the United States** and of the State wherein

26   they reside. **No State shall make or enforce any law which shall abridge the privileges or**

27   **immunities of citizens of the United States; nor shall any State deprive any person of life,**

28

Complaint for Damages.

1   liberty, or property, without due process of law; nor deny to any person within its

2   jurisdiction the equal protection of the laws".

3       The Webster's New World Law Dictionary, Copyright © 2010 by Wiley Publishing, Inc.,

4   Hoboken, New Jersey, defines **the Federal law** as "A body of law at the highest or national level

5   of a federal government, consisting of a constitution, enacted laws and the court decisions

6   pertaining to them. **The federal law of the United States consists of the United States**

7   **Constitution, laws enacted by Congress, and decisions of the Supreme Court and other**

8   **federal courts**." Source: http://www.yourdictionary.com/federal-law

9       Wikipedia says that "United States federal laws are codified in the **United States Code**."

10  Source: https://en.wikipedia.org/wiki/Federal_law

11      Article I, Section 8 of the Constitution says that "The Congress shall have power…**to**

12  **make all laws** which shall be necessary and proper for carrying into execution the foregoing

13  powers, and all other powers vested by this **Constitution in the government of the United**

14  **States**, or in any department or officer thereof." Also, Article I, Section 8 says that "The

15  Congress shall have power…**to define and punish…offences against the law in the nations**."

16      **The Code of Federal Regulations** The purpose of the CFR is to present the official and

17  complete text of agency regulations in one organized publication and to provide a comprehensive

18  and convenient reference for all those who may need to know the text of general and permanent

19  **Federal regulations**. Source: National Archives, Federal Register

20  https://www.archives.gov/federal-register/cfr/about.html

21      **The United States Code** is a consolidation and codification by subject matter of the

22  **general** and **permanent laws of the United States**. It is prepared by the Office of the Law

23  Revision Counsel of the United States House of Representatives. Source:  Office of the Law

24  Revision Counsel. United States Code http://uscode.house.gov/

25      The U.S. Code provides additional jurisdictional powers for federal courts to hear

26  specific cases. The District courts **have** original jurisdiction over claims arising under **labor**

27  **disputes.** Read 29 U.S. Code § 101: "No court of the United States, as defined in this chapter,

28  shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a

case involving or growing out of a **labor dispute**, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

Also, read 28 U.S. Code § 1343: "(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) **To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States**;

(4) **To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights**, including the right to vote."

Also, read 28 U.S. Code § 1357: "The district courts shall **have** original jurisdiction of any civil action commenced by any person **to recover damages for any injury to his person or property** on account of any act done by him, **under any Act of Congress, for the protection or collection of any of the revenues**, or to enforce the right of citizens of the United States to vote in any State."

In the Opposition in response to Motion to dismiss my original complaint filed by AHS, I listed Federal laws that are applicable to my complaint: 29 CFR Part 1977; 29 U.S. Code § 157; 29 U.S. Code § 158(a)(2) and § 158(a)(3) and § 158(c; 42 U.S.C. § 2000e-3(a); Title VII of the Civil Rights Act of 1964; 29 CFR 785.18 and 29 U.S.C. 651. Also, I underlined that I am protecting my right of liberty and property as defined by the 5th and 14th Amendments to the Constitution. In the current Opposition, I am additionally including provisions of Federal Labor Standards Act (FLSA). Even if I didn't specifically cite these provisions before, they have existed since I filed my original Complaint. These provisions are: 29 U.S. Code § 207, 29 U.S. Code § 215, 29 U.S. Code § 216, and 29 U.S. Code § 217.

**Federal law Fair Labor Standards Act protects employees in terms of shift differentials and overtime payments (29 U.S. Code § 207). It also protects employees from retaliation and unlawful termination (29 U.S. Code § 215).** Before hiring me, AHS offered

Complaint for Damages.

me shift differentials such as 11% for evenings, 15.5% for nights & 5% for weekends. It was an agreement between AHS as an employer and me as an employee. AHS was obligated to pay me promised shift differentials. FLSA or 29 U.S. Code § 207(e)(5) and 29 U.S. Code § 207(e)(6) recognizes overtime payments and shift differentials. Read: "(e) "Regular rate" defined.  As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day of workweek **because such hours are hours worked in excess of eight in a day** or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on **Saturdays, Sundays, holidays, or regular days of rest,** or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;"

As a **hospital,** AHS was obligated to pay me according to an agreement between me and AHS and overtime payments if I work for more than 8 hours. The initial agreement between AHS and me was to work for 8 hour shifts, 32 hours per week, and to get shift differentials. Afterwards, AHS forced me to work for 12 hour shifts which was **not** the part of the initial agreement. See FLSA or 29 U.S. Code § 207(j): "Employment in **hospital** or establishment engaged in care of sick, aged, or mentally ill. No employer engaged in the operation of a **hospital** or an establishment which is an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises shall be deemed to have violated subsection (a) if, pursuant to **an agreement or understanding arrived at between the employer and the employee before performance of the work**, a work period of fourteen consecutive days is accepted in lieu of the workweek of seven consecutive days **for purposes of overtime computation** and if, for his employment **in excess of eight hours in any workday** and in excess

Complaint for Damages.

of eighty hours in such fourteen-day period, the employee receives compensation at a rate not less than **one and one-half times the regular rate** at which he is employed."

Alameda County Medical Center of Alameda Health System is **not** a public agency or a public employer. See my explanations below, in Part 2 of my Opposition. Even if we imagine that AHS were a public agency, it was still obligated to give me overtime compensation and compensatory time off according to FLSA or 29 U.S. Code § 207(o):"Compensatory time

(1) Employees of a **public agency** which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of **overtime compensation**, **compensatory time off** at a rate not less than one and **one-half hours for each hour of employment for which overtime compensation is required** by this section.

(2) A public agency may provide compensatory time under paragraph (1) only— (A) pursuant to— (i) applicable provisions of a **collective bargaining agreement**, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

(ii) in the case of employees not covered by subclause (i), **an agreement or understanding arrived at between the employer and employee before the performance of the work;**...."

FLSA or 29 U.S. Code § 215 protects employees from **discrimination**:

"(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

(2) to violate any of the provisions of section 206 or **section 207 of this title**,.......

(3) **to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter**, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

**For breaking 29 U.S. Code § 215, AHS may meet not only civil but criminal penalties up to imprisonment. I have a right to sue my employer in a Federal court even if the eemployer is a public agency.** FLSA or 29 U.S. Code § 216 says:

Complaint for Damages.

a) Fines and imprisonment. Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a **fine** of not more than **$10,000**, or to **imprisonment** for not more than **six months, or both**...."

b) Damages; right of action; attorney's fees and costs; termination of right of action. **Any employer** who violates the provisions of section 206 or section **207** of this title shall be **liable** to the employee or employees affected in the amount of their unpaid minimum wages, or their **unpaid overtime compensation**, as the case may be, and in an additional equal amount as **liquidated damages**. Any employer who violates the provisions of section 215(a)(3) of this title shall be **liable** for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation **employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages**. An action to recover the liability prescribed in either of the preceding sentences may be maintained against **any employer (including a public agency)** in **any Federal or State court** of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, **in addition to any judgment** awarded to the plaintiff or plaintiffs, allow a reasonable **attorney's fee to be paid by the defendant, and costs of the action.** ......"

**The District court has original jurisdiction (federal question or subject-matter jurisdiction) over both my initial and amended complaints under 29 U.S. Code § 217.** Read FLSA or 29 U.S. Code § 217: "The **district courts**, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands. and the District Court of Guam **shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title** the restraint of any

Complaint for Damages.

withholding of payment of minimum wages or **overtime compensation** found by the court to be due to employees under this chapter ….."

AHS is not litigating in good faith. Mr. Travelstead **intentionally** tried to mislead the Court multiple times. For example, Motion to dismiss Amended Complaint, page 13, section about 29 CFR 785.15 about breaks. Mr. Travelstead attempted to include the issue about not received **10 minute breaks** into 29 CFR 785.15. First of all, I never mentioned 785.15 in my Amended Complaint. I mentioned 29 CFR 785.18 – see my Amended Complaint, page 7, line 16. In fact, 29 CFR 785.18 is about paid 15 minute breaks that I was entitled to get but did not fully get. The issue regarding not received 10 minute breaks falls under 29 CFR § 1977 and 29 US Code § 15 OSHA that are **Federal laws**. In the Opposition to dismiss my original complaint, I listed 29 US Code § 651 (OSHA) that says: "(b) The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—

(1) by encouraging employers and employees in their efforts **to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and to perfect existing programs for providing safe and healthful working conditions;**….

(13) by encouraging joint labor-management efforts to **reduce injuries and disease arising out of employment.**"

29 U.S. Code § 654 (OSHA) says: "(a) Each **employer**— (1) **shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees**;

(2) shall **comply** with occupational safety and health standards promulgated under this chapter."

29 CFR 1977.11 prohibits discrimination and discharge of employees who raised Occupational Health and Safety issues with their employers. It says: "**Discharge** of, or discrimination against, any employee because the employee "**has testified or is about to testify**"

Complaint for Damages.

in proceedings under or related to the Act is also prohibited by section 11(c). …. If the employee is giving or is about to give testimony in any proceeding under or related to the Act, **he would be protected against discrimination** resulting from such testimony."

According to the written policy of AHS, I was entitled to get 10 minute breaks every hour because I was constantly observing video display screens. However, AHS didn't provide me a place of employment which was free of hazards, denied 10 minute breaks thus breaking 29 US Code § 15 OSHA, specifically 29 U.S. Code § 654 and T8 CCR 3203(a) (California Code of Regulations). For discharging me for raising Occupational Health and Safety issues, AHS broke 29 CFR 1977.11, section 11(c). Yes, I timely filed a complaint with the Division of Occupational Safety and Health of DIR. My case number is 208711820, September 10, 2013. Division of Occupational Safety and Health was unable to solve my problem. I am including a copy of my correspondence.

The District Court has jurisdiction over my complaint. Read 29 U.S. Code § 662: "(a) … **The United States district courts shall have jurisdiction**, …. to restrain any conditions or practices in any place of employment which are such that a danger exists which could reasonably be expected to cause death or **serious physical harm** immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter." Serious physical harm in my case means a loss of vision.

**DIVERSITY JURISDICTION.** The District court has diversity jurisdiction over my amended complaint pursuant to 28 USC 1332(a)(2). According to 28 U.S. Code § 1653 and FRCP Rule 15(a)(1)(A). I have a right to amend my pleading and allegation of jurisdiction.

Read 28 U.S.C. § 1332(a)(2): "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall **not** have original jurisdiction under this subsection of an action between **citizens of a State** and citizens or subjects of a **foreign state** who are lawfully admitted for **permanent residence** in the United States **and are domiciled in the same State**".

Complaint for Damages.

I was born in the Russian Federation, therefore I am a citizen of Russia. I was a resident of California since 2004 to April 2nd, 2017 (excepting the time I was in Russia from January 2014 to July 2016). I was lawfully admitted for permanent residency in the USA in 2010. When I filed my first complaint, I was not diverse from defendants AHS and DIR who both resided in California. When I moved to New Mexico on April 2nd, 2017, **I became fully diverse from defendants AHS and officers of DIR**.

*LeBlanc* (2001) doesn't apply to my case. AHS said that the district court would have to take into consideration **my initial filing** where I was still a citizen of California and didn't claim diversity of citizenship. This is **not** what LeBlanc says. When Le Blanc filed her complaint, she was a citizen of Canada and did not have lawful permanent residency of the USA. She filed a lawsuit against citizens of the State of New York. Therefore, the district court would initially have the diversity of citizenship jurisdiction. When LeBlanc filed an amendment, she had obtained her lawful permanent residency but she continued to domicile in the State of New York where her defendants resided. Therefore, LeBlanc lost her diversity of citizenship jurisdiction allegations because: 1) she was a citizen of Canada, 2) she obtained her lawful permanent residency in the United States of America, and 3) she domiciled in the State of New York where her defendants resided. Read: "LeBlanc contends that a court assesses questions of fact pertinent to its jurisdiction, such as a party's citizenship for diversity purposes, as of the time of the initial complaint. Therefore, because LeBlanc was not yet a legal permanent resident when she filed the complaint, **she was diverse from Syd & Dusty's and should be allowed to proceed with her suit**. Syd & Dusty's responds that even with Ossen now out of the case, diversity does not presently exist, because **when the amendment to allege diversity was filed, LeBlanc had become a legal permanent resident of New York and was thus no longer diverse from Syd & Dusty's**". Source: http://openjurist.org/248/f3d/95/etoile-le-blanc-stephen-ossen-v-terry-cleveland

Numerous lawsuits allowed plaintiffs to change jurisdiction in amended complaints.

**Example 1.** Change In Basis For Federal Jurisdiction In Amended Complaint Given Full Effect.

Complaint for Damages.

In *ConnectU LLC v. Zuckerberg, No. 07-1796, 2008 WL 902185 (1st Cir. Apr. 3, 2008),* the First Circuit concluded that jurisdiction should be determined based on the allegations in an amended complaint if the complaint was filed before the defendants filed a pleading in response to the original complaint. Plaintiffs originally filed suit in federal court premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), and asserted only state-law claims. Before defendants filed any responsive pleading, plaintiffs amended their complaint to add a federal-law claim, and asserted federal question jurisdiction, pursuant to 28 U.S.C. § 1331. Defendants moved to dismiss for want of subject matter jurisdiction, arguing that the parties to the original complaint were not wholly diverse and, therefore, the court lacked jurisdiction. The district court granted the motion, finding that, under the time-of-filing rule, jurisdiction is determined as of the date a complaint is filed, and filing an amended complaint cannot cure any jurisdictional defect in the original complaint. The appellate court reversed. Applying *Rockwell International Corp. v. United States, 127 S. Ct. 1397 (2007),* the court held that the "jurisdictional claim in the amended complaint warrants full consideration and constitutes a viable hook on which federal jurisdiction can be hung... [because plaintiff] amended its complaint before the defendants filed a responsive pleading and, thus, the amendment was effective as a matter of right pursuant to Rule 15(a)." Sources: https://jenner.com/resource_centers/update/504

http://suffolklawreview.org/wp-content/uploads/2009/02/Woodworth_Comment_WDFF.pdf

http://caselaw.findlaw.com/us-1st-circuit/1235212.html

**Example 2.** "[N]oncompliance with the pleading requirement or a defective allegation of subject matter jurisdiction may be corrected by an amendment under the liberal provisions of Federal Rule 15." *13E Wright & Miller § 3602.1, pp. 86–87.*

**Example 3.** Read *McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006)*: "When diversity jurisdiction is not properly alleged, typically we would allow a plaintiff to amend his complaint to cure the deficiency or to supplement his brief to provide clarification.   See 28 U.S.C. § 1653; see also *McDonald v. Household Int'l, Inc., 425 F.3d 424, 426 (7th Cir.2005)*; *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 687 (7th Cir.2004)*; *F & H.R.*

Complaint for Damages.

1    *Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co., 882 F.2d 281, 284 (7th

2    Cir.1989); Stockman v. LaCroix, 790 F.2d 584, 587 (7th Cir.1986)."*

3    Source: http://caselaw.findlaw.com/us-7th-circuit/1064029.html

4    **Example 4.** "Technical defects and minor mistakes will be overlooked and the requirement will

5    be considered satisfied when the existence of complete diversity is apparent from other parts of

6    the complaint." 13E Wright & Miller § 3602.1, pp. 81–86.

7    **Example 5.** A court can allow an amendment to a complaint to support a new theory of

8    jurisdiction if the "pleadings and judicial economy support it." *Advani Enters., Inc. v.*

9    *Underwriters at Lloyds, 140 F.3d 157, 161–62 (2d Cir. 1998)* (allowing plaintiff to amend

10   complaint to assert admiralty jurisdiction even though plaintiff initially had asserted diversity of

11   citizenship jurisdiction).

12   Source for examples 2, 3, 4 and 5:

13   https://jenner.com/system/assets/assets/5507/original/Federal_20Subject_20Matter_20Jurisdictio

14   n_20Outline_Jenner_20_26_20Block_0611.pdf?1323113751

15        After I was retaliated and unlawfully terminated from AHS, I lost my health insurance. I

16   filed a claim with DIR. I went to Russia to solve my health issues because I was bleeding,

17   anemic, and needed surgery. After I returned back to the USA in July 2016, my case was still

18   under investigation of DLSE. I was looking for a job as a Monitor/EKG Technician applying to

19   jobs in hospitals and agencies and attending job interviews. In the mean time, I worked as a

20   Caregiver with IHSS, was registered with San Mateo County, received food stamps and cash aid,

21   and attended seminars at NOVA job searching center. I applied to Federal jobs at Albuquerque

22   VAMC and Las Vegas VAMC in November 2016 – **before** I knew that my DLSE case will be

23   denied. After I was informed by Ms. Healy that my case will be denied, I filed a Complaint in a

24   District court on December 29, 2016. I had both job interviews for Albuquerque VAMC and Las

25   Vegas VAMC in January 2017 – after I filed a complaint. I got both jobs but the job at

26   Albuquerque arrived first. This is why I moved to New Mexico on April 2nd. 2017. We got

27   Honorable Judge Beeler's decision on March 21st, 2017 where she gave me 21 days to amend my

28   complaint. The deadline was on April 10th, 2017 – after I already moved to Albuquerque.

Complaint for Damages.

The Court should not relate back the diversity of citizenship jurisdiction in my amended complaint under FRCP Rule 15(c) because this change occurred **in good faith** (getting a job, helping Veterans and paying taxes) and not for manipulative purposes to cure the "defective" subject-matter jurisdiction in my original complaint.

. Read FRCP Rule 15(d): "Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, **permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.** The court may order that the opposing party plead to the supplemental pleading within a specified time."

**Summary:** The District court **has** both federal question (subject-matter) and diversity of citizenship jurisdiction over my Amended complaint.

**Part 2.** Defendant AHS speculates definitions and alleges that it is a public entity, and therefore California Labor Code and Industrial Welfare Commission Order fail because they do not apply to public entities. None of these allegations is true. **Defendant AHS is not a public entity , not a public agency, not a governmental entity, not a public employer, and not a political subdivision of the State of California. Plaintiff Tatyana Drevaleva was not a public employee.**

AHS is **not** a public entity. Read Government Code 812.2. "Public entity" includes the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Source: http://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=GOV&sectionNum=811.2.

Also, read the definition of a public entity given by *Vartinelli v. Stapleton, 2009 U.S. Dist. LEXIS 88553 ( E.D. Mich. Aug. 3, 2009)*: "A public entity is defined as follows:

(A) any State or local government;

Complaint for Damages.

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority."

Sources: https://definitions.uslegal.com/p/public-entity/ and

https://faaco.faa.gov/index.cfm/attachment/download/29588

Alameda County Medical Center or Alameda Health System is **not** included into the California Roster of public entities of 2016 by Secretary of State Alex Padila. See

http://admin.cdn.sos.ca.gov//ca-roster/2016/pdf/00-2016-ca-roster2.pdf

AHS is **not** a public agency. Read 29 U.S. Code § 203(x) or FLSA. "Public agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; or any interstate governmental agency. Source: https://www.dol.gov/whd/regs/statutes/FairLaborStandAct.pdf

AHS is **not** a governmental entity. Read the web-site of the Social Security Administration: "A governmental entity is that which is closely affiliated, generally by government ownership or control, with State and local governments." Source: https://www.ssa.gov/section218training/advanced_course_9.htm#1

AHS is **not** a political subdivision of the State of California. See my explanations in my Amended Complaint.

AHS does **not** fall into all of these definitions.  Therefore, AHS **can't** claim itself as a public entity as it is written in the Motion to dismiss.

Defining what "public agency" as an employer means, we can read Fair Labor Standards Act or 29 U.S. Code § 203: "(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and **includes a public agency**, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

I was **not** an employee who was employed by the public agency. Read FLSA  or 29 U.S. Code § 203(e) – Definitions:

Complaint for Damages.

(1) Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer.

(2) In the case of an individual employed by a **public agency**, such term means—

(A) any individual employed by the Government of the United States—

    (i) as a civilian in the military departments (as defined in section 102 of title 5),

    (ii) in any executive agency (as defined in section 105 of such title),

    (iii) in any unit of the judicial branch of the Government which has positions in the competitive service,

    (iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces,

    (v) in the Library of Congress, or

    (vi) the Government Publishing Office;

(B) any individual employed by the United States Postal Service or the Postal Regulatory Commission; and

(C) any individual employed by a State, political subdivision of a State, or an interstate governmental agency, other than such an individual—

    (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and

    (ii) who—

        (I) holds a public elective office of that State, political subdivision, or agency,

        (II) is selected by the holder of such an office to be a member of his personal staff,

        (III) is appointed by such an officeholder to serve on a policymaking level,

        (IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or

        (V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency.

Complaint for Damages.

(3) For purposes of subsection (u), such term does not include any individual employed by an employer engaged in agriculture if such individual is the parent, spouse, child, or other member of the employer's immediate family.

I was **not** a public sector employee. According to 49 USCS § 5102, "(10) public sector employee:

(A) means an individual employed by a State, political subdivision of a State, or Indian tribe and who during the course of employment has responsibilities related to responding to an accident or incident involving the transportation of hazardous material;

(B) includes an individual employed by a State, political subdivision of a State, or Indian tribe as a firefighter or law enforcement officer; and

(C) includes an individual who volunteers to serve as a firefighter for a State, political subdivision of a State, or Indian tribe."

**As a hospital, AHS performed its duties for a business purpose.**

Read FLSA or 29 U.S. Code § 203(r). (1) "**Enterprise**" means the related activities performed (either through unified operation or common control) by any person or persons for a **common business purpose, ……**"

(2) For purposes of paragraph (1), the activities performed by any person or persons—

(A) in connection with the operation of a **hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution,** …….., or

(C) in connection with the activities of a **public agency,**

shall be deemed to be activities performed **for a business purpose**."

Also, read Fair Labor Standards Act or 29 U.S. Code § 203(s)(1):

"(1) "**Enterprise engaged in commerce** or in the production of goods for commerce" means an enterprise that—

(B) is engaged in the operation of a **hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such**

Complaint for Damages.

1   **institution,** a school ...... (**regardless of whether or not such hospital,** institution, or school is

2   public or private or **operated for profit or not for profit**); or

3   (C) is an activity of a **public agency**."

4         Citing Cal. Health &Safety Code section 101850 only confirms that AHS is **not** a public

5   entity and **not** a public agency. This provision (a)(2)(C) of the law defines :"**Hospital authority**"

6   means **the separate public agency** established by the Board of Supervisors of Alameda County

7   **to manage, administer, and control the Alameda County Medical Center**." The provision of

8   law (a)(2)(D) defines: "(D)"**Medical center" means the Alameda County Medical Center**."

9   Source: http://codes.findlaw.com/ca/health-and-safety-code/hsc-sect-101850.html

10        Cal. Health & Safety Code section 101850 does **not** define Alameda County Medical

11  Center as a public agency. Moreover, Alameda County Medical Center reorganized to Alameda

12  Health System. I filed a lawsuit against Alameda Health System and not Alameda County

13  Medical Center. The hospital authority which is a public agency is **different** from Alameda

14  County Medical Center (ACMC). The hospital authority supervises and manages ACMC. I was

15  not employed by the hospital authority. I was employed by Alameda Health System.

16        Read Assembly Bill No. 2630, Chapter 58: "..., the Alameda County Board of

17  Supervisors has determined that a transfer of governance of the Alameda County Medical Center

18  to **an independent governing body, a hospital authority**, is needed to improve the efficiency,

19  effectiveness, and economy of the community health services provided at the medical center."

20  Therefore, AHS as a medical center is **not** equal to the hospital authority, and therefore AHS

21  **doesn't** have a right to claim itself a public entity.  Source:

22  http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=200320040AB2630

23        See *Madison v. Hennepin County, United States District Court, D. Minnesota, Civil No.*

24  *02-4756 (JRT/FLN). (D. Minn. Jul. 1, 2003)* Plaintiffs, current and former employees of the

25  Hennepin County Medical Center ("HCMC"), filed this action alleging racial discrimination in

26  employment. Defendant HCMC never argued that it is a public entity or a public agency. Source:

27  https://casetext.com/case/madison-v-hennepin-county   Another lawsuit is currently pending

28  against HCMC. Union employees protest against layoffs. In this pending lawsuit, HCMC also

Complaint for Damages.

1  doesn't allege that it is a public entity or a public authority. Source:

2  http://www.startribune.com/union-lawsuit-contests-layoffs-at-hennepin-county-medical-

3  center/418433613/

4  An Orange **County** (California) hospital agreed to pay $85 million dollars in a class

5  action lawsuit for failing to pay **overtime payments to hospital employees who work 12 hour**

6  **shifts**. *See Pagaduan v. Fountain Valley Regional Medical Center (2009)*. Source:

7  http://www.ocregister.com/2009/03/11/oc-hospital-owner-to-pay-85m-to-settle-ot-dispute/

8  Another class action was brought against Tenet Healthcare Corporation, the owner of three

9  Orange **County** hospitals, according to the provisions of the California Labor Code and the

10  California Industrial Welfare Commission Wage Orders with respect **to meal breaks, rest**

11  **periods and the payment of one hour's compensation for meal breaks or rest periods not**

12  **taken**. See *McDonough, et al. v. Tenet Healthcare Corporation* and *Tien, et al. v. Tenet*

13  *Healthcare Corporation*, in Los Angeles Superior Court.

14  Source: http://www.wikinvest.com/stock/Tenet_Healthcare_(THC)/Wage_Actions

15  Healthcare workers also won **discrimination cases** against their employers hospitals.

16  A jury awarded a healthcare worker $500,000. for **wrongful termination** (2016). See

17  http://www.beckershospitalreview.com/legal-regulatory-issues/jury-awards-former-covenant-

18  medical-center-employee-500k-for-wrongful-termination.html and

19  https://casetext.com/case/perry-v-covenant-med-ctr-inc-1

20  Linda Boly, a Registered Nurse from Portland, OR, testified during a nearly two-week-

21  long trial this month that she was retaliated against -- and ultimately fired from a 34-year nursing

22  career at Legacy Good Samaritan Medical Center in June 2013 -- because she raised concerns

23  that patient care was being compromised in favor of budget-saving measures. Legacy cited what

24  it characterized as examples of poor nursing. In one, a former colleague described how she

25  thought Boly ignored a patient, whose blood oxygen level was low, while Boly worked at a

26  computer for about five minutes. Boly, on the other hand, told jurors that she accepted the other

27  nurse's offer to help the patient -- because Boly was waiting for another patient, who used a

28  walker and might need help with just a moment's notice, to exit the restroom. "The jury found

Complaint for Damages.

1    those were not the real reasons" she was fired, Seidl said. A Portland jury on Friday awarded a

2    nurse more than $3 million -- agreeing that she was wrongfully terminated by Legacy Good

3    Samaritan Medical Center after she complained to management that cost-cutting measures were

4    jeopardizing patient care (2015). A 12-person jury awarded Boly $916,000 in lost wages up until

5    a retirement age of 67, $625,000 for emotional distress and $1.5 million in punitive damages.

6    Under Oregon law, 70 percent of the $1.5 million in punitive damages will go to the state. On

7    top of that, Legacy will be ordered to pay Boly's attorney's fees, which Seidl estimates at about

8    $500,000. Boly is now a nurse at Providence St. Vincent Medical Center. Sources:

9    http://www.oregonlive.com/portland/index.ssf/2015/09/jury_awards_3_million_to_legac.html

10    and    http://ashenkeresq.com/wp-content/uploads/2015/06/Boly-v-Legacy-Findings-of-Fact-and-

11    Conclusions-of-Law-140303902.pdf

12      The provisions of the California Labor Code and IWC 4-2001 **apply** to AHS because it is

13    **not** a public entity. AHS cited a lot of lawsuits but none of these citations applies to my case.

14      Citing *Johnson* is not relevant because the Water Storage District is a municipal

15    corporation and a public employer. In my Amended Complaint, I cited California Labor Code

16    226.7, 201, 202, 227.3, 203(a), 1194, 204, and IWC Wage Order 4-2001. Johnson says about

17    Labor Code 510 and 512 which I didn't even mention in my Amended complaint. *Johnson* says

18    that sections 201, 202 and 203 are not applicable to **municipal corporations**. AHS is not a

19    municipal corporation and, therefore, is not an exempt from sections 201, 202 and 203. Johnson

20    says about IWC order #17 which I even didn't mention in my Amended complaint. *Johnson*

21    doesn't say about IWC order 4-2001 which I cited in my Amended Complaint. Contrary to

22    AHS's statement, Johnson doesn't say about section 226.7. Read *Johnson*: "As discussed below,

23    unless Labor Code provisions are specifically made applicable to public employers, they only

24    apply to employers in the private sector. Since sections 510 and 512 do not expressly apply to

25    public entities, they are not applicable here. Further, applying sections 510 and 512 to the

26    District would infringe on its sovereign power to regulate its workforce. Also, IWC Wage Order

27    No. 17 is inapplicable to this case. Finally, the District is a "**municipal corporation**" and,

28    therefore, is exempt from sections 201, 202, and 203. Accordingly, the trial court correctly

Complaint for Damages.

1   sustained the District's demurrer and the judgment will be affirmed." Source:
2   http://caselaw.findlaw.com/ca-court-of-appeal/1389313.html   Moreover, *Johnson* says: "The
3   reference to public entities in section 555 indicates that, in the context of wage and hour
4   provisions, the **Legislature expressly refers to public entities when it intends them to be**
5   **included.**" AHS is **not** a public entity, and therefore it is not an exempt from the wage and hour
6   provisions.

7       Citing *Wells* is not relevant. AHS **intentionally mislead** the Court with this citation. On
8   page 15 of the Motion to dismiss, AHS presented this citation as "absent express words to the
9   contrary, governmental agencies are not included within the general words of a statute." In fact,
10  the citation is: "A traditional rule of **statutory construction** is that, absent express words to the
11  contrary, governmental agencies are not included within the general words of a statute." Source:
12  http://scocal.stanford.edu/opinion/wells-v-one2one-learning-33665   The sentence is saying about
13  a **statutory construction** which is "The process of determining what a particular statute means
14  so that a court may apply it accurately…. Any question of statutory interpretation begins with
15  looking at the plain language of the statute to discover its original intent. To discover a statute's
16  original intent, courts first look to the words of the statute and apply their usual and ordinary
17  meanings." Source: https://www.law.cornell.edu/wex/statutory_construction   Moreover, AHS is
18  **not** a governmental agency.

19      Citing *Curcini* is irrelevant because the defendant was County of Alameda which is a
20  public entity. Read the provisions of the law that I mentioned above about who can be named as
21  a public entity.  Source: http://caselaw.findlaw.com/ca-court-of-appeal/1187788.html   For the
22  same purpose, citing *California Correctional Peace Officers Association* is also not relevant
23  because the defendant was the State of California which is a public entity. Source:
24  http://caselaw.findlaw.com/ca-court-of-appeal/1402768.html

25      Citing *California Correctional Peace Officers Association v. State of California, 188*
26  *Cal.App.4th 646 (2010)* is irrelevant. According to AHS's statement, "the court rejected
27  arguments that the IWC Orders applied to public employees. Id. at 656. The court based its
28  ruling both on the language of the wage orders and the fact that "[i]t is well established that

Complaint for Damages.

public employees have historically been exempt from IWC wage orders." The sentence "public employees have historically been exempt from IWC wage orders" applies to the citation of *Monzon v. Shaefer Ambulance Service, Inc. (1990) 224 Cal. App. 3d 16, 29 [273 Cal. Rptr. 615]* noting exclusion of public employees from **general minimum wage** order. Source: http://law.justia.com/cases/california/court-of-appeal/3d/224/16.html    Also, there is another citation of *Kim v. Regents of University of California (2000) 80 Cal. App. 4th 160, 166-167 [95 Cal. Rptr. 2d 10]* holding public employee not entitled to overtime provisions in IWC wage order No. 4. Source:  http://law.justia.com/cases/california/court-of-appeal/4th/80/160.html However, these citations do not apply to my case. In the above mentioned lawsuits, the defendants were public entities who were the State of California and the Regents of University of California. The Shaefer Ambulance Station was not a public employer. AHS is not a public employer, so it can't use these citations as a defense. Moreover, read *CALIFORNIA CORRECTIONAL PEACE OFFICERS'ASSN. v. State of California, 188 Cal. App. 4th 646 (Cal. Ct. App. 2010):* "...**the trial court found that IWC wage order No. 4 was applicable to BU 6 employees.**" Source:  https://www.courtlistener.com/opinion/2278036/california-correctional-peace-officersassn-v-state-of-california/

**Even if AHS were a public employer, I was still protected by law.**  Let us imagine that AHS is a public employer.  Laws protect employees who work for public employers. Please, read **Chapter 10 of the Meyers-Milias-Brown Act (MMBA) (Gov.Code, § 3500 et seq.).** Source: Public Employment Relationship Board of the State of California, https://www.perb.ca.gov/laws/statutes.aspx

**Affiliation to the Union.** I have a right to be represented by the Union. Read Chapter 10 of MMBA, (as of January 1, 2013), 3500: "(a)... It is also the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by **providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by those organizations in their employment relationships with public agencies,** (b) The Legislature finds and declares that the duties and responsibilities of local agency employer

Complaint for Damages.

representatives under this chapter are substantially similar to the duties and responsibilities required **under existing collective bargaining enforcement procedures** and therefore the costs incurred by the local agency employer representatives in performing those duties and responsibilities under this chapter are not reimbursable as state-mandated costs."

Read 3502. Right to join or abstain; individual representation: "Except as otherwise provided by the Legislature, public employees shall have the right to form, join, and participate in the activities of employee organizations **of their own choosing** for the purpose of representation on **all matters of employer-employee relations**. Public employees also shall have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public agency." AHS unlawfully denied my affiliation to the Union thus breaking Chapter 10 of the Meyers-Milias-Brown Act 3502.

**Wages and hours.** "3505. Conferences; meet and confer in good faith. The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, **shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501**, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action." In my case, after my multiple verbal requests and one written request regarding wages and hours, I was fired from my job without any prior good faith attempt of AHS to meet and confer with me or with a representative of the Union regarding my situation. Thus, AHS broke Chapter 10 of the Meyers-Milias-Brown Act, 3505.

Read 3505.4:'" (a) The employee organization may request that the parties' differences be submitted to a **factfinding panel** not sooner than 30 days, but not more than 45 days, following the appointment or selection of a mediator pursuant to the parties' agreement to mediate or a mediation process required by a public agency's local rules. If the dispute was not submitted to mediation, an employee organization may request that the parties' differences be

submitted to a factfinding panel not later than 30 days following the date that either party provided the other with a written notice of a declaration of impasse. Within five days after receipt of the written request, each party shall select a person to serve as its member of the factfinding panel. The Public Employment Relations Board shall, within five days after the selection of panel members by the parties, select a chairperson of the factfinding panel."

Read 3505.4: " (e) The procedural right of an employee organization to request a factfinding panel cannot be expressly or voluntarily waived."

In my case, after submitting a written statement on September 5th, 2013n regarding wage and hours, I was thrown out of my job in two days without any formal procedure that is determined by a factfinding panel. Thus, AHS broke Chapter 10 of the Meyers-Milias-Brown Act, 3505.4(a) and 3505.4(e).

**Discrimination and retaliation.** Read 3506: "Discrimination prohibited.  Public agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502."

Read 3506.5. "Discrimination prohibited; **denial of rights; refusal to negotiate in good faith; domination or interference with formation of employee organization**;…."

A public agency shall not do any of the following:

(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

(b) Deny to employee organizations the rights guaranteed to them by this chapter.

(c) Refuse or fail to meet and negotiate in good faith with a recognized employee organization. For purposes of this subdivision, knowingly providing a recognized employee organization with inaccurate information regarding the financial resources of the public employer, whether or not in response to a request for information, constitutes a refusal or failure to meet and negotiate in good faith.

Complaint for Damages.

(d) Dominate or interfere with the formation or administration of any employee organization, contribute financial or other support to any employee organization, or in any way encourage employees to join any organization in preference to another.

(e) Refuse to participate in good faith in an applicable impasse procedure."

By firing me for asking questions about why I was denied my affiliation to the Union and about wages and hours, AHS broke Chapter 10 of the Meyers-Milias-Brown Act, 3506 and 3506.5. These were examples that confirm that even if AHS were a public agency, I was still protected by law under MMBA.

**Part 3.**  Citing Government Code Section 905 is improper. I was not required to file an Administrative Claim with the Department of General Services under California Government Claims Act's claims-presentation requirement (Government Code §§900 - 935.7) against Defendant AHS because AHS is **not** a public entity.

Citing *Santa Clara Valley Transportation Authority* (2006) is irrelevant because AHS is **not** a public entity. Citing 29 U.S.C. § 152(2) is irrelevant because AHS is not the United States, not any wholly owned Government corporation, not any Federal Reserve Bank, not a State and not a political subdivision thereof. The text of 29 U.S.C. § 152 doesn't contain any definition of a public entity, public employer, public agency, and public employee. I already provided provisions of law that specifically define public entities, public agencies and public authorities and public employees: Government Code 812.2, *Vartinelli v. Stapleton* (2009) which came three years later after *Santa Clara Valley Transportation Authority*, 29 U.S. Code § 203(x) or FLSA, the Social Security Administration, 29 U.S. Code § 203(d) and 29 U.S. Code § 203(e) or FLSA, 49 USCS § 5102. Moreover, according to FLSA or 29 U.S. Code § 203(r). AHS performed its duties for business purposes which is true because they receive money from Medicare, Medicaid and private insurance companies.

I cited State laws regarding not received 15 minute breaks such as Labor Code Section 226.7 and not received shift differentials such as Labor Code Section 1194, Labor Code Section 204. Because the District court has both a federal question jurisdiction and diversity of

Complaint for Damages.

citizenship jurisdiction, the court also has a **supplemental jurisdiction** over my State law claims.

**Part 4.** Defendant AHS **intentionally** misled the Court about the nature of my Federal discrimination claim. I never claimed that the primary reason of my termination was my Russian origin. Since my first complaint, I have claimed that **the primary reason of my termination was retaliation and unlawful termination** for asking questions about unpaid overtime, denial of my affiliation to the Union, not receiving 15 minute and 10 minute breaks, and asking to transfer me to the status of a full time employee while I was actually working full time. In his numerous motions, Mr. Travelsted never responded to **42 U.S. Code § 2000e–3** which I have mentioned since my first Opposition to motion to dismiss. See citation of this law in my Amended complaint. In this Opposition, see other provisions of the Federal law and the lawsuits that prohibit employers from terminating employees for the above mentioned activities.

**Prima facie**. I never said that the primary reason of my termination was because of my Russian origin. I said that I only suggest this reason. I don't believe that I can satisfy all four requirements of a Prima Facie case as it is defined in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)*.

    **Element 1**. I was a protected class employee under 42 U.S. Code § 1981 - Equal rights under the law. I had a right to perform my duties as a Monitor Technician regardless of my race and a national origin. However, the truth is that there were only a few Caucasian employees who worked at Step Down Unit. I believe that there were only four Caucasian employees out of 40-50 —myself, Gabby who was an RN from Romania. Cathy who was an LVN observing cardiac monitors, and Svetlana Muzychenko who was a new hire Monitor Tech. All other employees belonged to a mixed race or an African-American race (not Caucasian). Managers Mr. Clerve and Mr. Harding belonged to an African-American race.

    **Element 2**. I was qualified for the position of a Monitor Tech. I had a certificate of an EKG Technician that I earned at City College of San Francisco, my BLS HCP, my ACLS and CCT certificates. I also had over two years of experience working as an EKG/Monitor Tech at

Complaint for Damages.

leading hospitals of Northern California. After I was hired by AHS, I passed two competency exams for the knowledge of EKG and ACLS.

Svetlana Muzychenko was born in Russia and adopted by American parents with her sister. She was approximately 20-22 yo. She spoke fluent English and didn't speak Russian. She was qualified for the job of a Monitor Tech. I don't remember if she had any formal EKG training or possessed an EKG Tech certificate or if she got on the job training at her previous place. I remember that she possessed her BLS HCP, ACLS and PALS certificates. She was hired by AHS as an EKG Tech after I was hired. She obviously didn't have years of experience reading EKGs.

Svetlana's EKG reading skills were not so good. I remember myself how I was learning to read EKGs. It took a lot of time and effort to read EKGs when I worked at LifeWatch. However, I did everything possible to learn from my colleagues. Svetlana was taking the same steps at AHS. Ms. Doniea Lawson who is another Monitor Tech at AHS and I taught Svetlana to read EKGs and to work with cardiac monitors.  After a very short period of time, Doniea and I noticed that Svetlana doesn't come to work anymore. We realized that Svetlana was fired. We were so sorry for her. AHS is a teaching hospital, and it could have given Svetlana more time to learn how to read EKGs. I believe that Svetlana was not given any prior notice of termination, and she was not given any opportunity to transfer to another position within AHS.  In contrary, when AHS wanted to terminate Cathy who was Caucasian and who was an American, AHS gave her a notice of termination. Cathy shared this notice with us, and at least we knew that AHS was going to terminate Cathy. Svetlana didn't say anything about the notice of termination, so I am sure that AHS didn't give her this notice as well as didn't give the same notice to me prior to my termination. I don't have Svetlana's contact information, so I can't contact with her directly.

**Element 3**. Svetlana lost her job only after a few weeks without a prior notice of termination. She didn't have good EKG reading skills. I was terminated from AHS in a less than 6 months also without any prior notice of termination even though I had good EKG reading skills. Maybe we were terminated this way because we were Russians. Like I said, Cathy who was an American received a notice of termination.

Complaint for Damages.

**Element 4**. I can't say who was hired as a Monitor Tech after I was terminated -- what nationality and what race. At the moment of termination, Mr. Harding revoked my badge of an employee, and I lost my right to enter Step Down Unit. After my termination, I attended Peralta Colleges and was very busy with study. I emailed Doniea Lawson maybe 1 or 2 times after my termination but she never responded. Maybe she was afraid to communicate with me out of fear of retaliation. I saw a job posting of a Monitor Tech after my termination but I don't know who was hired. I think I can't satisfy this fourth element of a Prima Facie case only because I was not allowed to enter Step Down Unit without a badge, and Ms, Lawson never responded my emails.

**Part 5.** Citing California Government Code Section 818 is improper because AHS is **not** a public entity. Therefore, AHS is liable for malice, oppression and fraud as it is defined in California Civil Code Section 3294. Also, AHS must be punished for libel under the Code of Civil Procedure 340(c) (see my Amended Complaint). Section 818 doesn't provide any immunities for public employers for libel. Also, AHS must be punished for lying regarding its public entity's status and for litigating in bad faith. See *McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006)* where the Court fined the plaintiff for litigating in bad faith.

**Part 6.** I clearly stated Federal and State laws under which relief must be granted to me. Read my Amended Complaint and the Opposition.

**Protection of my civil rights** - U.S. Constitution, Art III, Sec 2; 5th and 14th Amendments to the Constitution, 28 U.S. Code § 1343, 28 U.S. Code § 1357.

**Labor dispute** - 29 U.S. Code § 101.

**Not received 10 minute breaks** - OSHA - 29 U.S. Code § 662, 29 U.S.C. § 651, 29 U.S. Code § 654; Occupational Safety Act - 29 CFR Part 1977, 29 CFR Part 1977.12(a).

**Retaliation and unlawful termination for asking questions about not received 10 minute breaks** - 29 CFR 1977.11 and T8 CCR 3203(a) (California Code of Regulations).

**Not received 15 minute breaks** - 29 CFR 785.15, 29 CFR 785.18, Labor Code Section 226.7.

**(possibly) retaliation against my Russian origin** - Title VII of the Civil Rights Act of 1964.

**Denial of my affiliation to the Union** - 29 U.S. Code § 157, 29 U.S. Code § 158(a)(2) and § 158(a)(3) and § 158(c)  - Unfair labor practices; Chapter 10 of MMBA 3500 and 3502 (in case if

Complaint for Damages.

AHS were considered a public entity), California Civil Code 3294 (fraud), California Code of Civil Procedure § 338(d) (fraud).

**Retaliation and unlawful termination because I asked questions regarding affiliation to the Union, not received breaks, not received overtime, and asked to transfer me to a full time employment** - 42 U.S.C. § 2000e-3(a), 29 U.S. Code § 215, 29 U.S. Code § 216 – AHS can meet criminal charges up to imprisonment; Chapter 10 of MMBA 3506 and 3505.5 (in case if AHS were considered a public entity), Labor Code sections 98.6 and 98.6 (3), California Civil Code 3294 (oppression); California Code of Civil Procedure § 338(d) (fraud) firing me in order to avoid transferring me to a full-time position.

**Not received overtime payment** - 29 U.S. Code § 207(e)(5), 29 U.S. Code § 207(j), 29 U.S. Code § 207(o) (in case if AHS were considered a public entity); IWC 4-2001   3(A)(1)(a) and IWC 4-2001   3(B)(1); Chapter 10 of MMBA 3505 (in case if AHS were considered a public entity).

**Not received shift differentials** - 29 U.S. Code § 207(e)(6), 29 U.S. Code § 207(j), Chapter 10 of MMBA 3505 (in case if AHS were considered a public entity), Labor Code Section 1194, Labor Code Section 204, California Civil Code 3294 (fraud), California Code of Civil Procedure § 338(d) (fraud).

**Failure to pay me my final paycheck on the day of termination** - Cal. Lab. Code §§ 201, 202, 203(a) and 227.3.

**Libel** - Code of Civil Procedure, 340 (c) – AHS claimed that not received 15 minute breaks were already compensated; that for a 12 hour shift I was entitled to get only two 15 minute breaks; that AHS is a public employer and therefore is an exempt from 29 U.S. Code § 157, 29 U.S. Code § 158(a)(2) and § 158(a)(3) and § 158(c)  - Unfair labor practices; AHS lied to DIR that I expressed negligence to the patient; AHS lied that I can be transferred to a full time position only when it is available and I must be Union represented; AHS lied that I didn't receive my overtime payments because AHS was a public employer; AHS lied that 10 minute breaks were cancelled since 2011; AHS lied that I would be paid for 2 hours of RCA meeting; AHS lied that I had to be represented by the Union in order to receive shift differentials.

Complaint for Damages.

AHS **fraudulently** broke the laws regarding its **public entity's status** - 29 U.S. Code § 207(j), Government Code 812.2, *Vartinelli v. Stapleton, 2009 U.S. Dist. LEXIS 88553 ( E.D. Mich. Aug. 3, 2009)*, 29 U.S. Code § 203(x) or FLSA, Section 218 of the Social Security Act, Internal Revenue Bulletin, 2016-10, dated March 7, 2016; 29 U.S. Code § 203(d), 29 U.S. Code § 203(e), 49 USCS § 5102, 29 U.S. Code § 203(r), 29 U.S. Code § 203(s)(1), Government Code Section 905, Government Code Section 818, Cal. Health & Safety Code section 101850(a)(2)(C) and (a)(2)(D); and Assembly Bill No. 2630, Chapter 58.

**SUMMARY.**

a) AHS has made numerous fraudulent attempts to mislead the Court and claim itself as a public agency, public entity, political subdivision (see the Determination letter of DLSE dated December 29, 2016) or public employer. None of these allegations is true. Read the provisions of a Federal law that state that the hospital works on a business purpose. Even Cal. Health &Safety Code section 101850 does not say that AHS is a public agency.

b) My Complaint and my Amended Complaint contain Federal questions jurisdiction. My Amended Complaint has both Federal questions and diversity of citizenship jurisdiction. Moreover, the District Court has jurisdiction over my Amended Complaint under FLSA and OSHA. See citations above.

c) The District Court also has supplemental jurisdiction over California State Labor laws and California laws that allow me to sue AHS for libel, fraud, malice and oppression.

Therefore, I am respectfully asking the Court to dismiss the mentioned above Motion to Dismiss my Amended Complaint filed by defendant Alameda Health System."

43. **A summary of my May 08, 2017 Opposition to Mr. Tavelstead's Motion to Dismiss my Amended Complaint**. Please, notice the following key facts of my May 08, 2017 Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint:

1) As a Pro Se Russian Plaintiff who is not a lawyer and who didn't know American laws, I erroneously analyzed a Prima Facie case in a Title VII Cause of Action, and I erroneously

Complaint for Damages.

asserted that I couldn't made a Prima Facie Case in my Title VII Cause of Action, see (**ER 07414 Vol. 4, page 670, lines 1-8**), "**Element 4**. I can't say who was hired as a Monitor Tech after I was terminated – what nationality and what race. At the moment of termination, Mr. Harding revoked my badge of an employee, and I lost my right to enter Step Down Unit. After my termination, I attended Peralta Colleges and was very busy with study. I emailed Doniea Lawson maybe 1 or 2 times after my termination but she never responded. Maybe she was afraid to communicate with me out of fear of retaliation. I saw a job posting of a Monitor Tech after my termination but I don't know who was hired. I think I can't satisfy this fourth element of a Prima Facie case only because I was not allowed to enter Step Down Unit without a badge, and Ms, Lawson never responded my emails." Therefore, the AHS, the NTPC, and Mr. Travelstead are liable for conspiring with each other, for intentionally misleading me, and for intentionally and maliciously preventing me from obtaining relief pursuant to the Federal law that is Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 1985. Also, the R.I.C.O. applies because, coercing me to analyze a Prima Facie Case at a pleading stage, the AHS, the NTPC, and Mr. Travelstead avoided paying me money as a result of an intentional violation of Title VII of the Civil Rights Act of 1964, see 18 U.S.C. § 1962

2) In my Opposition, I argued multiple times that the AHS was not a Public Entity within the meaning of the HSC § 101850, see (**ER 07414 Vol. 4, page 660, lines 4-8**), "Citing Cal. Health &Safety Code section 101850 only confirms that AHS is **not** a public entity and **not** a public agency. This provision (a)(2)(C) of the law defines :"**Hospital authority**" means **the separate public agency** established by the Board of Supervisors of Alameda County **to manage, administer, and control the Alameda County Medical Center**." The provision of law (a)(2)(D) defines: "(D)"**Medical center" means the Alameda County Medical Center**."

Also, see (**ER 07414 Vol. 4, page 660, lines 10-21**). "Cal. Health & Safety Code section 101850 does **not** define Alameda County Medical Center as a public agency. Moreover, Alameda County Medical Center reorganized to Alameda Health System. I

filed a lawsuit against Alameda Health System and not Alameda County Medical Center. The hospital authority which is a public agency is **different** from Alameda County Medical Center (ACMC). The hospital authority supervises and manages ACMC. I was not employed by the hospital authority. I was employed by Alameda Health System.

Read Assembly Bill No. 2630, Chapter 58: "..., the Alameda County Board of Supervisors has determined that a transfer of governance of the Alameda County Medical Center to **an independent governing body, a hospital authority**, is needed to improve the efficiency, effectiveness, and economy of the community health services provided at the medical center." Therefore, AHS as a medical center is **not** equal to the hospital authority, and therefore AHS **doesn't** have a right to claim itself a public entity."

However, because I am a Russian Pro Se Plaintiff, because I am not a lawyer, and because I didn't know American laws, at the time of filing the Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint, I didn't know about the existence of the California Government Code Sections 900.4 and 900.6, and I didn't know about the statutory difference between the Local Public Agencies and the State Public Agencies. Therefore, in my Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint, I was unable to adequately assert that the Alameda Health System was a Local Public Agency within the meaning of the California Government Code Sections 900.4, 53050, and 53051. Therefore, the AHS, the NTPC, and Mr. Travelstead are liable for committing fraud, for intentionally misleading me, and for preventing me from obtaining relief pursuant to the N.L.R.A. and the L.M.R.A. within the meaning of 42 U.S.C. § 1983 and § 1985 and within the meaning of the R.I.C.O. or 18 U.S.C. § 1962.

3) Nevertheless, in my Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint, I attempted to assert that the AHS was not a *State* Public Agency (emphasis added), see (**ER 07414 Vol. 4, page 657, lines 27-28**), "I was **not** an employee who was employed by the public agency. Read FLSA or 29 U.S. Code § 203(e) – Definitions:"

Complaint for Damages.

See (**ER 07414 Vol. 4, page 658, lines 14-27**), "(C) any individual employed by a State, political subdivision *of a State*, or an interstate governmental agency, other than such an individual—

(i) who is not subject to the civil service laws *of the State*, political subdivision, or agency which employs him; and

(ii) who—

   (I) holds a public elective office *of that State*, political subdivision, or agency,

   (II) is selected by the holder of such an office to be a member of his personal staff,

   (III) is appointed by such an officeholder to serve on a policymaking level,

   (IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or

   (V) is an employee in the legislative branch or legislative body *of that State*, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency."

(emphasis added.)

4) Also, in my Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint, I argued that the AHS was not a *State* "public entity", see (**ER 07414 Vol. 4, page 656, lines 19-22**), "AHS is **not** a public entity. Read Government Code 812.2. "Public entity" includes the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation *in the State*" (emphasis added.)

5) In my Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint, I listed to following grounds for the Federal question jurisdiction of the U.S. District Court (**ER 07414 Vol. 4, page 644, lines 17-25**), "The District court has had a federal question jurisdiction since my initial complaint according to:

   1) both the U.S. Constitution, Art III, Sec 2 and 28 USC 1331

Complaint for Damages.

2) the 5th and 14th Amendments to the Constitution

3) 29 U.S. Code § 101 over labor disputes

4) 28 U.S. Code § 1343 to redress the deprivation and to recover damages in a civil action

5) 28 U.S. Code § 1357 to recover damages for any injury or property in a civil action

6) FLSA or 29 U.S. Code § 216 that says that my case should be heard in a Federal Court

7) FLSA or 29 U.S. Code § 217 that says that my case should be heard in a Federal Court

8) 29 U.S. Code § 662 (OSHA) that says that my case should be heard in a Federal Court."

6) In my Opposition to Mr. Travelstead's Motion to Dismiss my Amended Complaint, I also asserted that the U.S. District Court has the Diversity of Citizenship jurisdiction over my Amended Complaint (**ER 07414 Vol. 4, from page 652, line 19 to page 656, line 12**). "**DIVERSITY JURISDICTION.** The District court has diversity jurisdiction over my amended complaint pursuant to 28 USC 1332(a)(2). According to 28 U.S. Code § 1653 and FRCP Rule 15(a)(1)(A), I have a right to amend my pleading and allegation of jurisdiction.

Read 28 U.S.C. § 1332(a)(2): "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall **not** have original jurisdiction under this subsection of an action between **citizens of a State** and citizens or subjects of a **foreign state** who are lawfully admitted for **permanent residence** in the United States **and are domiciled in the same State**".

I was born in the Russian Federation, therefore I am a citizen of Russia. I was a resident of California since 2004 to April 2nd, 2017 (excepting the time I was in Russia from January 2014 to July 2016). I was lawfully admitted for permanent residency in the

Complaint for Damages.

USA in 2010. When I filed my first complaint, I was not diverse from defendants AHS and DIR who both resided in California. When I moved to New Mexico on April 2nd, 2017, **I became fully diverse from defendants AHS and officers of DIR**.

*LeBlanc* (2001) doesn't apply to my case. AHS said that the district court would have to take into consideration **my initial filing** where I was still a citizen of California and didn't claim diversity of citizenship. This is **not** what LeBlanc says. When Le Blanc filed her complaint, she was a citizen of Canada and did not have lawful permanent residency of the USA. She filed a lawsuit against citizens of the State of New York. Therefore, the district court would initially have the diversity of citizenship jurisdiction. When LeBlanc filed an amendment, she had obtained her lawful permanent residency but she continued to domicile in the State of New York where her defendants resided. Therefore, LeBlanc lost her diversity of citizenship jurisdiction allegations because: 1) she was a citizen of Canada, 2) she obtained her lawful permanent residency in the United States of America, and 3) she domiciled in the State of New York where her defendants resided. Read: "LeBlanc contends that a court assesses questions of fact pertinent to its jurisdiction, such as a party's citizenship for diversity purposes, as of the time of the initial complaint. Therefore, because LeBlanc was not yet a legal permanent resident when she filed the complaint, **she was diverse from Syd & Dusty's and should be allowed to proceed with her suit**. Syd & Dusty's responds that even with Ossen now out of the case, diversity does not presently exist, because **when the amendment to allege diversity was filed, LeBlanc had become a legal permanent resident of New York and was thus no longer diverse from Syd & Dusty's**". Source: http://openjurist.org/248/f3d/95/etoile-le-blanc-stephen-ossen-v-terry-cleveland

Numerous lawsuits allowed plaintiffs to change jurisdiction in amended complaints.

**Example 1.** Change In Basis For Federal Jurisdiction In Amended Complaint Given Full Effect.

Complaint for Damages.

In *ConnectU LLC v. Zuckerberg, No. 07-1796, 2008 WL 902185 (1st Cir. Apr. 3, 2008)*, the First Circuit concluded that jurisdiction should be determined based on the allegations in an amended complaint if the complaint was filed before the defendants filed a pleading in response to the original complaint. Plaintiffs originally filed suit in federal court premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), and asserted only state-law claims. Before defendants filed any responsive pleading, plaintiffs amended their complaint to add a federal-law claim, and asserted federal question jurisdiction, pursuant to 28 U.S.C. § 1331. Defendants moved to dismiss for want of subject matter jurisdiction, arguing that the parties to the original complaint were not wholly diverse and, therefore, the court lacked jurisdiction. The district court granted the motion, finding that, under the time-of-filing rule, jurisdiction is determined as of the date a complaint is filed, and filing an amended complaint cannot cure any jurisdictional defect in the original complaint. The appellate court reversed. Applying *Rockwell International Corp. v. United States, 127 S. Ct. 1397 (2007)*, the court held that the "jurisdictional claim in the amended complaint warrants full consideration and constitutes a viable hook on which federal jurisdiction can be hung... [because plaintiff] amended its complaint before the defendants filed a responsive pleading and, thus, the amendment was effective as a matter of right pursuant to Rule 15(a)." Sources:
https://jenner.com/resource_centers/update/504
http://suffolklawreview.org/wp-content/uploads/2009/02/Woodworth_Comment_WDFF.pdf
http://caselaw.findlaw.com/us-1st-circuit/1235212.html

**Example 2.** "[N]oncompliance with the pleading requirement or a defective allegation of subject matter jurisdiction may be corrected by an amendment under the liberal provisions of Federal Rule 15." *13E Wright & Miller § 3602.1, pp. 86–87.*

**Example 3.** Read *McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006)*: "When diversity jurisdiction is not properly alleged, typically we would allow a plaintiff to amend his complaint to cure the deficiency or to supplement his brief to provide

Complaint for Damages.

clarification.    See 28 U.S.C. § 1653; *see also McDonald v. Household Int'l, Inc., 425 F.3d 424, 426 (7th Cir.2005); Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 687 (7th Cir.2004); F & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co., 882 F.2d 281, 284 (7th Cir.1989); Stockman v. LaCroix, 790 F.2d 584, 587 (7th Cir.1986).*"

Source: http://caselaw.findlaw.com/us-7th-circuit/1064029.html

**Example 4.** "Technical defects and minor mistakes will be overlooked and the requirement will be considered satisfied when the existence of complete diversity is apparent from other parts of the complaint." 13E Wright & Miller § 3602.1, pp. 81–86.

**Example 5.** A court can allow an amendment to a complaint to support a new theory of jurisdiction if the "pleadings and judicial economy support it." *Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 161–62 (2d Cir. 1998)* (allowing plaintiff to amend complaint to assert admiralty jurisdiction even though plaintiff initially had asserted diversity of citizenship jurisdiction).

Source for examples 2, 3, 4 and 5:

https://jenner.com/system/assets/assets/5507/original/Federal_20Subject_20Matter_20Jurisdiction_20Outline_Jenner_20_26_20Block_0611.pdf?1323113751

After I was retaliated and unlawfully terminated from AHS, I lost my health insurance. I filed a claim with DIR. I went to Russia to solve my health issues because I was bleeding, anemic, and needed surgery. After I returned back to the USA in July 2016, my case was still under investigation of DLSE. I was looking for a job as a Monitor/EKG Technician applying to jobs in hospitals and agencies and attending job interviews. In the mean time, I worked as a Caregiver with IHSS, was registered with San Mateo County, received food stamps and cash aid, and attended seminars at NOVA job searching center. I applied to Federal jobs at Albuquerque VAMC and Las Vegas VAMC in November 2016 – **before** I knew that my DLSE case will be denied. After I was informed by Ms. Healy that my case will be denied, I filed a Complaint in a District court on December 29, 2016. I had both job interviews for Albuquerque VAMC and Las Vegas

Complaint for Damages.

VAMC in January 2017 – after I filed a complaint. I got both jobs but the job at Albuquerque arrived first. This is why I moved to New Mexico on April 2ⁿᵈ, 2017. We got Honorable Judge Beeler's decision on March 21ˢᵗ, 2017 where she gave me 21 days to amend my complaint. The deadline was on April 10ᵗʰ, 2017 – after I already moved to Albuquerque.

The Court should not relate back the diversity of citizenship jurisdiction in my amended complaint under FRCP Rule 15(c) because this change occurred **in good faith** (getting a job, helping Veterans and paying taxes) and not for manipulative purposes to cure the "defective" subject-matter jurisdiction in my original complaint.

Read FRCP Rule 15(d): "Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, **permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.** The court may order that the opposing party plead to the supplemental pleading within a specified time."

**Summary:** The District court **has** both federal question (subject-matter) and diversity of citizenship jurisdiction over my Amended complaint."

45. **Mr. Travelstead's May 15, 2017 Reply to my Opposition to the Motion to Dismiss my Amended Complaint**. On May 15, 2017, Mr. Travelstead filed a Reply (Doc. No. 49) to my Opposition to his Motion to Dismiss my Amended Complaint, see (**ER 07414 Vol. 4, pages 691-698**), "**I. INTRODUCTION**

Plaintiff fails to meet her burden of invoking subject matter jurisdiction in federal district court. The Court has already ruled that Plaintiff's claims against AHS are based on California law and the Court does not have federal-question jurisdiction. However, the Court gave Plaintiff an opportunity to amend to state a federal claim. The only new federal statute cited is the provision prohibiting discrimination and retaliation pursuant to Title VII of the Civil Rights Act, and the Amended Complaint is not even clear whether Plaintiff asserts it as a cause of action.

Complaint for Damages.

1    However, the Amended Complaint fails to set forth a prima facie case and in Plaintiff's

2    Opposition, she concedes that she cannot. Plaintiff also fails to effectively oppose the argument

3    that there is no diversity jurisdiction here. Accordingly, Plaintiff's Amended Complaint should

4    be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

5    jurisdiction.

6         Plaintiff's Opposition asserts that Plaintiff's state claims should not be dismissed for

7    failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil

8    Procedure 12(b)(6), because AHS is not a public entity. However, it is indisputable that AHS is a

9    public entity. Accordingly, Plaintiff's claims against AHS for violations of the Labor Code and

10   Wage Order fails, because the alleged Labor Code provisions and Wage Order does not apply to

11   public entities. Plaintiff's tort claims of negligence, libel and fraud fail, because Plaintiff has not

12   alleged compliance with the California Government Claims Act. Lastly, Plaintiff's claim for

13   punitive damages are improper, because Calfornia[2] law prohibits punitive damages against

14   public entities.

15   **II. DISCUSSION**

16        The Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction

17   without leave to amend. Plaintiff has not and cannot meet her burden to invoke federal question

18   or diversity jurisdiction. In the alternative, AHS's Motion to Dismiss should be granted on the

19   grounds that Plaintiff's state claims and claim for punitive damages are barred as a matter of law,

20   because AHS is a public entity.

21   **A. PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED AS THIS**

22   **COURT LACKS SUBJECT MATTER JURISDICTION**

23        **1. There Is No Diversity of Citizenship.**

24        Plaintiff's alleges factual allegations in her Opposition that confirm that there is no

25   diversity of citizenship pursuant to 28 United States Code Section 1332 subdivision (a). Plaintiff

26   filed her original Complaint on December 29, 2016. Plaintiff alleges she was indeed a legal

_____

28   Typo as in an original.

Complaint for Damages.

1    permanent resident in the United States since 2010 and domiciled in California from 2004 to

2    April 2nd, 2017, except when she was in Russia from January 2014 to July 2016. (EFC No 47 at

3    11.) She also admits, "when I filed my first complaint, I was not diverse from defendants AHS

4    and DIR who both resided in California." (Id.)

5            However, Plaintiff states there is diversity of citizenship based on her misreading of

6    *LeBlanc v. Cleveland*, 248 F.3d 95 (2nd Cir. 2001). Plaintiff states that *LeBlanc* does not hold

7    that the party's citizenship for purposes of diversity purposes is assessed at the time of the initial

8    complaint. Plaintiff's Opposition highlights the portion of the case setting forth Defendant Syd

9    and Dusty's position that the plaintiff did not have diversity of citizenship at the time of the

10   amendment. *Id.* at 99. The *LeBlanc* Court was simply juxtaposing the two conflicting positions

11   of when to consider questions of fact pertaining to a party's citizenship and disagreed with

12   Defendant Syd and Dusty's contention. After setting forth the two positions, the Court held "an

13   amendment to allege diversity jurisdiction relates back under Rule 15 of the Federal Rules of

14   Civil Procedure, and therefore we assess LeBlanc's citizenship *at the time the complaint was*

15   *first filed.*" *Id.* 99-100 [emphasis added].

16           Plaintiff's Opposition gives "examples" of other cases and authority where jurisdiction

17   was changed in amended complaints. Plaintiff cites *ConnectU LLC v. Zuckerberg*, 522 F.3d 82

18   (1st Cir, 2008) but it is not relevant to this case. There, the Court considered whether a district

19   court had subject matter jurisdiction where the plaintiff initially invoked diversity of citizenship

20   as the basis of the court's subject matter jurisdiction then switched to invoke federal question

21   jurisdiction in the amended complaint where the federal claim arose after the initial complaint

22   was filed. The appellate court held that while the time-of-filing rule does not bar a plaintiff from

23   switching jurisdictional horses, the rule is well-established in the realm of diversity jurisdiction

24   cases. *ConnectU LLC, supra*, 522 F.3d at 91-92. In this case, Plaintiff is not seeking to now

25   invoke federal question jurisdiction when it was initially invoked on the basis of diversity of

26   citizenship.

27           The other authorities Plaintiff cites in her Opposition stand for the proposition that

28   defective allegations of subject matter jurisdiction may be corrected or clarified by amendment,

Complaint for Damages.

and does not change the time-of-filing rule to assess citizenship at the time when a plaintiff files the original complaint.

Plaintiff also asks the Court to assess diversity at the time of the filing of the amended complaint, because the change in domicile occurred in good faith and not to cure the defective subject-matter jurisdiction in her original complaint. (ECF No. 47 at 14.) Citizenship is determined as of the date of commencement of an action, and therefore, in cases premised on diversity, jurisdiction "depends upon the state of things at the time of the action brought." *Mullen v. Torrance*, 22 U.S. 537, 539 (1824). The time-of-filing rule is a bright line well-established rule and whether the change in citizenship occurred in good faith is not a factor to be considered.

### 2. There is No Federal-Question Jurisdiction.

Plaintiff's Opposition again cites the same federal Code of Federal Regulations and federal union labor laws cited in Plaintiff's Opposition to the Motion to Dismiss original complaint (ECF No. 22) and Amended Complaint (ECF No. 40 ). Although the Court already ruled Plaintiff's case is not based on federal statutes cited by Plaintiff, Plaintiff again repeats the statutes inapplicable to this case.

Plaintiff's Opposition alleges Plaintiff is "protecting my right of liberty and property as defined the Fifth and Fourteenth Amendments." The Amended Complaint alleges violations of the Fifth and Fourteenth Amendent[3] violation claims against the the individual officials of the Department of Industrial Relations, not against AHS. (ECF No. 40 at 26-27.) Even had Plaintiff alleged them against AHS, it is clear it would be inappropriate because there are no allegations of deprivation of life, liberty or property without due process of law against AHS.

### i. Plaintiff Does Not Set Forth Any FLSA Claims.

Plaintiff's Opposition now asserts violations of the Federal Labor Standards Act ("FLSA"). It is inappropriate for Plaintiff to assert the FLSA violation in her Opposition when she was given leave to amend the original complaint to plead a federal claim. Furthermore, the FLSA provisions Plaintiff alleges were violated are not applicable in this case. Plaintiff alleges

---

[3] Typo as in an original.

Complaint for Damages.

29 U.S. Code sections 207, 215, 216 and 217 were violated. Section 207 provides for overtime pay when an employee works more than 40 hours a week. 29 U.S. Code § 207, subd. (a)(1). In the Amended Complaint, Plaintiff alleges she worked three 12-hour shifts per week totaling thirty six hours a week. (ECF No. 40 at 5.) The FLSA does not require overtime pay for hours worked in excess of eight hours a day, or for hours worked on Saturdays, Sundays or holidays. Thus, Plaintiff would not be entitled to overtime pay pursuant to FLSA, because she did not work more than forty hours a week.

Plaintiff asserts violations of 29 U.S. Code § 207 subdivisions (e)(5) and (e)(6), but those subdivisions are definitions of "regular rate." The subdivisions explain that any extra compensation should be included in the calculation of the regular rate. 29 U.S. Code section 207(j) also is not applicable here, because it allows for an exception to the rule requiring overtime pay for work in excess of forty hours in a week where there is an agreement before the performance of the work to base overtime on a two-week period rather than a weekly period. Here, there was no such prior agreement and Plaintiff does not allege she worked more than forty hours in a work week.

29 U.S. Code Section 215 is also inapplicable here, because it protects employees from discrimination or retaliation against an employee who has filed any complaint or instituted any proceeding under the FLSA for violations of the FLSA. As stated above, there are no violation of the FLSA by AHS, and Plaintiff did not institute any such proceedings before her employment ended, so no such discrimination or retaliation is possible here.

Furthermore, in the Order Dismissing Complaint (ECF No. 36 at 4), the Court ruled that any claim under the FLSA is subject to a two- or three-year statute of limitations pursuant to 29 U.S.C. § 225(a). (ECF No. 36 at 4.) The Court found that any FLSA violation would have been apparent by the date of her discharge in September 2013, and she did not file her federal complaint until December 2016. (Id.) "And while her pursuit of claims through the agency process might toll her state claims…they do not obviously toll any federal FLSA claim." (Id.)

ii. **Plaintiff Does Not Set Forth A Federal Discrimination Claim.**

Complaint for Damages.

Plaintiff concedes that she cannot set forth a prima facie case of discrimination claim under Title VII of the Civil Rights Act of 1964 in her Opposition. She states, "I don't believe that I can satisfy all four requirements of a Prima Facie [sic] case as it is defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." (ECF No. 47 at 26.) Plaintiff provides no allegations of discriminatory motive. Plaintiff alleges the reason for her termination was in retaliation for her asking about the labor issues and not based on her Russian origin. (Id.) Furthermore, she alleges the other Monitor Technician of Russian origin who was terminated did not perform her duties well. "She didn't have good EKG reading skills." (Id. at 27.) Plaintiff's Opposition again gives no indication her discrimination claim is not time-barred or that she exhausted administrative remedies.

Plaintiff was allowed a chance to amend to state a federal claim and now concedes she cannot set set[4] forth a federal claim for discrimination based on her national origin. Plaintiff cites numerous federal laws in a failed effort to invoke federal jurisdiction, but it is clear Plaintiff's claims that she was not paid overtime and not given sufficient breaks, and retaliated against for raising those issues, are based on California law. Accordingly, the Court must dismiss Plaintiff's Amended Complaint without leave to amend, because Plaintiff has failed to meet her burden to establish a proper basis for the Court to assert subject matter jurisdiction over this action, and also failed to show she can invoke subject matter jurisdiction if given leave to amend.

**B. PLAINTIFF'S STATE CLAIMS FAIL TO STATE A CLAIM BECAUSE AHS IS A PUBLIC ENTITY.**

Plaintiff disputes that AHS is a public entity, and thus, (i) she was not required to comply with the claims presentation requirement as to her tort claims, (ii) the alleged Labor Code provisions and Industrial Wage Commission Orders applied to AHS; and (iii) punitive damages are not barred as a matter of law. To the contrary, it is it is indisputable that AHS is a public entity, and all of Plaintiff's state claims should be dismissed for failure to state a claim.

---

[4] Typo as in an original.

Complaint for Damages.

The Alameda County Board of Supervisors determined that establishing Alameda Health System, an independent hospital authority which would be separate and apart from the County of Alameda, was necessary to improve the efficiency, effectiveness and economy of the medical center formerly known as the Alameda County Medical Center. Health & Safety Code § 101850(a)(1), (a)(2)(D). Alameda Health System is the independent hospital authority which the statute expressly states is a "public agency." Health & Safety Code § 101850(a)(2)(C).

Alameda Health System is a government entity required to file a statement required by Government Code section 53051. Government Code section 53051 requires each "public agency shall file with the Secretary of State" a statement setting forth facts required for the Roster of Public Agencies. Plaintiff's Opposition includes a reference to the Secretary of State's online California Roster and asserts that Alameda County Medical Center and AHS are not on it, and thus, is not a public entity. (ECF No. 47 at 15.) The Secretary of State maintains the "Roster of Public Agencies" and is declared to be a public record. Government Code § 53051(c). The Roster of Public Agencies is maintained on microfiche and not online. (Declaration of Julie Cho, ¶ 2.) A request for a certified copy must be in writing and typically takes ten to fourteen days for the Deparment[5] to process the request, and thus, there was not sufficient time to obtain the document in time for this Reply Brief. (Id. at ¶ 4.) However, the Department of Secretary of the State can be contacted at 916-653-6814 to get confirmation that AHS is registered as a California public agency. (Id. at ¶ 5.)

Plaintiff disputes that AHS is a public entity and a claimant would not have to comply with the claims presentation set forth in the Government Code. However, in the subdivision discussing the personnel of AHS, Health and Safety Code Section 101850 subdivision (w)(3) expressly states employees of AHS are public employees for purposes of Title 1 of the Government Code relating to claims and actions against public entities and public employees. Title 1 of the Government Code is the section setting forth the claims presentation requirement. Claims procedures and the statute of limitations that apply to actions against public entities are

---

[5] Typo as in an original.

Complaint for Damages.

1    the same for actions against public employees. See generally Gov. Code §§950-950.8; see also

2    *Rogers vs. Centrone*, 261 Cal.App.2d 361, 363 (1968); *Burgdorf v. Funder*, 246 Cal.App.2d 443,

3    447-448 (1966). Plaintiff has not, and cannot, plead that she has complied with the claims

4    presentation requirement pursuant to the Government Claims Act, and thus her tort claims fails

5    to state a claim and should be dismissed without leave to amend.

6         It is indisputable that AHS is a public entity as defined in Health and Safety Code section

7    101850 and registered on the Secretary of State's Roster of Public Agencies. As fully set forth in

8    the moving paper, Plaintiff's state claims for the alleged violations of Labor Code violations and

9    the Wage Orders do not apply to AHS, because AHS is a public entity. Furthermore, Plaintiff's

10   claim for punitive damages are not proper as a matter of law pursuant to Government Code

11   section 818.

12   **III. CONCLUSION**

13        Based on the foregoing, AHS respectfully requests the Court dismiss Plaintiff's Amended

14   Complaint for lack of subject matter jurisdiction. Plaintiff has not met her burden to invoke

15   diversity or federal question jurisdiction. In the alternative, AHS's Motion to Dismiss should be

16   granted on grounds that Plaintiff's Labor Code and Wage Order claims do not apply to AHS,

17   Plaintiff's tort claims for libel, fraud and negligence fail because Plaintiff has not complied with

18   the claims presentation, and Plaintiff's request for punitive damages is barred as a matter of law.

19        Dated: May 15, 2017                    NARAYAN TRAVELSTEAD P.C.

20                                               /s/ Timothy C. Travelstead

21                                               Timothy C. Travelstead

22                                               Attorney for Defendant

23                                               Alameda Health System."

24

25        46. **The May 15, 2017 DECLARATION OF JULIE LEE CHO IN SUPPORT OF**

26   **DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY BRIEF TO PLAINTIFF'S**

27   **OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**. On May 15, 2017,

28   Attorney of the NTPC Ms. Julie Cho filed a DECLARATION OF JULIE LEE CHO IN

Complaint for Damages.

SUPPORT OF DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT (**Doc. No. 50, ER 07414 Vol. 4, pages 899-701**), "I, JULIE L. CHO, declare:

1. I am an attorney licensed to practice law in the State of California. I am employed as an attorney by Narayan Travelstead P.C., the firm-of-record for Defendant Alameda Health System ("AHS") and make this declaration in support of AHS's Reply Brief to Plaintiff's Opposition to Motion to Dismiss Amended Complaint.

2. I called the Department of Secretary of State's office at the publicly listed phone number, 916-653-6814, and asked whether I can find the Roster of Public Agencies online. I was told the Statement of Facts Roster of Public Agencies, also known as the Roster of Public Agencies, is not online and maintained on microfiche.

3. I asked whether Alameda Health System was on the Roster of Public Agencies, and the person I was speaking to checked on the microfiche and confirmed that Alameda Health System was on it.

4. A request for a certified copy of the Roster of Public Agencies must be in writing and typically takes ten to fourteen days for the Deparment to process the request.

5. The Department of Secretary of the State can be contacted at 916-653-6814 to get confirmation that Alameda Health System is on the Roster of Public Agencies.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 15, 2017, in Hayward, California.

Dated: May 15, 2017      NARAYAN TRAVELSTEAD P.C.

              ___[original signature]_____

              Julie :L. Cho

              Attorney for Defendant

              Alameda Health System>'

47. **On May 16, 2017, the NTPC coerced me to stipulate to continue a Case Management Conference.** Knowing that I am a Pro Se Russian Plaintiff, that I am not an

Complaint for Damages.

1    Attorney at Law, and that I didn't know American laws, on May 16, 2017 the NTPC and

2    Attorneys Mr. Travekstead and Ms. Julie Cho fraudulently obtained my signature for a

3    STIPULATED   REQUEST   FOR   CONTINUANCE   OF   CASE   MANAGEMENT

4    CONFERENCE AND CASE MANAGEMENT STATEMENT DEADLINE (LOCAL RULE

5    162(D)) **(Doc. No. 51, ER 07414 Vol. 4, pages 707-710)**, "Pursuant to Civil Local Rule 16-2(d),

6    the parties hereby stipulate and respectfully request that the Court continue the Case

7    Management Conference and Case Management Statement deadline until such date after the

8    Court's ruling on the pending motion to dismiss (ECF No. 41) and to the extent consistent with

9    the Court's rulings.

10           The parties declare in support of this request:

11           1. Defendant Alameda Health System filed its Motion to Dismiss the Amended

12   Complaint (ECF No. 41.) Plaintiff Drevaleva filed her Opposition to the Motion to Dismiss (ECF

13   No. 47).

14           2. The hearing on the Motion to Dismiss is scheduled to be heard on June 1, 2017 at 9:30

15   a.m.

16           3. The summons for other defendants in this case was filed on May 10, 2017 (ECF No.

17   48) and they have not yet responded to the Amended Complaint.

18           4. The Case Management Conference is currently scheduled for May 25, 2017 and the

19   Joint Case Management Statement is to be filed by May 18, 2017. The requested continuance is

20   made for the purpose of efficiency and judicial economy, in the event the Court grants the

21   pending motion.

22           5. Counsel for Defendant Alameda Health System and the Plaintiff, in pro per, have

23   conferred and agree to request continuance of the Case Management Conference and the Case

24   Management Conference Statement until such date after the Court's ruling on the pending motion

25   to dismiss (ECF No. 41), or any other motion to dismiss that may be filed by the other

26   defendants, and to the extent consistent with the Court's rulings.

27           IT IS SO STIPULATED AND AGREED

28           Dated: May 15, 2017

Complaint for Damages.

1

                             Tatyana Drevaleva   __[original signature]___

2

                             TATYANA EVGENIEVNA DREVALEVA

3

                             Plaintiff, PRO SE

4

5      Dated: May 15, 2017

6                              ____/s/Timothy Travelstead_____

7                              TIMOTHY C. TRAVELSTEAD

8                              JULIE CHO

9                              Attorney for Defendant ALAMEDA

10                             HEALTH SYSTEM

11                      **ATTESTATION**

12      I, Timothy Travelstead, am the ECF User whose identification and password are being

13  used to file the **STIPULATED REQUEST FOR CONTINUANCE OF CASE**

14  **MANAGEMENT CONFERENCE AND CASE MANAGEMENT STATEMENT**

15  **DEADLINE (LOCAL RULE 16-2(D)).** In compliance with Civil Local Rule 5-1 (i)(3), I

16  hereby attest that I have obtained concurrence regarding the filing of this document from the

17  above indicated signatories.

18      DATED: May 15, 2017            Respectfully submitted,

19                              By: __/s/Timothy Travelstead____

20                              TIMOTHY C. TRAVELSTEAD

21                              JULIE CHO

22                              Attorney for Defendant ALAMEDA

23                              HEALTH SYSTEM."

24

25      48. <u>My May 16, 2017 Administrative Motion (Doc. No. 54) where I asked Judge Ms.</u>

26  <u>Beeler to order the Alameda Health System to present the proof of the AHS's status as a</u>

27  <u>public entity</u>.

28

Complaint for Damages.

Next day which was May 16, 2017, I filed an "Administrative motion to request missing documents regarding the Alameda Health System's public agency's status" (Doc. No. 54), (**ER Vol. 4, pages 716-720**.)

Read **from page 717, line 25 to page 720, line 6**, "I, Tatyana Drevaleva, is a Plaintiff.

On May 16, 2017 I called the Department of Secretary of State's office at the publicly listed phone number, 916-653-6814 and asked if Alameda Health System is a public agency. I was told that yes, Alameda Health System is a public agency. I asked the date when Alameda Health System became a public agency. I was told that initially Alameda County Medical Center filed with the Secretary of State to be considered as a public agency on September 18, 1998. Alameda County Medical Center (ACMC) changed its name to Alameda Health System on September 3, 2014 – almost **one year after the date of my termination** which was September 7, 2013. So, while I was still employed by that hospital, it was officially still Alameda County Medical Center and not Alameda Health System (AHS).

I asked if Alameda Health System re-filed with the Secretary of State to be considered as a public agency. I was told that no, they **didn't** refile after they changed their name from ACMC to AHS.

Pursuant to California Government Code Section 53051, AHS was supposed to file an amendment with both the **Secretary of State** and the **clerk of each county** in which the public agency then maintains an office within 10 (ten) days after the change of the name. The information should include:

1. The full, legal name of the public agency.

2. The official mailing address of the governing body of the public agency.

3. The name and residence or business address of each member of the governing body of the public agency.

4. The name, title, and residence or business address of the chairman, president, or other presiding officer, and clerk or secretary of the governing body of such public agency.

The information submitted to the Secretary of State shall be on a form prescribed by the Secretary of State.

Complaint for Damages.

1   The person who spoke to me on the phone 916-653-6814 said that AHS had not filed
2   such statement.

3   I really didn't file an administrative claim before filing my lawsuit against AHS. Pursuant
4   to Government Code 946.4, "the failure to present a claim does not constitute a bar or defense to
5   the maintenance of a suit against such public agency if, during the 70 days immediately
6   following the accrual of the cause of action:

7   (1) No statement pertaining to the public agency is on file, or is placed on file, in the
8   Roster of Public Agencies in the office of the Secretary of State and of the county clerk of each
9   county in which the public agency then maintains an office, as required by Section 53051; or

10   (2) A statement or amended statement pertaining to the public agency is on file, or is
11   placed on file, in the Roster of Public Agencies in the office of the Secretary of State and of the
12   county clerk of each county in which the public agency then maintains an office, but the
13   information contained therein is so inaccurate or incomplete that it does not substantially
14   conform to the requirements of Section 53051."

15   I am requesting the Court to order AHS to provide the Court with the following
16   documents:

17   1) Copies of the forms prescribed by the Secretary of State on which Alameda County
18      Medical Center and Alameda Health System submitted its application to be considered as
19      public agencies in 1998 and 2014

20   2) Copies from the office of the Secretary of State regarding Alameda County Medical
21      Center and AHS:
22      1. The full, legal name of the public agency
23      2. The official mailing address of the governing body of the public agency
24      3. The name and residence or business address of each member of the governing body of
25      the public agency
26      4. The name, title, and residence or business address of the chairman, president, or other
27      presiding officer, and clerk or secretary of the governing body of such public agency.
28

Complaint for Damages.

I want to see this information related to three separate dates: a) September 18, 1998 when ACMC filed with the Secretary of State to be considered as a public agency, b) June 22, 2004 after signing the Assembly Bill No. 2630

> http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=200320040AB2630

and

> c) September 3, 2014 after ACMC changed its name to AHS.

3) Also, I want to see the same copies of filings with the clerk of Alameda County for the same three dates along with copies of applications.

Pursuant to Government Code 946.4(b), "**the burden of proof is on the public agency**." Therefore, AHS must obtain all these copies at its own expense and present them to the Court. All these copies must be obtained from the Department of the Secretary of State and the Clerk's office of Alameda County. All these copies must be certified.

Without these copies, the Court can't make a correct decision about my case.

I declare under the penalty of perjury that the foregoing is true and correct."

49. Please, notice that this Administrative Motion was critical in determining whether the Alameda Health System was a Public Agency pursuant to the Government Code Sections 53050 and 53051.

50. However, on June 07, 2017, Judge Beeler fraudulently granted the NTPC's Motion to Dismiss my Amended Complaint and denied my Administrative Motion (Doc. No. 58), (**ER Vol. 4, pages 725-737.**)

51. Read **page 732, lines 8-20**, "**1.4 The Labor–Management Relations Act (LMRA) and National Labor Relations Act (NLRA) Do Not Govern Public Employers**

It is beyond serious dispute that AHS is a public agency. Its genesis statute declares it to be just that. See **Cal. Health & Safety Code § 101850(a)(2(C)**.[24] Ms. Drevaleva charges AHS with denying her "affiliation to the Union" and thus violating **29 U.S.C. § 157 of the NLRA**.[25] Neither the NLRA nor the LMRA applies to AHS. Governmental entities are excepted from the NLRA. E.g., *Saipan Hotel Corp. v. N.L.R.B.*, 114 F.3d 994, 997 (9th Cir. 1997) (citing **29 U.S.C.**

Complaint for Damages.

§ 152(2)). "The LMRA," for its part, "is the comprehensive federal labor law, which, by its terms, is applicable only to labor relations in the private sector." *Santa Clara Valley Transp. Auth. v. Rea*, 140 Cal. App. 4th 1303, 1307 (2006). "[P]ublic entities are not 'employers' within the meaning of [this] federal law." *Santa Clara Valley Transp. Auth. v. Rea*, 140 Cal. App. 4th 1303, 1308 (2006) (citing 29 U.S.C.§ 152(2)). These statutes do not provide the plaintiff with federal-question jurisdiction.

[24] Strictly speaking, the statute uses AHS's previous name: the Alameda County Medical Center.

[25] Am. Compl. – ECF No. 40 at 3."

52. Read **page 737, lines 8-9,**

"The court denies the plaintiff's "administrative motion to request missing documents." See (ECF No. 54.)"

53. Also, on June 07, 2017 Judge Beeler fraudulently granted Mr. Travelstead's (as opposed to Defendant the Alameda Health System's) Motion to Dismiss my Amended Complaint as follows, see (**ER 07414 Vol. 4, from page 730, line 1 to page 732, line 7**).

"**ANALYSIS**

**1. Federal-Question Jurisdiction**

**1.1 General Observations**

The plaintiff has not shown that this court can exercise federal-question jurisdiction (under 28 U.S.C. § 1331) over the claims that she brings against AHS.

The plaintiff's opposition brief cites a host of federal statutes. But these mostly are inapplicable on their face. The plaintiff cites laws dealing with jurisdiction over voting-rights cases (28 U.S.C. § 1343(a)(4)), or describing a general limitation on the federal courts' jurisdiction to enter injunctions in labor disputes (29 U.S.C. § 101), and so on. Suffice it to say that the vast majority of these laws simply do not apply here. Moreover, the plaintiff has not

Complaint for Damages.

shown how her allegations trigger any of the cited statutes. The cited laws thus provide no basis for federal-question jurisdiction in this case.

Even allowing for the latitude that is granted pro se litigants, a plaintiff cannot simply list a welter of federal statutes (see ECF No. 47 at 5) and then flatly claim that these —are applicable‖ to establish federal-question jurisdiction.

The plaintiff's complaint is 37 pages long — and is attached to 315 pages of exhibits. It is not the court's job to search this large filing to find the viable claim or claims that may trigger federal-question jurisdiction. It is the plaintiff's burden to usefully show the court how allegations in her complaint trigger jurisdiction under any given statute. She generally has not done that. The court limits its discussion here to those parts of the plaintiff's complaint and brief that are minimally tractable: which is to say, to those allegations, laws, and arguments that suggest possible federal-question jurisdiction.

### 1.2 Title VII – Employment Discrimination

This appears to be the only new federal statute that the plaintiff cites. It is unclear, though, whether she even means to assert such a claim. Her complaint says that she —possibly‖ brings a Title VII claim.[17] Her opposition brief likewise calls this a "possibl[e]" claim.[18] In the same equivocal vein, the plaintiff says that her grievance with AHS was not "primar[il]y" about national-origin discrimination.[19] Assume that the plaintiff did mean to advance a Title VII claim. Having been pointed to the basic requisites of such a claim, the plaintiff now concedes that she cannot state a prima facie claim under the governing test of *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973).[20] This "possible" claim thus does not secure federal-question jurisdiction.

[17] Am. Compl. – ECF No. 40 at 2.

[18] ECF No. 47 at 28.

[19] *Id*. at 26.

[20] *Id*.

### 1.3 Fair Labor Standards Act (FLSA)

Complaint for Damages.

The plaintiff fleetingly invokes the federal Fair Labor Standards Act (FLSA), specifically citing 29 U.S.C. §§ 207, 215–16. There are numerous fatal deficiencies in any claim that she might bring under the FLSA laws that she cites. For example, her factual allegations show that she has no viable FLSA overtime-compensation claim. The overtime statute that she cites applies when an employee works more than 40 hours in a week. 29 U.S.C. § 207(a)(1). Yet the plaintiff alleges that she worked 36-hour weeks.[21] Furthermore, under her own factual narrative, before being fired the plaintiff did not file a —complaint‖ or institute a —proceeding‖ that would trigger 29 U.S.C. § 215. Nor does the complaint suggest a viable claim under FLSA regulation 29 C.F.R. § 785.18.[22] That regulation notes that short breaks are —common in industry‖ and —must be counted as hours worked‖ without being —offset against other working time.‖ 29 C.F.R. § 785.18. The regulation does not compel employers to provide such breaks. And the plaintiff herself alleges that an employment agreement, not a federal law, obligated AHS to provide such breaks. If Ms. Drevaleva has a federal claim for breach of an employment contract, then it must be one of two things. If her contract is an individual one, between her and AHS, then her claim would be under state law for breach of contract. If she claims that AHS was in breach of a collective-bargaining agreement, then her claim might be under § 301(a) of the Labor–Management Relations Act (LMRA) — except that, as discussed below, the LMRA does not apply to public entities such as AHS. In any case, she has no obvious claim under 29 C.F.R. 785.18. Finally, holding other problems aside, the FLSA claims that might be relevant here are generally subject to a two- or three-year time bar (29 U.S.C. § 255) that the plaintiff's December 2016 initial complaint failed to meet.[23]

[21] Am. Compl. – ECF No. 40 at 5.

[22] See *id.* at 7.

[23] *See* Order – ECF No. 36 at 4. "

Please, read Judge Beeler's June 07, 2017 Order (**ER 07414 Vol. 4, from page 732, line 22 to page 733, line 12**), "**1.5 Occupational Safety and Health Act (OSHA)**

Complaint for Damages.

The plaintiff's discussion under the federal Occupational Safety and Health Act (OSHA) is without merit. See ECF No. 47 at 9–10. Nothing in the complaint alleges an OSHA violation. No factual allegation suggests that this is an occupational-safety case. And none of the specific laws that the plaintiff cites — 29 U.S.C. §§ 651, 654, 662; 29 C.F.R. § 1977.11 — gives this court federal-question jurisdiction through OSHA. For example, section 662 gives the federal district courts over injunctive petitions brought by the Secretary of Labor. Section 651 is a Congressional statement of findings and of public policy in the field of —safe and healthful working conditions. 29 U.S.C. § 651(b). It is not a grant of jurisdiction, does not create a private right of action, and does not address anything that is going on in the plaintiff's complaint. The regulation that the plaintiff repeatedly cites (29 C.F.R. § 1977.11) relates to retaliation for giving —testimony. Nothing in the complaint suggests that AHS retaliated against the plaintiff for giving testimony. Furthermore, any complaint under § 1977.11 must be made within 30 days of the violation — a time bar that the plaintiff's own allegations show that she cannot meet. There is no federal-question jurisdiction in this case through OSHA."

54. On July 07, 2017, Judge Beeler fraudulently and criminally entered a Judgment as follows, see (**ER 07414 Vol. 5, page 847**),

"TATYANA EVGENIEVNA DREVALEVA,

Plaintiff,

v.

ALAMEDA HEALTH SYSTEM, et al.,

Defendants.

**JUDGMENT**

On July 7, 2017, the court granted the remaining defendants' motion to dismiss. (ECF No. 76.) Previous orders had dismissed all other claims and defendants with prejudice. (ECF Nos. 36, 58.) Under Federal Rule of Civil Procedure 58. the court hereby ENTERS judgment in

Complaint for Damages.

1    favor of all defendants and against the plaintiff. The court directs the Clerk of Court to close the

2    file in this matter.

3         **IT IS SO ORDERED**.

4         Dated: July 7, 2017

5

6         ___[original signature]___

7         LAUREL BEELER

8         United States Magistrate Judge."

9

10        55. On July 10, 2017, I filed a Notice of Appeal No. 17-16382 at the 9th Circuit (**ER**

11   **07414 Vol. 5, page 849.**)

12        56. On February 28, 2018, I filed an Opening Brief, see (**ER 17-16382, Vol. 1, pages**

13   **931-1011**), "Opening Brief (Form Brief).

14   **1.  Jurisdiction.**

15   a. Timeliness of Appeal:

16   (i) Date of entry of judgment or order of originating court:

17        1)  The order granting 41 Motion to Dismiss; denying 54 Administrative Motion was

18        entered 06/07/2017 (ECF No. 58)

19        2)  The order granting 63 Motion to Dismiss. The plaintiff's claims against the individual

20        DLSE defendants are dismissed with prejudice. This leaves the plaintiff without a viable

21        claim in this court was entered 07/07/2017 (ECF No. 76)

22        3)  The judgment was entered 07/07/2017 (ECF No. 77)

23   (ii) Date of service of any motion made after judgment (other than for fees and costs):

24        1)  07/13/2017 Motion for Sanctions (ECF No. 80)

25   (iii) Date of entry of order deciding motion:

26        1) 07/14/2017 Order terminating 80 Motion for Sanctions (ECF No. 81). The plaintiff did

27        not plead any viable claims. and the court thus dismissed the lawsuit. entered judgment

28        for the defendants. and closed the case. The motion for sanctions is not viable for the

Complaint for Damages.

1    same reasons that resulted in the dismissal of the claims. The court denies the pending

2    motion and vacates the hearing on it.

3        2) 07/24/2017 ORDER. The court revokes the plaintiff's in forma pauperis status for

4    purposes of appeal (ECF No. 82)

5    (iv) Date notice of appeal filed: Notice of Appeal, entered 07/10/2017 (ECF No. 78).

6    **2.  What are the facts of your case?**

7    1)  I was retaliated and unlawfully terminated from AHS for asking questions about unpaid

8    overtime and shift differentials, denied affiliation to the Union, not received 10 and 15

9    minute breaks, and for asking to transfer me to a full time position while actually working

10   full time. In June-July 2013, I had multiple oral conversations with Manager Mr. Clerve. On

11   approximately August 25th, 2013, I had an oral conversation with Director of Step Down

12   Unit Mr. Harding. On September 05th, 2013, I send a letter to Mr. Harding where I listed the

13   mentioned above issues. On September 07th, 2013, I was fired.

14   2)  I timely filed a wage claim, a retaliation and unlawful termination, and an occupational safety

15   complaints with DIR.

16   3)  My occupational safety complaint was denied because "the previous [internal] policy [of

17   AHS regarding 10 minute breaks every hour for employees who constantly observe video

18   display screens] was not being followed resulting in an assessment and change in policy prior

19   to [DIR's] inquiry" and because "there is no standard in Title 8 California Code of

20   Regulations requiring additional breaks for ergonomic purposes" (signature of Ms.

21   Fabricante).

22   4)  My wage claim was denied because "The Division does not have jurisdiction over claims for

23   overtime, rest period premiums, differential pay, or waiting time penalties for county

24   employees" (signature of Mr. Santos).

25   5)  On June 16, 2014, I got a letter from Deputy Ms. Daly where she wrote, "AHS admitted

26   firing you but blamed its decision on your failure to meet "acceptable employment

27   standards." Specifically, your <u>negligence</u> allegedly seriously harmed a patient. Moreover, it

28   asserted <u>you already knew you faced termination when you emailed your September 5, 2013</u>

Complaint for Damages.

<u>complaints</u>. Therefore your emailed communication could not have triggered the termination. Finally, it explained why all your complaints lacked merit….. If you feel you have sufficient evidence to show AHS reasons are pretextual, please reply by July 18, 2014. In your response include supporting documents and a witness list. Your witness list needs to provide names, addresses, and telephone numbers or emails. Please add a short statement about what the witness will say. Finally prepare a separate document listing the adverse actions taken against you and place the events in date order."

6) Ms. Daly didn't specify what patient suffered from my alleged negligence and how. I assumed it was Patient X. I responded on June 18th, 2014. I explained that I showed Patient X's EKG to Medical Doctor Mr. Sina Rachmani who said that my EKG reading had been correct. After Patient X's death, I reported this incident to my Supervisor Mr. Harding (on the same morning) and at three Root Cause Analysis meetings. After the patient's death, I was allowed to perform my duties as a Monitor Technician, I got a good Letter of Reference from an Assistant Manager, I didn't get a verbal warning, I was not written up, and my professional certificate was not revoked. During my termination on September 07, 2013, Mr. Harding didn't say that he was firing me for negligence towards the patient. The word "negligence" was not written in my Termination Letter. After the termination, I was receiving Unemployment Insurance benefits, and I was hired a few times which would have never happened if I exhibited negligence towards the patient. I listed witnesses as Ms. Daly required – Mr. Rachmani, Ms. Lawson (my former co-worker), and other people.

7) On August 06, 2016, I submitted the same letter to Ms. Daly.

8) On August 25, 2016, Ms. Daly attempted to force me to withdraw my complaint. She sent me a case withdrawal form which I refused to sign.

9) I requested the Labor Commissioner to assign another Deputy to investigate my case. My request was denied.

10) In December 2016, I communicated with Supervisor Ms. Healy. On December 12, 2016, I asked her to give me a time frame for investigating my case because I didn't hear from Ms. Daly.

Complaint for Damages.

11) On December 19, 2016, Ms. Healy said that I had missed a September 13, 2016, appointment regarding the investigation of my case. To the best of my knowledge, I didn't have this appointment. I requested Ms. Healy to give me the confirmation about the existence of that appointment. I never got any confirmation.

12) In her December 19, 2016 email, Ms. Healy wrote, "However, you failed to connect your employer's knowledge of your protected activities with the adverse actions it took against you. Instead, the evidence established your employer's legitimate, non-retaliatory reasons for terminating you. Accordingly, there is insufficient evidence to establish retaliation; therefore, this case will be closed."

13) In her December 19, 2016, email, Ms. Healy advised me to appeal with Director of DIR Ms. Baker.

14) In my December 20, 2016 and December 29, 2016 emails, I provided Ms. Healy with my home postal address in Mountain View, CA. I asked to send the Determination Letter to this address.

15) Also, I asked Ms. Healy to explain to me why the evidence that I provided regarding being retaliated and unlawfully terminated was insufficient (my emails to Ms. Healy dated December 20, 2016 and December 29, 2016). I never got any answer.

16) Because I never got the Determination Letter in mail, I lost an opportunity to appeal with Director of DIR even though I had prepared an appeal in my computer.

17) I filed a Complaint in a District Court against AHS and DIR on December 29, 2016.

18) I had an *in forma pauperis* status (order dated 01/06/2017, ECF No. 4). Therefore, the U.S. Marshals service delivered my original Complaint and a Summons to AHS and DIR.

19) AHS filed a Motion to Dismiss my Complaint alleging lack of federal question jurisdiction and failure to state the claim upon which relief could be granted (ECF No. 19).

20) DIR filed a Motion to Dismiss alleging lack of subject-matter jurisdiction, 11th Amendment immunity, and 12(b)(6) (ECF No. 16).

21) I saw DIR's December 29, 2016 Determination Letter only during my litigation (when I read DIR's Motion to Dismiss my original Complaint). The letter said, "[AHS] produced a

Complaint for Damages.

1   September 4, 2013 email from your direct supervisor Dana Littlepage, RN announcing you

2   would be let go from probation and seeking Human Resource's advice on next steps. This

3   predated your September 5, 2013 letter to Harding."

4   22) Also, the letter said, "On September 7, 2013, Alameda Health dismissed you for

5   "discrepancies between acceptable employment standards and those you exhibited during her

6   employment with us." The evidence established a patient died during your employment. You

7   denied any negligence and noted Alameda Health kept you working as a monitor technician

8   during the ensuing investigation, failed to stop your unemployment, and never reported you

9   to state licensing. While these arguments are compelling, whether or not you performed

10  negligently or others were responsible are issues well outside the Labor Commissioner's

11  jurisdiction" (signature of Mr. Rood).

12  23) Throughout the whole litigation in a District Court, neither AHS nor DIR said in their

13  Motions to Dismiss or Replies that I had performed negligence towards the patient, and they

14  never provided the Court with any evidence of the negligence.

15  24) I learned about DIR's immunity under the 11th Amendment to the Constitution, I filed a

16  Request about the permission to submit additional information in my opposition to Motion to

17  Dismiss filed by DIR (ECF No. 26).

18  25) On 03/21/2017, Judge Beeler granted both Motions to Dismiss for lack of Federal question

19  jurisdiction with leave to amend (ECF No. 36). She denied my Request (ECF No. 26) as

20  moot.

21  26) In her 03/21/2017 Order (ECF No. 36), regardless both AHS and DIR never said to the Court

22  that I had performed negligence towards the patient and never provided any evidence

23  regarding the negligence, Judge Beeler said that I had performed negligence towards the

24  patient. Read page 3, lines 8-11, "As to Ms. Drevaleva's claims against her former employer

25  Alameda Health, she mentions wage-and-hours violations and other labor complaints, her

26  discharge for negligence (surrounding the care of a patient who died), and her complaints

27  about both, but her claim for relief is based only on her allegedly retaliatory discharge in

28  violation of California law."

Complaint for Damages.

27) I filed my Amended Complaint on 04/10/2017 from New Mexico because I had gotten a full time job in a Federal hospital.

28) Because DIR was immune from a suit in a District Court under the 11th Amendment, I excluded DIR from a list of defendants.

29) In my Amended Complaint, I named Defendants AHS and four officers of DIR (Ms. Daly, Ms. Healy, Mr. Santos, and Mr. Rood) whom I was suing in their personal capacity.

30) I claimed both Federal question and Diversity of Citizenship jurisdiction in my Amended Complaint. Also, I claimed the State of California issues.

31) On 04/24/2017, AHS filed a Motion to Dismiss my Amended Complaint (ECF No. 41) where it denied both Federal question and Diversity of Citizenship jurisdiction. Also, AHS claimed its public agency's status. AHS claimed that its name is on the Roster of public agencies of the State of California Secretary of State. Also, AHS said that I hadn't met the Government claim presentation requirements pursuant to Government Code 946.4 because I didn't obtain a right to sue letter. Also, AHS claimed that it was a public agency under Cal. Health and Safety Code Section 101850. Also, AHS said that, because it is a public agency, it is excepted from the NLRA, and it is excepted from paying overtime premiums. I timely opposed (ECF No. 47).

32) On May 16, 2017, I called the Department of Secretary of State's office at the publicly listed phone number, 916-653-6814. I found out that initially Alameda County Medical Center filed with the Secretary of State to be considered as a public agency on September 18, 1998. ACMC changed its name to AHS on September 3, 2014 – almost one year after the date of my termination which was September 7, 2013. So, during my employment from 04/01/2013 to 09/07/2013, the hospital used the name Alameda Health System but it was not officially considered as a public agency. I learned that AHS didn't re-file with the Secretary of State to be considered as a public agency after they changed their name from ACMC to AHS.

33) On 05/16/2017, I filed an Administrative Motion (ECF No. 54) to request documents regarding AHS's public agency status. Pursuant to Gov. Code 946.4(b), "the burden of proof is on the public agency." According to Gov. Code Section 53051, AHS was supposed to file

Complaint for Damages.

an amendment with both the Secretary of State and the clerk of each county in which the public agency then maintains an office within 10 (ten) days after the change of the name. In fact, AHS didn't file such a statement. Because of that, I was not supposed to file an administrative claim before filing a lawsuit against AHS (Gov. Code 946.4). Judge Beeler denied my Motion (ECF No. 58).

34) On May 18, 2017, I left to Russia to solve some of my medical issues.

35) On 06/07/2017 (ECF No. 58), Judge Beeler granted AHS's Motion to Dismiss and denied my Administrative Motion. In her Order, Judge Beeler claimed that the District Court didn't have both Federal question and Diversity of Citizenship jurisdiction over AHS (applied the time of filing rule regarding AHS). However, Judge Beeler confirmed the Diversity of Citizenship jurisdiction over 4 officers of DIR/DLSE. Also, Judge Beeler said, "It is beyond serious dispute that AHS is a public agency" (page 7, line 10) Judge Beeler denied Federal question jurisdiction over AHS including the 14th Amendment to the Constitution, FLSA, NLRA, OSHA, Title VII Employment discrimination (because I was unable to satisfy the 4th requirement of the Prima Facie case), 28 U.S.C. § 1343, 29 U.S.C. § 101, and all State law claims (overtime payments, etc.) This Order also asked 4 officers of DIR to sign a Consent/Declination for Magistrate jurisdiction within 14 days.

36) The Summons was issued as to Ms. Daly. Ms. Healy, Mr. Santos, and Mr. Rood (ECF No. 48, date 05/10/2017).

37) On 05/31/2017. Mr. Santos was served with my Amended Complaint and a Summons.

38) Ms. Daly, Ms. Healy, and Mr. Rood were never served with my Amended Complaint and a Summons. Talking on the phone with the U.S. Marshals Service in the beginning of June 2017. I learned that DIR actively opposed the attempts of the U.S. Marshal to serve Ms. Daly, Ms. Healy, and Mr. Rood with my Amended Complaint and a Summons. Despite the U.S. Marshals' request to provide the addresses of the mentioned above individuals. DIR never disclosed these addresses. So, the U.S. Marshals Service returned the Summons unexecuted to the District Court.

Complaint for Damages.

39) I never requested a waiver of service of Summons, and all 4 officers of DIR/DLSE never signed the waiver.

40) On the same day (06/07/2017) when Judge Beeler entered her ECF No. 58 Order, Attorney of DIR Ms. Ng entered a Status Report (ECF No. 59) where she confirmed the Magistrate jurisdiction for officers of DIR. This was against Local Rule 73-1(a). In Ms. Ng's Status Report, there were no signatures of Ms. Daly, Ms. Healy, Mr. Rod, and Mr. Santos. There was only Ms. Ng's signature in this document. It was not an official Consent/Declination form approved by the Court.

41) Regardless, Judge Beeler entered an Order confirming the Magistrate Judge jurisdiction for Ms. Daly, Ms. Healy, Mr. Rod, and Mr. Santos (ECF No. 60; date 06/11/2017). I objected.

42) Attorney of DIR submitted an official Consent/Declination form only on 07/03/2017 (ECF No. 71). Again, this form contained only Ms. Ng's signature and didn't contain signatures of Ms. Healy, Ms. Daly, Mr. Roos, and Mr. Santos. Also, this Consent/Declination form was filed later than 14 days from Judge Beeler's Order dated 06/07/2017 (ECF No. 58). Also, this Consent was against Judge Beeler's Standing order.

43) On 06/20/2017, I submitted a request to Judge Beeler to order the U.S. Marshals to deliver an Amended Complaint and a Summons to Ms. Daly, Ms. Healy, and Mr. Rood. I provided the Court with physical addresses of these three officers (ECF No. 64). Also, I included a Right to Sue DIR and its officers Letter. Judge Beeler never responded.

44) On 06/12/2017, I filed a Motion for Leave to file a Motion for Reconsideration (ECF No. 61). I wanted to demonstrate that the District Court has both Federal question and Diversity of Citizenship jurisdiction over AHS.

45) On 06/12/2017, I filed a Motion for Recusal (ECF No. 62) and addressed it to Hon. Judge Hamilton (Chief Judge). I asked to change the Judge because Judge Beeler said that I had performed negligence towards the patient, and this statement was not supported by claims and evidence of both AHS and DIR. It was clear that Judge Beeler was prejudiced towards me, and she was unable to process my case.

Complaint for Damages.

46) On 06/21/2017 (ECF No. 65), Judge Beeler denied both Motions (ECF No. 61 and 62) thus depriving me a right to file a Motion to reconsider. Even though my Motion for Recusal was addressed to Judge Hamilton, Judge Beeler signed this order herself.

47) Despite only Mr. Santos was served with a Summons on 05/31/2017, Ms. Ng filed a Motion to Dismiss on behalf of all four Defendants on 06/15/2017 (ECF No. 63).

48) In ECF No. 63, Ms. Ng didn't say that I had performed negligence towards the patient. She didn't provide the Court with any evidence of the alleged negligence. Ms. Ng did nothing to explain to the Court why officers of DIR said that I had performed negligence. She didn't provide the Court with any protocols of DIR's investigation of my claim. Therefore, Ms. Ng didn't demonstrate that actions of officers of DIR were discretionary.

49) Despite there was no evidence regarding discretionary acts of officers of DIR, Ms. Ng claimed that the actions of these officers were discretionary and claimed immunity under Gov. Code Section 820.2 and Cal. Civil Code section 47.

50) This Motion to Dismiss (ECF No. 63) was filed one day later the deadline for responding to Amended Complaints that was set by FRCP Rule 15(a)(3), "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Because Mr. Santos was served with a Summons on May 31, 2017, the deadline for filing a response was June 14, 2017.

51) On 06/28/2017, I filed a Motion for Entry of Default as to Mr. Santos (ECF No. 68). I said that Mr. Santos was neither minor, nor incompetent, he didn't serve in the military, the deadline was not a weekend and not a Federal holiday, and Mr. Santos didn't request any extension of the deadline. Mr. Santos had no justifiable reason to miss the deadline because he was represented by an Attorney.

52) On 06/30/2017, the Clerk declined the default without any explanation of the reason (ECF No. 69).

Complaint for Damages.

53) On 07/03/2017, I submitted the proof of service of Summons to Mr. Santos (ECF No. 74) and demonstrated that Ms. Daly, Ms. Healy, and Mr. Rood were never served with the Summons (ECF No. 73).

54) On 07/04/2017, I filed the second Motion for Entry of Default as to Mr. Santos (ECF No. 72) to Judge Beeler. The Judge never responded.

55) I timely opposed Ms. Ng's Motion to Dismiss (date 06/29/2017; ECF No. 66), and Ms. Ng replied (date 07/06/2017; ECF No. 75).

56) Next day, on 07/07/2017, Judge Beeler entered an Order granting Ms. Ng's Motion to Dismiss, saying that actions of officers were discretionary, and claiming immunity of officers under Gov. Code Section 820.2 and Cal. Civil Code Section 47 (ECF No. 76).

57) On 07/07/2017, Judge Beeler entered a Judgment against the Plaintiff and in favor of all Defendants (ECF No. 77).

58) On 07/10/2017, I filed a Notice of Appeal (ECF No. 78). I also filed a Motion for Leave to Appeal *in forma pauperis* because at that time I was already fired from the Raymond G. Murphy VAMC, I was in Russia, and I was unemployed (ECF No. 79).

59) On 07/13/2017, I filed a Motion for Sanctions against Ms. Daly, Ms. Healy, and Mr. Rood (ECF No. 80). I said that, despite my numerous requests, these officers never explained anything about the alleged negligence towards the patient and never provided the Court with any evidence. I requested sanctions such as reimbursing me with the costs of the lawsuit and paying for my future attorney's fees during my appeal in the Court of Appeals for the 9th Circuit.

60) On 07/14/2017, Judge Beeler denied my Motion for Sanctions because I "did not plead any viable claims" (ECF No. 81).

61) On 07/24/2017, Judge Beeler named my appeal frivolous and revoked my *in forma pauperis* status even though she knew that at that time I lost my job and didn't have money (ECF No. 82). Because of that, I lost an opportunity to file a Motion to Vacate the Judgment and present new pieces of evidence to the District Court such as the proof that during my

Complaint for Damages.

employment AHS was not a public agency (I obtained this piece of evidence only after the Judgment).

62) I returned to the USA from Russia in August 2017.

63) The Court of Appeals reinstated my *in forma pauperis* status and pushed my appeal forward.

64) On September 20, 2017, I filed a Motion to Take a Judicial Notice where I pointed out that 1) both AHS and DIR/DLSE and its officers never said in their correspondence in a District Court that I had committed negligence towards the patient, 2) during my employment, Alameda Health System didn't have a public agency's status, and 3) I was in a lot of debt because of the actions of both AHS and DIR/DLSE and its officers.

65) AHS timely opposed to my Motion. It claimed that, despite during my employment it didn't officially have a public agency's status, it acted as a public agency. Also, despite the fact that AHS didn't re-file with the Office of the Secretary of State regarding its public agency's status after the change of the name, AHS demanded a right to sue letter.

66) Ms. Ng opposed to the Motion 4 months and 11 days later. In the Opposition, she didn't say again anything regarding the alleged negligence towards the patient. She attempted to switch the Court of Appeals' attention to unimportant issues such as my financial situation.

67) I timely replied to both Oppositions. I might have made a mistake regarding AHS's public agency/entity's status. I assumed that the "public entity" does not include the "public agency." Even if I made this mistake, it was sincere, and it was not any attempt to misrepresent the facts or mislead the Court.

68) On November 08, 2017, I filed a lawsuit against DIR as a public entity in the Superior Court of Alameda County (case number RG17881790). I claimed two causes of action: 1) professional negligence, 2) libel. I timely opposed the Demurrer and the Motion to Strike. The hearing date for the Demurrer, the Motion to Strike, and the Case Management Conference is on April 10, 2018.

**3. What did you ask the originating court to do (for example, award damages, give injunctive relief, etc.)?**

a) Alameda Health System – ECF No. 40, pages 33-35.

Complaint for Damages.

1) To reinstate me back to work

2) To pay me all not received wages and benefits from September 7, 2013 to the moment when a Court will make a decision about my case (Labor Code 98.6 (b)(1))

3) To pay a penalty for delaying my last pay check for almost one month (Cal. Lab. Code §§ 201, 202, and 227.3)

4) To pay me additionally 10 thousand U.S. dollars as a penalty for discriminating and unlawfully terminating me (Labor Code 98.6 (3))

5) To grant me with a compensation for exemplary damages as much as 5 (five) million U.S. dollars (California Civil Code 3294(a)).

b) Officers of DIR – ECF No. 40, page 35. Officials may be sued in their personal capacities regardless of the type of relief sought. I asked the Court to grant me with monetary compensations from each official: Ms. Daly - $200 thousand U.S. dollars, Ms. Healy - $200 thousand U.S. dollars, Mr. Santos - $200 thousand U.S. dollars and Mr. Rood - $200 thousand U.S. dollars.

**4. State the claim or claims you raised at the originating court.**

Part A. AHS (ECF No. 47, pages 32-33).

d) <u>Protection of my civil rights</u> - U.S. Constitution, Art III, Sec 2; 5th and 14th Amendments to the Constitution, 28 U.S. Code § 1343, 28 U.S. Code § 1357

e) <u>Labor dispute</u> - 29 U.S. Code § 101

f) <u>Not received 10 minute breaks</u> - OSHA - 29 U.S. Code § 662, 29 U.S.C. § 651, 29 U.S. Code § 654

g) <u>Not received 10 minute breaks</u> - Occupational Safety Act - 29 CFR Part 1977, 29 CFR Part 1977.12(a)

h) <u>Retaliation and unlawful termination for asking questions about not received 10 minute breaks</u> - 29 CFR 1977.11 and T8 CCR 3203(a) (California Code of Regulations)

i) <u>Not received 15 minute breaks</u> - 29 CFR 785.15, 29 CFR 785.18, Labor Code Section 226.7

j) (possibly) <u>retaliation against my Russian origin</u> - Title VII of the Civil Rights Act of 1964

Complaint for Damages.

k) Denial of my affiliation to the Union - 29 U.S. Code § 157, 29 U.S. Code § 158(a)(2) and § 158(a)(3) and § 158(c)  - Unfair labor practices; Chapter 10 of MMBA 3500 and 3502 (in case if AHS were considered a public entity), California Civil Code 3294 (fraud), California Code of Civil Procedure § 338(d) (fraud)

l) Retaliation and unlawful termination because I asked questions regarding affiliation to the Union, not received breaks, not received overtime, and asked to transfer me to a full time employment - 42 U.S.C. § 2000e-3(a), 29 U.S. Code § 215, 29 U.S. Code § 216 – AHS can meet criminal charges up to imprisonment; Chapter 10 of MMBA 3506 and 3505.5 (in case if AHS were considered a public entity), Labor Code sections 98.6 and 98.6 (3), California Civil Code 3294 (oppression); California Code of Civil Procedure § 338(d) (fraud) firing me in order to avoid transferring me to a full-time position

m) Not received overtime payment - 29 U.S. Code § 207(e)(5), 29 U.S. Code § 207(j), 29 U.S. Code § 207(o) (in case if AHS were considered a public entity); IWC 4-2001  3(A)(1)(a) and IWC 4-2001  3(B)(1); Chapter 10 of MMBA 3505 (in case if AHS were considered a public entity)

n) Not received shift differentials - 29 U.S. Code § 207(e)(6), 29 U.S. Code § 207(j), Chapter 10 of MMBA 3505 (in case if AHS were considered a public entity), Labor Code Section 1194, Labor Code Section 204, California Civil Code 3294 (fraud), California Code of Civil Procedure § 338(d) (fraud)

o) Failure to pay me my final paycheck on the day of termination - Cal. Lab. Code §§ 201, 202, 203(a) and 227.3

p) Libel - Code of Civil Procedure, 340 (c) – AHS claimed that not received 15 minute breaks were already compensated; that AHS is a public employer and therefore is an exempt from 29 U.S. Code § 157, 29 U.S. Code § 158(a)(2) and § 158(a)(3) and § 158(c)  - Unfair labor practices: AHS lied to DIR that I expressed negligence to the patient; AHS lied that I can be transferred to a full time position only when it is available and I must be Union represented; AHS lied that I didn't receive my overtime payments because AHS was a public employer; AHS lied that 10 minute breaks were cancelled since 2011; AHS lied that I would be paid for

Complaint for Damages.

2 hours of RCA meeting; AHS lied that I had to be represented by the Union in order to receive shift differentials

Part B. Officers of DIR – ECF No. 66.

a) Violation of my civil rights under both the 5th and 14th Amendments to the Constitution

b) Professional negligence – California Civil Code Section 1714 (a)

c) Libel/Slander – Cal. Civil Code § 44. 45. 46, Cal. CCP §340 (c)

d) Fraud – Cal. Civil Code §3294

e) Malice – Cal. Civil Code §3294

f) Oppression - Cal. Civil Code §3294.

**5.  What issues are you raising on appeal? What do you think the originating court did wrong?**

**Part A. AHS**.

**The public agency/entity status of Alameda Health System.**

a) Alameda County Medical Center obtained its <u>public agency's</u> status on September 18th, 1998 (see Attachment 1)

b) ACMC changed its name to AHS at least in March 2013 – prior to the start date of my employment which was April 1st, 2013. Sources:

1) article in "The Mercury News" dated March 09th, 2013 <u>https://www.mercurynews.com/2013/03/09/acmc-changes-name-to-alameda-health-system-as-affordable-care-act-reform-nears/</u> ,

2) article in the "Hospital Council of the Northern and Central California" dated March 10th, 2013   <u>https://www.hospitalcouncil.org/article/acmc-changes-name-alameda-health-system-affordable-care-act-reform-nears</u> )

c) I was hired by the hospital which used the name Alameda Health System (see Attachment 2) starting April 1, 2013

d) During my employment 04/01/2013 – 09/07/2013, the hospital used the name AHS. See attachments to my Amended Complaint – a Letter of Reference from AHS and a Termination Letter

Complaint for Damages.

e)  ACMC filed with the office of the Secretary of State to change its name to AHS on 09/03/2014 – almost in one year after my termination (Attachment 1)

f)  In 2014, the legal name of the public agency was ACMC

g)  The legal name of the public agency became AHS only on August 3rd, 2015

h)  AHS did not re-file with the office of the Secretary of State to be considered as a public agency after filing to change its name from ACMC to AHS

i)  During my employment with them 04/01/2013 – 09/07/2013, the employer used the name Alameda Health System and was considered as a private employer

j)  Before filing a lawsuit against AHS, I am not required to obtain a right to sue letter because 1) during my employment AHS was not a public agency, 2) after filing with the Office of the Secretary of State to change its name from ACMC to AHS, my employer did not re-file to be considered as a public agency.

k)  Read my detailed explanation about Gov. Code Section 53051 and Gov. Code Section 946.4 in ECF No. 54. AHS didn't meet the requirements of these both Sections.

l)  In her order dated 06/07/2018 (ECF No. 58), Judge Beeler wrote, "It is beyond serious dispute that AHS is a public agency. Its genesis statute declares it to be just that. See Cal. Health & Safety Code § 101850(a)(2)(C)." This statement is completely incorrect. While Judge Beeler signed this order (June 7th, 2017), Cal. Health & Safety Code § 101850 described ACMC, not AHS. The legislature changed Cal. Health & Safety Code § 101850 only on September 27th, 2017. The name of the employer was changed to AHS. See Assembly Bill No.1538, Chapter 236, approved by Governor September 23, 2017, filed with Secretary of State September 23, 2017.

Source:

https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180AB1538

m)  Also, Cal. Health & Safety Code § 101850(a)(2)(C) doesn't say that ACMC or AHS is a public agency itself. This law distinguishes between ACMC (or AHS) and a separate hospital authority. The hospital authority is a public agency which supervises and manages ACMC

Complaint for Damages.

(or AHS). Read my detailed explanations in ECF No. 47, page 20, lines 27-28, and page 21, lines 1-17.

**Federal question jurisdiction over AHS.**

a) Read my detailed explanations in ECF No. 41, pages 3-10

b) 5th and 14th Amendments to the U.S. Constitution

    I realized that I can't sue AHS under the 5th and 14th Amendments to the U.S. Constitution. The Due Process Clause of the 5th Amendment applies only to the Federal Government. The 14th Amendment applies only to the States and their subdivisions (counties, cities, and their agencies). Source:

http://www.centerforhumanrights.org/PDFs/3-6-14_2014ConLawDueProcessManual.pdf

    During my employment, AHS was not a public agency/entity. Therefore, both the 5th and 14th Amendments don't apply.

c) FLSA

    Read the information on the web-site of the U.S. Department of Labor.

    "There are two ways in which an employee can be covered by the law: "enterprise coverage" and "individual coverage."

**1) Enterprise Coverage**

    Employees who work for certain businesses or organizations (or "enterprises") are covered by the FLSA. These enterprises, which must have at least two employees, are:

    (1) those that have an annual dollar volume of sales or business done of at least $500,000

    (2) <u>hospitals</u>, businesses providing medical or nursing care for residents, schools and preschools, and government agencies

**2) Individual Coverage**

    Even when there is no enterprise coverage, employees are protected by the FLSA if their work regularly involves them in commerce between States ("interstate commerce"). The FLSA covers individual workers who are "engaged in commerce or in the production of goods for commerce."

Complaint for Damages.

Examples of employees who are involved in interstate commerce include those who produce goods (such as a worker assembling components in a factory or a secretary typing letters in an office) that will be sent out of state, regularly make telephone calls to persons located in other States, handle records of interstate transactions, travel to other States on their jobs, and do janitorial work in buildings where goods are produced for shipment outside the State.

Also, domestic service workers (such as housekeepers, full-time babysitters, and cooks) are normally covered by the law."

Source: https://www.dol.gov/whd/regs/compliance/whdfs14.htm

I have a right to sue AHS under FLSA, and I am protected under the enterprise coverage because:

1) AHS has more than two employees, and the annual dollar volume of sales of AHS exceeds $500,000

2) AHS is a hospital.

In her Order (ECF No. 58, page 6, lines 14-16), Judge Beeler wrote, "…. under her own factual narrative, before being fired the plaintiff did not file a complaint| or institute a proceeding| that would trigger 29 U.S.C. § 215." This interpretation of 29 U.S.C. § 215 is completely frivolous, incorrect, and contradicts the orders of the Supreme Court and orders of many Circuits including the 9th Circuit.

29 U.S.C. § 215(a)(3) says, that it shall be unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed **any complaint** or instituted <u>or caused to be instituted any proceeding</u> under or related to this chapter, or has testified or is <u>about to testify in any such proceeding</u>. or has served or <u>is about to serve on an industry committee</u>.

29 U.S.C. § 215(a)(3) specifically says "<u>any complaint</u>" and doesn't say what kind of complaint it should be – an internal oral or written complaint to a Supervisor, an oral or written complaint to the Department of Labor, etc.

Complaint for Damages.

1    I made multiple oral complaints to Supervisors Mr. Clerve and Mr. Harding, and I
2    submitted a written complaint to Mr. Harding. Two days later, I was discharged.

3
4    "Over fifty years ago, the Supreme Court determined the approach that must be followed in
5    construing the provisions of the Fair Labor Standards Act. A number of the other circuits have
6    explicitly followed that approach.   It is a simple one, often used in construing statutes designed
7    to protect individual rights.    In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321*
8    *U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944)*, the Court explained that because the FLSA is a
9    remedial statute, it must be interpreted broadly.   As the Tennessee Coal Court wrote, "[The
10   FLSA is] remedial and humanitarian in purpose.    We are not here dealing with mere chattels or
11   articles of trade but with the rights of those who toil.    Those are rights that Congress has
12   specifically legislated to protect.    Such a statute must not be interpreted or applied in a narrow,
13   grudging manner."
14       More specifically, in *Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292-93, 80*
15   *S.Ct. 332, 4 L.Ed.2d 323 (1960)*, the Court explained that Congress intended the anti-retaliation
16   provision of the FLSA to provide an incentive for employees to report wage and hour violations
17   by their employers.    As the Court wrote, "For weighty practical and other reasons, Congress did
18   not seek to secure compliance with prescribed standards through continuing detailed federal
19   supervision or inspection of payrolls.    Rather it chose to rely on information and complaints
20   received from employees seeking to vindicate rights claimed to have been denied.   [I]t needs no
21   argument to show that fear of economic retaliation might often operate to induce aggrieved
22   employees quietly to accept substandard conditions."
23   Source: LAMBERT v. ACKERLEY SSI, United States Court of Appeals, Ninth Circuit, 1999
24   http://caselaw.findlaw.com/us-9th-circuit/1414341.html
25       In *Valerio v. Putnam Associates Inc.. 5 WH Cases2d 389 (1st Cir. 1999)*, Putnam hired
26   Valerio for a "Receptionist/Administrative Assistant" position. and told her that the job was
27   considered exempt and that she would not be entitled to overtime pay.   In a letter to Putnam.
28   Valerio said that a receptionist is not an exempt employee under the Retaliation Under the Fair

Complaint for Damages.

Labor Standards Act FLSA and insisted she be reclassified as non-exempt and paid overtime. Several days later, Valerio was fired, allegedly because of a new modem system. The First Circuit sided with the Sixth, Eighth, Tenth, and Eleventh Circuits, which have determined that internal complaints to the employer will suffice, finding that Valerio's letter to Putnam was "sufficiently definite" to inform Putnam of her rights to overtime pay.

Source:

http://apps.americanbar.org/labor/lel-aba-annual/papers/1999/annual46.pdf

In *Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 131 S. Ct. 1325, 1335 (2011)*, the Supreme Court established a "fair notice" test for deciding whether an employee has "filed any complaint" under the anti-retaliation provision of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 215(a)(3):  "[A] complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."

Source: http://cdn.ca9.uscourts.gov/datastore/opinions/2015/12/14/13-15292.pdf

In *Rosenfield v. GlobalTranz Enters., Inc., (2015)* the U.S. Court of Appeals, Ninth Circuit Reverses District Court's Granting of Employer's Motion for Summary Judgment.

In April 2010, GlobalTranz hired Plaintiff Alla Rosenfield as Manager of Human Resources. The company promoted her later that year to Director of Human Resources and, in early 2011, to Director of Human Resources and Corporate Training. Throughout her employment, Rosenfield lodged multiple oral and written internal complaints to her superiors that the company was not compliant with the Fair Labor Standards Act (FLSA), and she repeatedly sought changes to attain statutory compliance. On May 31, 2011, GlobalTranz fired Rosenfield, and she filed a complaint, alleging that GlobalTranz and its executives had violated the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), and Arizona state law. The plaintiff alleged that GlobalTranz fired her for engaging in protected activity, that is, for complaining to other managers and to executives that GlobalTranz was failing to comply with the FLSA.

Complaint for Damages.

The district court granted summary judgment in the defendants' favor on the FLSA claim. Even though the district court recognized that Plaintiff had "advocated consistently and vigorously on behalf of GlobalTranz's employees whose FLSA rights Plaintiff thought were being violated," the district court held that she nevertheless was not entitled to the protections of § 215(a)(3) because she had not "filed any complaint" for purposes of that provision. Rosenfield voluntarily dismissed the state-law claim, the court entered a final judgment, and a timely appeal followed.

Appellate Court Decision: The United States Court of Appeals for the Ninth Circuit reversed the summary judgment in favor of Defendants and remanded this case for further proceedings. The Court held that GlobalTranz understood Rosenfield's "interactions" with the company to be "complaints" on the subject of FLSA compliance and because "FLSA compliance was not part of [her] portfolio, her advocacy for the rights of employees to be paid in accordance with the FLSA could not reasonably have been understood (if it was) merely to be part of [her] regular duties" as a manager.

Sources: http://cdn.ca9.uscourts.gov/datastore/opinions/2015/12/14/13-15292.pdf    and

http://kingsleykingsley.com/2016/01/ninth-circuit-reverses-denial-flsa-retaliation-claim/

Conclusion: My oral and written complaints to Supervisors Mr. Clerve and Mr. Harding are sufficient for suing AHS under 29 U.S.C. § 215(a)(3) for retaliation and unlawful termination.

29 U.S. Code § 216(b) – Penalties. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and

Complaint for Damages.

such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

I am entitled to:

1. employment;

2. reinstatement;

3. promotion;

4. lost wages and liquidated damages equal to the lost wages;

5. front pay;

6. compensatory damages (not generally available in other suits under the FLSA, have been awarded in a few cases, e.g. *Travis v. Gary Community Mental Health Center, Inc. , 921 F.2d 108, 111, 30 WH Cases 122 (7th Cir. 1990)*, cert. denied, *502 U.S. 812, 30 WH Cases 928 (1991)*);

7. reasonable attorney's fees shall be awarded;

8. pre-judgment interest; and,

9. entitlement to punitive damages is not a settled issue; the Seventh Circuit and courts in the Ninth Circuit have authorized punitive damages awards. In *Lambert v. Ackerley , No. 963017v2 (9th Cir. June 10, 1999)*, the court awarded $12 million in punitive damages to employees who reported that they were not being paid adequate overtime and were subsequently fired. In *Shea v. Galaxie Lumber ,*

Complaint for Damages.

*152 F.3d 729 (7th Cir. 1998)*, the Court ruled that punitive damages could be awarded even if compensatory damages were not.

Source: American Bar Association

http://www.bna.com/bnabooks/ababna/annual/99/annual46.pdf

FLSA Statutes of limitations.

In ECF No. 58, page 7, lines 4-7, Judge Beeler wrote, "… the FLSA claims that might be relevant here are generally subject to a two- or three-year time bar (29 U.S.C. § 255) that the plaintiff's December 2016 initial complaint failed to meet." This is incorrect.

Read 29 U.S.C. § 255, "Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 et seq.],……(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

Therefore, FLSA provides statutes of limitations only for unpaid minimum wages, unpaid overtime compensation and liquidated damages. FLSA doesn't provide any statute of limitations for retaliation and unlawful termination in terms of 29 U.S.C. § 215(a)(3). Moreover, I couldn't file a lawsuit earlier because my case was under investigation in DIR/DLSE. It is not my fault that DIR/DLSE took over three years to process my case and denied it.

Read ECF No. 40, page 30, lines 26-27 throughout page 33, line 9 where I described the *Mitchell* case. The statute of limitations was tolled when the employee's complaints were investigated.

Also, read the decisions of the 9th Circuit to toll statute of limitations for negligence in claims against the United States in KWAI FUN WONG; WU-WEI TIEN TAO ASSOCIATION vs. DAVID V. BEEBE, No. 10-36136 (2013), source

Complaint for Damages.

http://cdn.ca9.uscourts.gov/datastore/opinions/2013/10/09/10-36136.pdf

and MARITZA GALLARDO vs. UNITED STATES OF AMERICA, No. 12-55255 (2014), source

http://cdn.ca9.uscourts.gov/datastore/opinions/2014/04/15/12-55255.pdf

Also, read California Civil Jury Instructions #457, Equitable tolling, source

https://www.justia.com/trials-litigation/docs/caci/400/457.html

Because my claim was under investigation of DIR/DLSE for three years and four months, I had no control on the processing time, and I was hoping for a positive outcome for me (that I would be reinstated back to work), I didn't file a lawsuit before the statute of limitations expired. I acted in good faith. Therefore, the statutes of limitations in my case should be tolled.

d)  Interstate commerce.

Interstate Commerce is regulated by the Federal Government as defined at Article I, Section 8 of the U.S. Constitution which says that the "Congress shall have Power … To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

18 U.S. Code § 10 says that "The term "interstate commerce", as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia."

18 U.S. Code § 921(a)(2) says that "The term "interstate or foreign commerce" includes commerce between any place in a State and any place outside of that State, or within any possession of the United States (not including the Canal Zone) or the District of Columbia, but such term does not include commerce between places within the same State but through any place outside of that State. The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States (not including the Canal Zone)."

My work at AHS included reading electrocardiograms on cardiac monitors (it is named Telemetry) at Highland hospital. After my job was done, AHS sent billing claims for telemetry services to health insurance companies which are located in other States. Read the whole list of health insurance plans AHS works with:

Complaint for Damages.

http://www.alamedahealthsystem.org/health-plans/

Let us see just a few billing addresses of these insurance companies:

1) CIGNA - PO Box 182223, Chattanooga, TN

Source: https://www.xifin.com/resources/industry-news/201105/new-cigna-paper-claim-and-correspondence-addresses-and-fax-numb

2) Easy Choice - P.O. Box 260519 Plano, TX 75026

Source: http://www.easychoicehealthplan.com/contact.php

3) Beacon - Beacon Health Options Claims Department P.O. Box 1850 Hicksville, N.Y. 11802-1850

Source: http://maryland.beaconhealthoptions.com/provider/alerts/2017/030217-Paper-Claims-Submission-Address-Change.pdf)

Therefore, as an employee, I was engaged into the interstate commerce (I performed telemetry services, and AHS billed insurance companies which are located in other States).

Moreover, AHS purchased Telemetry equipment and supplies from other States — Telemetry software and boxes, wires, disposable EKG leads, EKG paper, sani-wipes for sanitizing, rubber gloves, etc. These are also examples of the interstate commerce. While I was employed by AHS, the Electronic Health Record system at that time was Siemens Soarian, and the headquarters of Siemens are located in Washington, D.C.

Source: http://www.usa.siemens.com/en/footer/corporate_info.htm

The Telemetry system at that time was Dragon with the headquarters located in Arizona. Source: http://www.dragonlinkrc.com/contact/

e) NLRA

In ECF No. 58, page 7. lines 12-13, Judge Beeler said, "Neither the NLRA nor the LMRA applies to AHS. Governmental entities are excepted from the NLRA." This is incorrect.

Read the information on the web-site of the National Labor Relations Board https://www.nlrb.gov/resources/national-labor-relations-act

Complaint for Damages.

"Congress enacted the National Labor Relations Act ("NLRA") in 1935 to protect the rights of employees and employers, to encourage collective bargaining, and to curtail certain private sector labor and management practices, which can harm the general welfare of workers, businesses and the U.S. economy."

During my employment, AHS was not a public agency and not a public entity (read my explanations above).

Moreover, read the web-site https://resources.lawinfo.com/employment-law-employee/labor-management-relations-act-lmra/   "The NLRA applies to most private sector employers, including manufacturers, retailers, private universities, and health care facilities."

Read Section 2(2) §152 of NLRA, "The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act 45 U.S.C. § 151 et seq., as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." Based on this provision of the law, AHS is definitely included into the definition of employers.

Read Section 2(6) §152 of NLRA, "The term "commerce" means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country."

Read Section 2(7) §152 of NLRA, "The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

Complaint for Damages.

"Read Section 2(14) §152 of NLRA, "The term "health care institution" shall include any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person."

Therefore, during my employment AHS was an employer in the meaning of Section 2(2) §152 of NLRA; was a health care institution in the meaning of Section 2(14) §152 of NLRA; and was engaged into the interstate commerce in the meaning of Section 2(6) and (7) §152 of NLRA.

Therefore, AHS can't raise a defense that they are immune to be sued under NLRA and/or LMRA. At the time of my employment, AHS was not a public entity/agency. Also, AHS is a health care facility, and AHS is engaged into the interstate commerce. Therefore, I can sue AHS under NLRA §157 and 158.

f)   OSHA

As an employee constantly observing video display screens for more than 2 hours, I was not given 10 minute breaks in accordance with internal rules of AHS. Later, AHS claimed that this policy was removed prior to my employment. However, during my employment this policy was still on the Intranet (Alameda County Medical Center, Human Resources, Policy and Procedure Manual, page 67: "Employees using video display screens 2 consecutive hours or more are entitled to a 10-minute break every hour"). AHS never submitted to the Court any official document which confirms that this policy was removed prior to my employment. Therefore, I have a right to sue AHS under OSHA. Read ECF No. 47, from page 10, line 6, to page 11, line 16.

In ECF No. 58, Judge Beeler said (page 8, lines 7-12), "The regulation that the plaintiff repeatedly cites (29 C.F.R. § 1977.11) relates to retaliation for giving testimony. Nothing in the complaint suggests that AHS retaliated against the plaintiff for giving testimony. Furthermore, any complaint under § 1977.11 must be made within 30 days of the violation — a time bar that the plaintiff's own allegations show that she cannot meet. There is no federal question jurisdiction in this case through OSHA." This is incorrect. In fact, 29 C.F.R. § 1977.11 says, "Discharge of, or discrimination against, any employee because the employee "has testified or is about to testify" in proceedings under or related to the Act is also prohibited by section 11(c).

1   This protection would of course not be limited to testimony in proceedings instituted <u>or caused to</u>

2   <u>be instituted by the employee,</u> but would extend to any statements given in the course of judicial,

3   quasi-judicial, and administrative proceedings, including inspections, investigations, and

4   administrative rule making or adjudicative functions. If the employee is giving <u>or is about to give</u>

5   <u>testimony in any proceeding under or related to the Act, he would be protected against</u>

6   <u>discrimination resulting from such testimony</u>." My written complaint to Mr. Harding is sufficient

7   to be considered as a testimony.

8        Moreover, Judge Beeler didn't cite any provision of law that determines a 30 day Statute

9   of Limitations. I tried to find this provision myself. I found 29 CFR 1977.15 - Filing of

10   complaint for discrimination. Read 29 CFR 1977.15(c), "Complaint should be filed with the

11   Area Director (Occupational Safety and Health Administration) responsible for enforcement

12   activities in the geographical area where the employee resides or was employed." Read 29 CFR

13   1977.15(d)(1), "Section 11(c)(2) provides that an employee who believes that he has been

14   discriminated against in violation of section 11(c)(1) "may, within 30 days after such violation

15   occurs," file a complaint with the Secretary of Labor."

16        In fact, I filed my Complaint on October 25th, 2013 with the Division of Occupational

17   Safety and Health of DIR, case number #208711820-114. My complaint was denied because my

18   "former employer investigated the matter and has acknowledged that the previous policy was not

19   being followed resulting in an assessment and change in policy prior to our inquiry, therefore no

20   further investigation was warranted" and because "there is no standard in Title 8 California Code

21   of Regulations requiring additional breaks for ergonomic purposes."

22        AHS's defense that "the previous policy was not being followed resulting in an

23   assessment and change in policy prior to our inquiry" doesn't meet <u>all five requirements</u> of 8

24   CCR § 336.11. AHS didn't "demonstrate that the creating, the controlling and/or the correction

25   employers, as appropriate, were specifically notified or were aware of the hazards to which

26   his/her employees were exposed" and "the employer took appropriate feasible steps to protect

27   his/her employees from the hazard, instructed them to recognize the hazard and, where

28   necessary, informed them how to avoid the dangers associated with it." Sources: 8 CCR §

Complaint for Damages.

1  336.11(d) and (e). Therefore, this defense is not applicable. The Division of Occupational Safety

2  and Health of DIR failed to follow 8 CCR § 336.11, and therefore I can file a lawsuit.

3      g)  42 U.S. Code § 2000e–3(a).

4      I cited 42 U.S. Code § 2000e–3(a) a few times as a subject-matter jurisdiction for the

5  Federal Court. See ECF No. 24, page 4 (at the end of the page) and in ECF No. 40, page 9, lines

6  21-28 and page 10, lines 1-5, and ECF No. 47, page 5, line 18. Neither AHS itself nor Judge

7  Beeler ever responded to my citation of 42 U.S. Code § 2000e–3(a) - Discrimination for making

8  charges, testifying, assisting, or participating in enforcement proceedings. This is why I filed an

9  appeal.

10      h)  Title VII of the Civil Rights Act of 1964.

11      I never claimed that the main reason of my termination was retaliation against my

12  Russian origin - Title VII of the Civil Rights Act of 1964. Read my Opposition to AHS's Motion

13  to dismiss my amended complaint, pages 26-28. I couldn't establish the 4th element of a Prima

14  Facie Case because, since I was fired from the hospital and my badge was revoked, I lost access

15  to Step Down Unit, and I had no chance to observe whom AHS hired instead of me. However, I

16  can obtain this information when my case goes into a discovery stage.

17  **Diversity of Citizenship jurisdiction over AHS.**

18      a)  Read ECF No. 47, from page 12, line 5 to page 15, line 26.

19      b)  Also, in *Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996)* the Supreme Court held that

20          federal jurisdiction predicated on diversity of citizenship can be sustained even if

21          there did not exist complete diversity at the time of removal to federal court, so long

22          as <u>complete diversity exists at the time the district court enters judgment</u>. The court in

23          Caterpillar sustained diversity as an issue of "fairness" and economy, given a lower

24          court's    original    mistake    that    allowed    removal.    Sources:

25          <u>https://en.wikipedia.org/wiki/Diversity_jurisdiction</u>

26          <u>https://en.wikipedia.org/wiki/Caterpillar_Inc._v._Lewis</u>

27      The District Court entered judgment on July 7th, 2017 (ECF No. 77) when I was in

28  Russia. At that time, complete diversity existed between me and all my defendants.

Complaint for Damages.

c) I want to underline that I applied to a job opening in New Mexico in November 2016 – before I even knew that I would be filing a lawsuit. I filed a lawsuit in December 2016. I had a job interview and a job offer in January 2017. I moved to New Mexico and started my new employment on April 2nd, 2017. I filed my Amended Complaint on April 10th, 2017. Therefore, my relocation to New Mexico could have been predicted even before I filed my original Complaint. Therefore, the diversity of citizenship jurisdiction applies to my case.

**State issues.**

a) The District Court has supplemental jurisdiction over my State of California claims. Read the list of State issues above.

b) Because AHS was not a public agency/entity during my employment, it is liable for paying overtime payments for 12 hour shifts according to IWC 4-2001  3(A)(1)(a) and IWC 4-2001 3(B)(1)."

57. On March 30, 2018, the NTPC and Attorney Mr. Travelstead filed an Answering Brief, see (**ER 17-16382, Vol. 1, pages 1012-1049**),

"**I. INTRODUCTION**

The United States District Court for the Northern District of California ("District Court") dismissed Appellant's action against AHS for lack of subject matter jurisdiction, because Appellant could not state a plausible federal claim against AHS and, the case lacked diversity. The District Court did not consider Appellant's state claims, because it could not exercise supplemental jurisdiction. The District Court's rulings were correct and Appellant's Opening Brief ("AOB") fails to show otherwise.

Among its failed arguments, the AOB improperly raises new assertions of federal question jurisdiction that were not presented to the District Court. Even if considered, the alleged federal violations do not apply here. Appellant also improperly raises state-law claims that the District Court did not consider. Again, if considered, the state claims fail as a matter of law.

Complaint for Damages.

1    Accordingly, Appellee respectfully requests this Court to affirm the District Court's

2    Judgment.

3    **II. JURISDICTIONAL STATEMENT**

4    Subject matter jurisdiction in the proceedings below in the United States District Court

5    for the Northern District of California was disputed. The District Court dismissed Appellant's

6    action as to AHS for lack of subject matter jurisdiction.

7    ......

8    **III. STATEMENT OF ISSUES PRESENTED FOR REVIEW**

9    1. Did the District Court properly rule that Appellant could not state a plausible federal

10   claim when Appellant does not allege any violations of federal law?

11   2. Did the District Court properly rule that there was no diversity of citizenship under the

12   "time-of-filing" rule because Appellant was domiciled in California when she initiated the

13   action?

14   3. Can Appellant raise new assertions of federal question jurisdiction not preserved in

15   District Court?

16   4. Did the District Court properly rule it cannot exercise supplemental jurisdiction over

17   Appellant's state claims because there was no federal question or diversity jurisdiction?

18

19   **IV. STATEMENT OF THE CASE**

20   The District Court gave Appellant ample opportunity to assert a federal claim against

21   AHS, but none of the various federal statutes Appellant cited are inapplicable to this case.

22   Appellant also claimed diversity jurisdiction, but the District Court properly applied the "time-

23   of-filing" rule to find no diversity existed. Appellant cannot show the District Court erred, and

24   there is no subject matter jurisdiction here.

25   Furthermore, Appellant's complaint and attachments show that there was no retaliation or

26   illegal working conditions during her employment with AHS. Shortly after Appellant was hired

27   at AHS as a Monitor Technician, AHS found she was involved in an incident in which the safety

28

Complaint for Damages.

1   a patient was compromised. AHS released from her probationary status for her poor
2   performance, not for any complaints about her working terms and conditions.

3          The District Court did not err when it dismissed Appellant's case for lack of subject
4   matter jurisdiction. To the extent Appellant raises new claims and reasserts her state claims, they
5   are not properly before this Court, but fail as a matter of law in any case.

6   **V. STATEMENT OF FACTS AND PROCEDURAL HISTORY**[2]

7          Appellant filed her original complaint on December 29, 2016, in pro per, against AHS,
8   her former employer, without any allegations to invoke subject matter jurisdiction in federal
9   court. (ER 390-400.) Appellant did not assert any violations of federal law. (Id.)

10         Appellant also did not assert diversity jurisdiction. Appellant's address on her original
11  complaint is in San Francisco, and she alleged she resided in San Francisco in the Civil Cover
12  Sheet. (ER 390, 453.) As the basis for jurisdiction, Appellant checked "federal question," and not
13  "diversity." (ER 453.)

14         Appellant did not allege any cause of action and AHS was forced to speculate. (ER 390-
15  400.) Appellant asserted facts suggesting state-law claims that failed as a matter of law. With no
16  viable federal claims, AHS moved to dismiss for lack of subject matter jurisdiction and failure to
17  state a claim. (ER 462, Dkt # 19.)

18         Appellant's Opposition cited various federal statutes that had no relevance to the case,
19  and the Court granted AHS's motion. Ms. Drevaleva does not state a plausible federal claim, and
20  the Complaint lacked subject matter jurisdiction. The Court gave her leave to amend to try to
21  plead a federal claim. (ER 462, Dkt # 36.)

22         Before filing her Amended Complaint, Appellant moved to New Mexico to start a new
23  job. (ER 350.) On April 10, 2017, she filed the Amended Complaint alleging diversity
24  jurisdiction based on her new residence in New Mexico and citizenship in Russia. (ER 31- 32.)
25  Appellant's Amended Complaint also asserts federal question jurisdiction, but it does not allege
26  plausible federal claims against AHS.

27
28

Complaint for Damages.

The District Court granted AHS's motion to dismiss Appellant's Amended Complaint for lack of subject matter jurisdiction, and entered Judgment to dismiss the action as to all defendants on July 7, 2017. (ER 458, Dkt #58; ER 457, Dkt #77.).

   ₂ This procedural summary does not address the procedural status of individual co-appellees, which has no bearing on AHS's issues presented here.


**B. Background Facts**

AHS hired Appellant as a Monitor Technician on April 1, 2013. (ER 33.) Shortly after Appellant was hired, she was involved in an incident in which the safety a patient was compromised while she was performing her duties. (ER 41, 351-354[3].) AHS investigated the incident and interviewed Appellant on three separate occasions. (ER 354.) On September 4, AHS decided to release Ms. Drevaleva from her employment at AHS. (ER 44, 369.) On September 7, 2013, AHS sent Appellant a letter informing her that her employment with AHS was ending due to the "discrepancies between acceptable employment standards and those [she] exhibited during [her] employment." (ER 38.)

Appellant claims AHS terminated her employment in retaliation for complaining about various work terms and conditions. (ER 38- 40.) She claims AHS classified her as a part-time employee, but that she should have been considered a full-time employee, because she worked three 12-hour shifts per week. (ER 35.) However, even if she qualifies as a full-time employee, there must be a full time position available. (ER 373.)

Because she worked 12-hour shifts, Appellant claims should have been paid overtime for work more than 8 hours a day. (ER 35.) However, because AHS is a public employer, the rule for paying overtime after 8 hours does not apply, and only work after 40 hours a week is considered overtime. (ER 374.)

Appellant also claims she was denied affiliation with the Union. (ER 33.) However, during her employment with AHS, her job classification of Monitor Technician was not represented by the Union. (ER 376.) She also claims she at times was not given her third 15-

Complaint for Damages.

1    minute break on her twelve-hour shifts, nor did she receive ten-minute breaks every hour, as she

2    claims is required under the written policies of AHS, not federal law. (ER 37.)

3        On September 5, 2013, Appellant sent a letter to the Director in her department

4    addressing the issues. (ER 38.) She sent it after AHS had already made the decision to release

5    her from employment. (ER 44, 369.) On September 23, 2013, AHS sent Appellant a letter

6    addressing each of the issues and noted the decision to release her had been made prior to her

7    raising her concerns. (ER 49, 377.)

8        Ms. Drevaleva then filed a claim with the Department of Industrial Relations in

9    September 2013, asserting AHS owes her unpaid overtime and other pay and that it terminated

10   her in retaliation for addressing these issues. (ER 41.) On January 7, 2014, the Wage

11   Adjudication unit dismissed her case for unpaid wages, because it did not have jurisdiction over

12   claims for overtime, breaks, or differential pay for public employers. (ER 54, 381.)

13       The Deputy of Labor Commissioner investigated Appellant's retaliation claim and

14   dismissed her case after finding there was insufficient evidence of retaliation. (ER 369-371.) The

15   Deputy found AHS provided evidence that established the employer's legitimate, non-retaliatory

16   reasons for terminating her. (ER 370.) "Your involvement with medical negligence, whether

17   peripheral or not, also gave Alameda Health a compelling reason to terminate you." (ER 370.)

18       Appellant denies any negligence on her part in the incident in which the patient's safety

19   was compromised, apparently because the word "negligence" was not used in AHS's termination

20   letter. Instead, Appellant continues to allege the termination was in retaliation for complaints

21   about unpaid overtime and other working conditions.

22       [3] Background Facts include facts alleged in the Amended Complaint and Attachments

23   referred to in the Amended Complaint and attached to Amended Complaint. Attachments to a

24   complaint are considered to be part of the complaint for purposes of a motion to dismiss. *Amfac*

25   *Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429-430 (9th Cir. 1978.)

26

27   **VI. STANDARD OF REVIEW**[4]

28

Complaint for Damages.

A district court order dismissing a complaint for lack of jurisdiction pursuant to F.R.C.P. 12(b)(1) is reviewed do novo. *McGraw v. United States*, 281 F.3d 997, 1001 (9th Cir. 2002). The court's review is not limited to the complaint itself but my also include "affidavits or other evidence properly before it." *Corrie v. Caterpiller, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).

[4] Appellant appears to state that the standard of review is the abuse of discretion standard (AOB, p. 64-66), but the de novo review is applicable here.

## VII. SUMMARY OF ARGUMENTS

The District Court dismissed Appellant's action against AHS for lack of subject matter jurisdiction, because Appellant could not state a plausible federal claim and for lack of diversity. Because it lacked jurisdiction, the District Court could not exercise supplemental jurisdiction over the state-law claims, and therefore did not consider them on the merits.

Appellant improperly raises new assertions of federal question jurisdiction that were not presented to the District Court. Even if considered, the alleged federal violations do not apply here. Appellant also improperly raises state-law claims that the District Court did not consider, but again, the claims fail as a matter of law.

Accordingly, Appellee respectfully requests this Court to affirm the District Court's Judgment.

## VIII. LAW AND ARGUMENT

### A. Appellant Never Asserts A Viable Federal Claim.

Because she never asserts a viable federal claim, there is no federal question jurisdiction here.

The Constitution vests federal courts with the authority to hear cases "arising under th[e] Constitution [or] the Laws of the United States." U.S. Const. Article III. § 2. Congress also vests federal district courts with subject matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When determining

Complaint for Damages.

1 | whether a claim arises under federal law, a court will "examine the 'well pleaded' allegations of
2 | the complaint and ignore potential defenses: '[A] suit arises under the Constitution and laws of
3 | the United States only when the plaintiff's statement of his own cause of action shows that it is
4 | based upon those laws or that Constitution.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6
5 | (2003) quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). The "well-
6 | pleaded complaint" rule requires plaintiff to set forth the federal claim in sufficient detail that a
7 | right to recover under federal law is apparent. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).

Appellant argues she can stated a claim based on the Fair Labor Standards Act, the
Labor-Management Relations Act, the National Labor Relations Act, and the Occupational
Safety and Health Act. She did not and cannot.

### 1. Appellant Cannot State A Claim Based on the Fair Labor Standards Act.

The District Court Order found Appellant did not state a claim based on the Fair Labor
Standards Act ("FLSA"). (ER 21-22.) The District Court also found that Appellant did not file a
complaint or institute a proceeding that would trigger the FLSA provisions and also that any
plausible FLSA claim would be barred by the two- or three-year time bar pursuant to 29 U.S.C.
section 255. (Id.)

Appellant does not dispute the underlying finding that Appellant cannot state any
plausible FLSA claim, because she cannot. Appellant only disagrees with the later parts of the
FLSA finding regarding whether the failure to trigger the FLSA and the statute of limitations.
Because she concedes that she cannot state an FLSA violation, her disagreement with the
peripheral findings regarding the FLSA are irrelevant.

In general, the FLSA sets a minimum hourly wage and establishes the formula for
overtime pay. 29 U.S.C. 8, §§ 201-219. The Fair Labor Standards Act does not prescribe matters
such as meal or break requirements for employees. Section 207 provides for overtime pay when
an employee works more than 40 hours a week. 29 U.S.C. § 207, subd. (a)(1).

In the Amended Complaint, Ms. Drevaleva alleges she worked three 12-hour shifts per
week totaling thirty six hours a week. (ER 35). The FLSA does not require overtime pay for

Complaint for Damages.

hours worked in excess of eight hours a day, or for hours worked on Saturdays, Sundays or holidays. 29 U.S.C. § 207, subds. (a)(1) & (3)(6). Thus, Ms. Drevaleva would not be entitled to overtime pay pursuant to the FLSA, because she did not work more than forty hours a week.

Accordingly, the District Court did not err when it found that Appellant's claim for unpaid overtime did not implicate the FLSA. Indeed, Appellant does not appeal this finding, effectively conceding she cannot state an FLSA claim.

Because Appellant not assert any violations of the FLSA, any disagreement as to the peripheral findings regarding the FLSA are irrelevant to whether she can establish federal question jurisdiction. Appellant argues her complaint to the Director triggered the FLSA anti-retaliatory provision. Even if an internal complaint to her employer triggers it, any such claim is time-barred.

Appellant's FLSA statute of limitations argument is misplaced. Appellant first argues that the FLSA statute of limitations does not apply to her because she has a claim for retaliation. (AOB, p. 35) However, actions for retaliatory discharge under 29 U.S.C. Section 215(a)(3) are governed by statute of limitations found at Section 255. *Crowley v Pace Suburban Bus Div. of Reg'l Transp. Auth.* (7th Cir. 1991) 938 F.2d 797.

Appellant then argues any statute of limitation for her to file an FLSA claim was tolled by her administrative proceeding with the Department of Industrial Relations. However, filing of administrative claim does not toll or otherwise affect the two-year limitations period imposed by 29 U.S.C. Section 255(a) on seeking judicial relief for violations of Fair Labor Standards Act. *Nerseth v United States*, 17 Cl. Ct. 660 (Cl. Ct. 1989) (statute of limitations is not tolled under doctrine of equitable estoppel in suit for overtime compensation, where plaintiffs allege that they were led to believe that adequate compensation was forthcoming, but where plaintiffs were clearly aware that they were not being paid overtime compensation for time periods at issue.); *Shandelman v. Schuman*, 92 F. Supp. 334 (E.D. Pa. 1950) (statute of limitations is not tolled during period of investigation by Wage and Hour Division, since investigation does not prevent filing of the complaint.)

Complaint for Damages.

**2. The Labor-Management Relations Act and the National Labor Relations Act Do Not Apply to Public Entities.**

Appellant argues AHS violated the National Labor Relations Act ("NLRA") and/or Labor-Management Relations Act ("LMRA") when it denied her affiliation with the Union. The District Court rejected this argument, because the statutes do not cover public entities. (ER 22.)

By its own terms the NLRA and LMRA do not apply to public entities. "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof..." 29 U.S.C. § 152(2). Therefore, "public entities are not 'employers' within the meaning of the federal law." *Santa Clara Valley Transportation Authority v. Rea*, 140 Cal.App.4th 1303, 1308 (2006).

Appellant argues AHS was not a public entity despite California Health & Safety Code Section 101850 defining AHS as a "hospital authority" - a separate public agency. Appellant apparently does not understand that Alameda County Medical Center and Alameda Health System are the same entity. As set forth in the 2014 amendment to California Health and Safety Code Section 101850, "the Alameda County Medical Center is doing business as the Alameda Health System" Sen. 1352, 2014 Reg. Sess. (Cal. 2014). There was a change in legal name, and it continued to operate as a public entity. The District Court properly found that it is indisputable that AHS is a public entity. (ER 22.)

Appellant argues the District Court is "completely incorrect," and gives the following reasoning:

> While Judge Beeler signed this order (June 7, 2017), Cal. Health & Safety Code § 101850 described ACMC, not AHS. The legislature changed Cal. Health & Safety Code § 101850 only on September 27th, 2017. The name of the employer was changed to AHS. See Assembly Bill No. 1538, Chapter 236…
> (AOB, p. 24)

However, AB 1538 has nothing to do with AHS's name change. Assem. 1538, 2017 Reg. Sess. (Cal. 2017). AHS changed is name from Alameda County Medical Cetner to Alameda Health System in 2014: "In order to better reflect the regional availability of services to the

Complaint for Damages.

1    residents of the County of Alameda, the Alameda County Medical Center is doing business as
2    the Alameda Health System and it is appropriate that the name change be reflected statutorily to
3    ensure that there is no confusion in the administration of state programs." Sen. 1352, 2014 Reg.
4    Sess. (Cal. 2014).

5        Appellant also incorrectly equates AHS's status as a public agency with when it filed
6    with the Secretary of State to be on the Roster of Public Agencies. Appellant claims that AHS,
7    initially named Alameda County Medical Center, obtained its public agency's status on
8    September 18, 1998 when it filed with the Secretary of State, then changed its name to Alameda
9    Health System in March of 2013, but did not file an updated Statement of Facts with the
10   Secretary of State until September 2014[5]. (AOB, p. 23.) Appellant argues that during her
11   employment with AHS between April 2013 and September 2013, AHS was a private employer
12   because it was not on the Roster. (AOB, p. 22-23)

13       Appellant is incorrect. As discussed above, Alameda County Medical Center was doing
14   business as Alameda Health System and when the name was changed in 2014, the new name was
15   updated with the Secretary of State. Furthermore, whether AHS is on the Roster is relevant only
16   to determine whether a plaintiff must comply with California Government Torts Act before filing
17   a lawsuit. It has no bearing on whether the NLRA or LMRA applies to public entities.

18       Accordingly, Appellant's argument that the NLRA or LMRA applies to AHS fails and
19   the District Court properly ruled it does not establish federal question jurisdiction here. (ER 22.)

20   [5] AHS opposed Appellant's Motion to Supplement the Record to enlarge the record with
21   the attachments to her Opening Brief. If the Court grants her Motion to Supplement the Record,
22   it should be noted that Appellant introduces Attachment 2 – select portions of her personnel file
23   from AHS – to assert that the hospital used the name "Alameda Health System." However, the
24   letterhead on her offer letter dated March 13, 2013 has the "Alameda County Medical Center"
25   name on it and the Human Resources Action Request showing her termination dated September
26   7, 2013 is also on the "Alameda County Medical Center."

27

28   **3. Appellant Cannot State A Claim Based on Occupational Safety and Health Act.**

Complaint for Damages.

The District Court also properly ruled there is no federal question jurisdiction based on the Occupational Safety and Health Act ("OSHA"). (ER 22-23.) Appellant's claim that she was not given ten-minute breaks every hour or fifteen-minute breaks pursuant to the written policies of AHS doenot allege any violation of federal law. (AOB, p.41.) She claims she was denied breaks under AHS policy, not OSHA.

Appellant argues OSHA retaliation is implicated here, because she was terminated for making a written complaint to Mr. Harding in violation of 29 C.F.R §1977.11. Section 1977.11 makes it illegal to retaliate against an employee for giving testimony in a in the course of judicial, quasi-judicial, and administrative proceedings.

According to Appellant's own allegations, her written complaint to Mr. Harding was made during her employment before she initiated any judicial, quasi-judicial, or administrative proceeding. (ER 38.) Her complaint to Mr. Harding was not made in the course of any judicial, quasi-judicial, or administrative proceeding, and thus, 29 C.F.R. § 1977.11 does not apply.

**4. Appellant Concedes She Does Not State A Claim Based On Title VII of the Civil Rights Act of 1964.**

The District Court found it could not secure federal question jurisdiction on Appellant's "possible" Title VII discrimination claim. (ER 21.) Appellant never affirmatively alleged a Title VII cause of action, even after the District Court gave her another opportunity to do so. In Appellant's Opposition to the Motion to Dismiss Amended Complant, she conceded that she cannot set forth a prima facie case of discrimination claim under Title VII in her Opposition:

> I never said that the primary reason of my termination was because of my Russian origin. I said that I only suggest this reason. I don't believe that I can satisfy all four requirements of a Prima Facie [sic] case as it is defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." (ER 29.)

Complaint for Damages.

Having conceded she cannot state a Title VII claim, she cannot now seek to establish jurisdiction on that basis. Appellant did not mention any discrimination claim in her original complaint, but cited the statute it in her Opposition to AHS's Motion to Dismiss her original complaint. The District Court gave Appellant the opportunity to amend to state a federal discrimination claim (ER 387.) Although she speculated that a "possible reason of termination was discrimination against my Russian origin," Appellant provided no factual allegations of discriminatory motive or AHS's knowledge she was of Russian origin, and expressly alleged the reason for her termination was retaliation for her asking about the labor issues, not her Russian origin. (ER 38, 40.)

Even in Appellant's appeal, she admits she did not affirmatively allege a Title VII claim. "I never claimed that the main reason of my termination was retaliation against my Russian origin -Title VII of the Civil Rights Act of 1964." (AOB, p. 44.) Also under the heading, "State the claim or claims you raised in the originating court," Appellant states, "(possibly) retaliation against my Russian origin." (AOB, p. 20.) Because Appellant did not affirmatively assert the claim, she cannot not now predicate jurisdiction on her "possible" Title VII claim.

Similarly, she cannot base federal question jurisdiction on any claim pursuant to 42 U.S.C. Section 2000e-3. Section 2000e-3 prohibits discrimination for opposing any practice made unlawful by Title VII, or because she has made a charge or participated in any proceeding under Title VII. As set forth above, she does not even affirmatively assert a Title VII claim now and never claims she participated in a Title VII proceeding during her employment. It follows cannot assert a Title VII claim.

**B. No Diversity Jurisdiction Exists Because Appellant Resided in California When She Initiated This Action.**

The District Court properly ruled that no diversity jurisdiction exists here. (ER 24.) Appellant filed her original complaint against AHS and the Department of Industrial Relations on December 29, 2016 in the Northern District of California. (ER 464, Dkt #1.)

Title 28 of the United States Code Section 1332 (a) provides:

Complaint for Damages.

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... (2) citizens of a State and citizens or subjects of a foreign state, *except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State...* (emphasis added)

Citizenship is determined as of the date of commencement of an action, and therefore, in cases premised on diversity, jurisdiction "depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 22 U.S. 537, 539 (1824); *Northeast Clackamas County Electric Co-op., Inc. v. Continental Casualty Co.*, 221 F.2d 329, 332 (9th Cir. 1955).

Appellant was domiciled in California, the same of citizenship of Defendants, at the time she filed her original complaint. Indeed, Appellant did not assert diversity jurisdiction, and the address on her original complaint and Civil Cover Sheet states her domicile at the time of filing was San Francisco. (ER 390, 453.) Also, under "Plaintiff's county of residence," Appellant wrote "San Francisco." (Id.) Under the basis of jurisdiction, Appellant checked "federal question," and not "diversity." (ER 453.)

At the time of filing, diversity did not exist, so no diversity jurisdiction is possible here. In the Amended Complaint, Appellant attempts to establish subject matter jurisdiction over defendants added in the Amended Complaint.. The District Court properly found it "did not have diversity jurisdiction over the original defendants (AHS and DIR) and would not have it over those entities now." (ER 24.)

The case cited in Appellant's brief, *Caterpiller Inc. v. Lewis*, 519 U.S. 61 (1996), is inapposite. In *Caterpiller*, the plaintiff filed a case alleging state claims in state court. The case was removed to federal district court based on erroneous finding that diversity was complete. By the time of judgment, however, diversity was complete. The Supreme Court held the district court's failure in remanding a case was not fatal to the judgment obtained in district court when jurisdictional requirements were met at the time judgment is entered. Caterpiller, 519 U.S. at 64.

The *Caterpiller* case does not disturb the "time-of-filing rule" in any way. It addresses a completely different situation where a district court improperly fails to remand based on an

Complaint for Damages.

erroneous finding of diversity. Here, there was no diversity at the time of filing original complaint. Adding new defendants after Appellant moved to New Mexico is irrelevant here.

## C. Appellant Raises New Bases of Federal Jursdiction She Did Not Preserve in District Court.

Appellant's newly raised jurisdictional arguments are not preserved and meritless. Appellant raises other issues on appeal that were not considered by the District Court. "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so. *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000). A federal appellate court will not consider a claim or issue that was not raised in the proceedings below. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011).

### 1. 5th and 14th Amendments to U.S. Constitution

Appellant's Amended Complaint alleges violations of the Fifth and Fourteenth Amendment against the individual officials of the Department of Industrial Relations, not against AHS. (ER 56-58.) However, in the opening brief, Appellant appears to allege violations of the Fifth and Fourteenth Amendment against AHS. (AOB, p. 25.) Appellant cannot raise this issue in this appeal. and even had she alleged them against AHS, they fail as a matter of law.

The federal Constitution provides that no person shall be deprived of life, liberty or property without due process of law. U.S. Const. Am. XIV. The United States Supreme Court, in *Board of Regents of State Colleges v. Roth*, held that this guarantee of due process served to protect public employees from being deprived of a protected "property interest" in his or her employment in certain circumstances. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972); see also *Perry v. Sinderman*, 408 U.S. 593 (1972). Specifically, the Supreme Court held that, where a public employee has a "property right" or "property interest" in his or her continued employment. his or her employment may not be deprived without certain due process protections. *Roth*. 408 U.S. at 578.

Complaint for Damages.

A property right in continued employment exists where state or local laws, charters, ordinances, policies, contracts or agreements provide that the employee will only be disciplined or dismissed for "cause" or where the employer otherwise similarly limits its discretion to discipline or dismiss an employee. *Roth*, 408 U.S. 564, 576-578; *Skelly v. State Personnel Board*, 15 Cal. 3d 194, 207 (1975). Only "when a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a property interest protected by due process." *Skelly*, 15 Cal. 3d at 207 citing to *Goldbery v. Kelly*, 397 U.S. 254, 261-262 (1970).

Here, Appellant did not have property interest in her continued employment with AHS. Under the Local Health Care District Law, a hospital district's officers and employees "shall hold their offices or positions at the pleasure of the board of directors." Cal. Health & Safety Code § 32121. "Serving at pleasure" means one is an at-will employee who can be fired without cause. *Bogacki v. Board of Supervisors of Riverside County*, 5 Cal.3d 771, 783 (1971). A public employee serving at the pleasure of the appointing authority is, by the terms of his employment, subject to removal without judicially cognizable good cause. *Id.*

Additionally, there was no agreement or understanding between Appellant and AHS to indicate otherwise. She was not a member of the Union. Indeed, one her claims is the alleged denied affiliation to the Union.[6] (ER 33, 38.) Also, she was not considered a permanent employee because she had not completed the requisite probationary period. (ER 43, 45, 348, see also 93.) Accordingly, Appellant cannot raise any deprivation of due process claims, because she did not have a property interest in continued employment with AHS.

[6] During her employment with AHS, Monitor Technicians were not represented by the Union. (ER 376.)

### 2. Interstate Commerce

Appellant also includes "interstate commerce" in her list of issues she is raising on appeal. presumably to allege it somehow gives the Court federal question jurisdiction. (AOB. p. 36) Again. she did not raise it in her complaints and the District Court never made a finding on

Complaint for Damages.

1    it. Also, she does not now allege any claim based on "interstate commerce" to give rise to a

2    federal claim.

3

4    **D. No Supplemental Jurisdiction Exists Over State- Law Claims That Fail As A**

5    **Matter Of Law In Any Case.**

6    Appellant asserts the District Court can exercise supplemental jurisdiction over her state

7    claims. It cannot because there is no federal question or diversity of citizenship jurisdiction to

8    supplement.

9    If a court dismisses the federal claims for lack of subject matter jurisdiction pursuant to

10   Federal Rule of Civil Procedure 12(b)(1), the court has no authority to retain jurisdiction over

11   state law claims. *Scott v. Pasadena Unified Sch. Dist*., 306 F.3d 646, 664 (9th Cir. 2002). The

12   District Court ruled the lack of subject matter jurisdiction bars it from ruling on the state-law

13   claims asserted against AHS. (ER 26.)

14   Even though not properly before the Court, Appellant's state claims fail as a matter of

15   law in any event. AHS cannot violate the California Labor Code or Industrial Welfare

16   Commission Wage Order 2001-4 ("Wage Order 4"), because the alleged Labor Code provisions

17   and Wage Order 4 do not apply to public entities. Appellant's negligence, libel and fraud claims

18   also fail, because Appellant did not allege compliance with the California Government Claims

19   Act.

20   **1. The Labor Code Provisions Do Not Apply To Public Entities.**

21   Appellant claims AHS violated California Labor Code sections 201, 202, 203, 204,

22   227.3, 1194 and 98.6 when she she did not receive her final paycheck on the day of termination,

23   was not paid as a full-time employee and she was terminated in retaliation. (AOB, p. 20- 21.)

24   However, these Labor Code sections do not apply to AHS, because AHS is a public entity.

25   It is a settled question that the Labor Code sections governing meal breaks, rest periods,

26   and overtime requirements do not apply to public entities. The Court of Appeals in *Johnson v.*

27   *Arvin-Edison Water Storage District*, 174 Cal.App.4th 729 (2009) ("*Johnson*"), resolved this

28   question, addressing the exact same claims raised here. The plaintiff filed a class action

Complaint for Damages.

complaint alleging the water storage district violated the Labor Code and wage orders by failing to pay overtime and provide meal breaks. *Id*. at 733. The district demurred, arguing that public employees are not covered by the Labor Code's provisions, and that the wage order expressly excludes public entities from its meal and overtime rules. *Id*. The Johnson court analyzed the statutes and found the intent of the legislature to exclude public entities from Labor Code's meal break and rest period provisions was clear. *Id*. at 737; *see also Curcini v. County of Alameda*, 164 Cal.App.4th 629 (2008) and *California Correctional Peace Officers Association v. State of California*, 188 Cal.App.4th 646 (2010).

Following the courts' line of reasoning, Labor Code section 98.6 also would not apply to AHS. "[U]nless Labor Code provisions are specifically made applicable to public employers, the only apply to employers in the private sector." *Johnson, supra*, 174 Cal.App.4th at 733. The Legislature did not specifically state Labor Code section 98.6 applies to public employers.

Accordingly, the Labor Code sections Appellant alleges AHS violated are not applicable to public entities, and thus, Appellant's Labor Code claims fail as a matter of law.

## 2. Industrial Wage Commission Order Excludes Public Entities.

Appellant also continues to assert the Industrial Welfare Commission Wage Order 2001-4 ("Wage Order 4") applies to public employers and she did nto receive overtime payment. (AOB, p. 21.) The Industrial Wage Commission was the state agency authorized to formulate the wage orders that govern employment in California. *Industrial Welfare Commission vs. Superior Court*, 27 Cal.3d 690, 700 (1980). In *California Correctional Peace Officers Association v. State of California*, 188 Cal.App.4th 646 (2010), the court rejected arguments that the IWC Orders applied to public employees. *Id*. at 656. The court based its ruling both on the language of the wage orders and the fact that "[i]t is well established that public employees have historically been exempt from IWC wage orders." *Id*.

## 3. Appellant Has Not Complied with the Claims Presentation Requirement Set Forth in Government Code Section 905.

Complaint for Damages.

Appellant also continues to allege tort claims of negligence, libel and fraud against AHS. (AOB, p. 20-21.) She makes bold assertions that "AHS lied to DIR that I expressed negligence to the patient; AHS lied that I can be transferred to a full time position only when it is available and I must be Union represented; AHS lied that I didn't receive my overtime payments because AHS was a public employer…" (AOB, p. 21.) Besides the apparent lack of factual support, it is clear her claims fail because she did not plead compliance with the claims presentation requirement pursuant to the California Government Claims Act.

An action for money damages may not be maintained against a public entity unless a written claim has first been timely presented to the defendant and rejected in whole or in part. Cal. Gov't. Code § 905. The complaint should allege the presentation and rejection of a claim, or excuse from the presentation requirement, in all actions to which the claims procedures apply. *Chase v. State*, 67 Cal.App.3d 808 (1977). If the plaintiff fails to include the necessary allegations, the complaint is subject to attack. *State vs. Superior Court*, 32 Cal.4th 1234, 1239 (2004). Here, Appellant did not, and cannot, allege compliance with the claims presentation requirement, and thus her tort claims fail as a matter of law.

Appellant asserts that AHS did not fulfill the requirements of Government Code section 53051 and Government Code section 946.4, regarding filing the Statement of Facts with the Secretary of State. (AOB, p. 24.) As discussed above, Alameda County Medical Center was created to be a hospital authority, a public agency, separate from the County of Alameda. Cal. Health & Safety § 101850, subd. (a)(2)(C). Alameda County Medical Center changed its name to Alameda Health System and always operated as a public agency. Sen. 1352, 2014 Reg. Sess. (Cal. 2014).

Alameda County Medical Center and Alameda Health System are the same entity and Appellant was required to comply with the claims presentation requirement to proceed with her state claims.

## IX. CONCLUSION

Complaint for Damages.

The District Court did not err in dismissing Appellant's action because the District Court has no subject matter jurisdiction over Appellant's claims. Appellant respectfully requests this Court to affirm the Judgment of dismissal.

Dated this 30th day of March 2018.

Respectfully submitted,

NARAYAN TRAVELSTEAD P.C.

/s/ Timothy C. Travelstead

Timothy C. Travelstead

Attorneys for Defendant - Appellee Alameda Health System."

59. On December 24, 2019, a three Judge Panel of the U.S. Court of Appeals for the 9th Circuit Ms. Rawlinson, Mr. Paez, and Mr. Huck issued an unpublished Memorandum in Appeal No. 17-16382, see (**ER 17-16382, Vol. 2, pages 1394-1398**),

"Tatyana Drevaleva (Drevaleva) appeals the dismissal of her complaint. We have jurisdiction under 28 U.S.C. § 1291 and review de novo. *See Steinle v. City and Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

1. As all parties consented to proceed before a magistrate judge, the magistrate judge was authorized to conduct any and all proceedings, up to and including dismissal. See 28 U.S.C. § 636(c)(1).

2. Because Drevaleva asserted no viable federal claims against Alameda Health System (AHS), a public agency, the district court lacked subject-matter jurisdiction. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). Drevaleva concedes that she cannot make a prima facie showing under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Her claims under the Fair Labor Standards Act (FLSA) and the Occupational Safety and Health Act (OSHA) were time-barred. AHS terminated Drevaleva in September, 2013, and she filed her complaint in December, 2016, outside the two-year statute of limitations for an FLSA claim and the thirty-day filing period for an OSHA claim. See 29 U.S.C. § 255(a) (FLSA); 29 U.S.C. § 660(c)(2) (OSHA). Neither the National Labor Relations Act nor

Complaint for Damages.

the Labor Management Relations Act applies to public entities such as AHS. See 29 U.S.C. § 152(2).

3. The district court lacked diversity jurisdiction over Drevaleva's claims against AHS because Drevaleva and AHS were both domiciled in California when she filed the complaint. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004).

4. As the district court lacked federal question and diversity jurisdiction over Drevaleva's claims against AHS, it did not abuse its discretion by declining to exercise supplemental jurisdiction over the state law claims asserted against AHS. *See Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 603, 619 (9th Cir. 2018).

5. Although the court had diversity jurisdiction to resolve Drevaleva's claims against the newly added defendants State Employees1 after her post-filing relocation to another state, she has disavowed due process claims under the Fifth and Fourteenth Amendments. Finally, absolute immunity and absolute privilege precluded any viable state law claims against the State Employees based on their official and discretionary acts related to investigation of Drevaleva's termination.

*See* Cal. Gov't Code § 820.2; *see also* Cal. Civ. Code § 47(a).

**AFFIRMED.**"

**Legal Standard.**

60. In this Complaint, I will follow the F.R.C.P. Rule 8(a),

"(a) Claim for Relief. A pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

Complaint for Damages.

I will only briefly describe each Cause of Action without getting into the detailed legal theories regarding each Cause of Action.

**61. Count No. 1.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal laws, 42 U.S.C. § 1985.

The AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho asserted that the U.S. District Court for the Northern District of California didn't have a subject-matter jurisdiction over my Original December 29, 2016 Complaint and over my Amended April 10, 2017 Complaint No. 3:16-cv-07414-LB. The AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho asserted that I hadn't pled any viable Federal claim in my both Original December 29, 2016 Complaint and in my Amended April 10, 2017 Complaint No. 3:16-cv-07414-LB.

**62. Count No. 2.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Using a State statute the California Health and Safety Code Section 101850 to prevent me from obtaining relief pursuant to the Federal laws the National Labor Relations Act (the N.L.R.A.) and the Labor-Management Relations Act (the L.M.R.A.), 42 U.S.C. § 1983.

The AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho kept claiming that the Alameda Health System was a "public entity" pursuant to the California Health and Safety Code Section 101850. Therefore, the AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho fraudulently prevented me from obtaining relief pursuant to the N.L.R.A. and the L.M.R.A. Please, notice that the HSC §101850 has no application on the status of the Alameda Health System as a "public entity" whatsoever.

**63. Count No. 3.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Complaint for Damages.

Fraud, Penal C. § 484; Civ. C. § 1572, conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal law Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1985.

Asserting that I could not state the elements of a Prima Facie Case in my Title VII Cause of Action at a pleading stage in violation of *Swierkiewicz v. Sorema, N.A.*, 534 US 506, 508 (2002) (quoting FRCP 8(a)(2)).

Please, notice that any Prima Facie Case is relevant only at the Summary Judgment stage and only after allowing the Parties to conduct Discovery.

**64. Count No. 4.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Fraud, Penal C. § 484; Civ. C. § 1572, conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal laws the National Labor Relations Act and the Labor-Management Relations Act, 42 U.S.C. § 1985.

Asserting that the Alameda Health System was a "public entity" without identifying that the Alameda Health System was a *local* Public Entity within the meaning of the California Government Code Sections 900.4, 53050, and 53051, and criminally concealing that the Alameda Health System was not a *State* Public Entity within the meaning of Government Code Section 900.6 (emphasis added.)

Criminally preventing me from obtaining relief pursuant to the Federal laws the National Labor Relations Act and the Labor-Management Relations Act.

**65. Count No. 5.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Fraud, Penal C. § 484; Civ. C. § 1572, conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal laws the Fair Labor Standards Act and the Occupational Health and Safety Act. Asserting that my F.L.S.A. and O.H.S.A. claims were time barred.

Complaint for Damages.

In fact my F.L.S.A. and O.H.S.A. claims were not time barred because the Department of Industrial Relations, the Division of Labor Standards Enforcement investigated my retaliation and unlawful termination claim for 3 years and 4 months. I had a right to file a lawsuit only after the DIR/DLSE issued a Determination on my retaliation and unlawful termination claim, see the Norris-LaGuardia Act or 29 U.S.C. § 108 - Noncompliance with obligations involved in labor disputes or failure to settle by negotiation or arbitration as preventing injunctive relief

"No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

(*Mar. 23, 1932, ch. 90, § 8, 47 Stat. 72.*)"

**66. Count No. 6.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Fraud, Penal C. § 484; Civ. C. § 1572, conspiracy, 42, U.S.C. § 1985, unlawful and criminal appearance of the Narayan Travelstead Professional Law Corporation and Attorneys Mr. Travelstead and Ms. Cho on behalf of Defendant the Alameda Health System in my both Original December 29, 2016 and my Amended April 10, 2017 Complaints No, 3:16-cv-07414-LB without obtaining Consent of Defendant the Alameda Health System for legal representation.

**67. Count No. 7.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, Attorney Mr. Travelstead, and Attorney Ms. Cho.

Fraud, Penal C. § 484; Civ. C. § 1572, conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal laws the National Labor Relations Act and the Labor-Management Relations Act, 42 U.S.C. § 1985.

Complaint for Damages.

Lifting the *local* Public Entity the Alameda Health System up to the level of the *State* Public Entities. Intentionally and maliciously citing the irrelevant case laws that were against the *State* Public Entities (emphasis added):

1) **(ER 07414 Vol. 4, page 632, lines 4-5)** *Johnson v. Arvin-Edison Water Storage District*, 174 Cal.App.4th 729 (2009)

2) **(ER 07414 Vol. 4, page 632, lines 13-14)** *Wells v. One2One Learning Foundation*, 39 Cal.4th 1164, 1191 (2006) ( a lawsuit against the public school district)

3) **(ER 07414 Vol. 4, page 632, lines 17-18)** *Pasadena Police Officers Association v. City of Pasadena*, 51 Cal.3d 564 (1990)

4) **(ER 07414 Vol. 4, page 632, lines 24-25)** *Curcini v. County of Alameda*, 164 Cal.App.4th 629 (2008)

5) **(ER 07414 Vol. 4, page 633, lines 2-3)** and **(ER 07414 Vol. 4, page 633, lines 16-17)** *California Correctional Peace Officers Association v. State of California*, 188 Cal.App.4th 646 (2010)

6) **(ER 07414 Vol. 4, page 633, lines 15-16)** *Industrial Welfare Commission vs. Superior Court*, 27 Cal.3d 690, 700 (1980)

7) **(ER 17-16382, Vol. 1, page 1031)** *Santa Clara Valley Transportation Authority v. Rea*, 140 Cal.App.4th 1303, 1308 (2006.)

**68. Count No. 8.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, and Attorney Mr. Travelstead.

Libel about the reasons of the termination of my employment, the California Labor Code, Sections 1050-1054. Conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal laws, 42 U.S.C. § 1985.

Please, notice that during the litigation of my both Original December 29, 2016 and Amended April 10, 2017 Complaints Attorneys Mr. Travelstead and Ms. Cho didn't say that I had been fired from the Alameda Health System for committing medical negligence towards the patient and/or for a poor professional performance.

Complaint for Damages.

However, during the litigation of my Appeal No 17-16382 at the 9th Circuit, Attorney Mr. Travelstead criminally and maliciously lied about the reasons of the termination of my employment from the Alameda Health System, and he wrote that I had been fired from the Alameda Health System for poor professional performance and for being involved in an incident where the patient's safety was compromised.

Please, read (**ER 17-16382, Vol. 1, page 1022**), "Shortly after Appellant was hired at AHS as a Monitor Technician, AHS found she was involved in an incident in which the safety a patient was compromised. AHS released from her probationary status for her poor performance, not for any complaints about her working terms and conditions."

Please, read (**ER 17-16382, Vol. 1, page 1024**), "AHS hired Appellant as a Monitor Technician on April 1, 2013. (ER 33.) Shortly after Appellant was hired, she was involved in an incident in which the safety a patient was compromised while she was performing her duties. (ER 41, 351-3543.) AHS investigated the incident and interviewed Appellant on three separate occasions. (ER 354.) On September 4, AHS decided to release Ms. Drevaleva from her employment at AHS. (ER 44, 369.) On September 7, 2013, AHS sent Appellant a letter informing her that her employment with AHS was ending due to the "discrepancies between acceptable employment standards and those [she] exhibited during [her] employment." (ER 38.)"

**69. Count No. 9.** Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation. and Attorney Mr. Travelstead.

Conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal law the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1985.

Please, read Mr. Travelstead's March 30, 2018 Answering Brief (ER 17-16382, Vol. 1, pages 1038-1040),

"**1. 5th and 14th Amendments to U.S. Constitution**

Appellant's Amended Complaint alleges violations of the Fifth and Fourteenth Amendment against the individual officials of the Department of Industrial Relations. not against AHS. (ER 56-58.) However. in the opening brief. Appellant appears to allege violations of the

Complaint for Damages.

1    Fifth and Fourteenth Amendment against AHS. (AOB, p. 25.) Appellant cannot raise this issue in

2    this appeal, and even had she alleged them against AHS, they fail as a matter of law.

3         The federal Constitution provides that no person shall be deprived of life, liberty or

4    property without due process of law. U.S. Const. Am. XIV. The United States Supreme Court, in

5    *Board of Regents of State Colleges v. Roth*, held that this guarantee of due process served to

6    protect public employees from being deprived of a protected "property interest" in his or her

7    employment in certain circumstances. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564

8    (1972); see also *Perry v. Sinderman*, 408 U.S. 593 (1972). Specifically, the Supreme Court held

9    that, where a public employee has a "property right" or "property interest" in his or her

10   continued employment, his or her employment may not be deprived without certain due process

11   protections. *Roth*, 408 U.S. at 578.

12        A property right in continued employment exists where state or local laws, charters,

13   ordinances, policies, contracts or agreements provide that the employee will only be disciplined

14   or dismissed for "cause" or where the employer otherwise similarly limits its discretion to

15   discipline or dismiss an employee. *Roth*, 408 U.S. 564, 576-578; *Skelly v. State Personnel Board*,

16   15 Cal. 3d 194, 207 (1975). Only "when a person has a legally enforceable right to receive a

17   government benefit provided certain facts exist, this right constitutes a property interest protected

18   by due process." *Skelly*, 15 Cal. 3d at 207 citing to *Goldbery v. Kelly*, 397 U.S. 254, 261-262

19   (1970).

20        Here, Appellant did not have property interest in her continued employment with AHS.

21   Under the Local Health Care District Law, a hospital district's officers and employees "shall

22   hold their offices or positions at the pleasure of the board of directors." Cal. Health & Safety

23   Code § 32121. "Serving at pleasure" means one is an at-will employee who can be fired without

24   cause. *Bogacki v. Board of Supervisors of Riverside County*, 5 Cal.3d 771, 783 (1971). A public

25   employee serving at the pleasure of the appointing authority is, by the terms of his employment,

26   subject to removal without judicially cognizable good cause. *Id.*

27        Additionally, there was no agreement or understanding between Appellant and AHS to

28   indicate otherwise. She was not a member of the Union. Indeed, one her claims is the alleged

Complaint for Damages.

1    denied affiliation to the Union.[6] (ER 33, 38.) Also, she was not considered a permanent

2    employee because she had not completed the requisite probationary period. (ER 43, 45, 348, see

3    also 93.) Accordingly, Appellant cannot raise any deprivation of due process claims, because she

4    did not have a property interest in continued employment with AHS.

5        [6] During her employment with AHS, Monitor Technicians were not represented by the

6    Union. (ER 376.)"

7

8        **70. Count No. 10.** Against the Alameda Heath System, the Narayan Travelstead

9    Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

10       Racketeering activity within the meaning of the R.I.C.O. or 18 U.S.C. § 1962(a) and

11   criminally preventing me from obtaining relief in a Federal Court in my both Original December

12   29, 2016 and Amended April 10, 2017 Complaints and in the U.S. Court of Appeals for the 9th

13   Circuit in a form of getting reinstated back to work at the Alameda Health System and being

14   awarded with a full amount of my lost salary and benefits as a result of retaliation and unlawful

15   termination of my full time employment from the Alameda Health System on September 07,

16   2013.

17

18       **71. Count No. 11.** Against the Alameda Heath System, the Narayan Travelstead

19   Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

20       Slavery and involuntary servitude in violation of the Thirteenth Amendment to the U.S.

21   Constitution.

22       Because I was fired from the AHS, I was coerced to work as a Caregiver taking care of

23   elderly physically and mentally disabled people. This is slavery and involuntary servitude in

24   violation of the Thirteenth Amendment to the U.S. Constitution.

25

26       **72. Count No. 12.** Against the Alameda Heath System, the Narayan Travelstead

27   Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

28

Complaint for Damages.

1    Cruel and unusual punishment in violation of the Eighth Amendment to the U.S.
2    Constitution.

3    I was fired from the AHS for asking questions about unpaid wages, unsafe working
4    conditions, missed breaks, the denial of my affiliation to the Union, and for asking to transfer me
5    to a full time job because I was actually working full time.

6    The AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho prevented me from
7    getting reinstated back to work at the Alameda Health System.

8    The AHS, the NTPC, and Attorney Mr. Travelstead accused me in committing medical
9    negligence towards the patient.

10   This is a cruel and unusual punishment in violation of the Eighth Amendment to the U.S.
11   Constitution.

12

13   **73.  Count No. 13.** Against the Alameda Heath System, the Narayan Travelstead
14   Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

15   Deprivation of Liberty and Property in violation of the Substantive Due Process Clause
16   of the Fourteenth Amendment to the U.S. Constitution. Conspiracy that was aimed to preventing
17   me in obtaining relief pursuant to the Substantive Due Process Clause of the Fourteenth
18   Amendment to the U.S. Constitution, 42 U.S.C. § 1985.

19   The AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho prevented me from
20   getting reinstated back to work at the Alameda health System and geing awarded with a full
21   amount of my ;ost salary and benefits as a result of retaliation and unlawful termination of my
22   employment from the Alameda Health System on September 07, 2013.

23   As a result, I lost income, and I lost the property that I could have purchased if I were
24   employed by the Alameda Health System and if I were timely reinstated back to work at the
25   Alameda Health System.

26

27   **74.  Count No. 14.** Against the Alameda Heath System, the Narayan Travelstead
28   Professional Law Corporation, and Attorney Mr. Travelstead.

Complaint for Damages.

Using the State statute the Cal. Health & Safety Code § 32121 with a goal to prevent me from obtaining relief pursuant to the Federal laws the 5th and the 14th Amendments to the U.S. Constitution, 42 U.S.C. § 1983. Civil Conspiracy that was aimed to prevent me from obtaining relief pursuant to the Federal laws the 5th and the 14th Amendments to the U.S. Constitution, 42 U.S.C. § 1985.

Please, read Mr. Travelstead's March 30, 2018 Answering Brief (ER 17-16382, Vol. 1, page 1039), "Here, Appellant did not have property interest in her continued employment with AHS. Under the Local Health Care District Law, a hospital district's officers and employees "shall hold their offices or positions at the pleasure of the board of directors." Cal. Health & Safety Code § 32121. "Serving at pleasure" means one is an at-will employee who can be fired without cause. *Bogacki v. Board of Supervisors of Riverside County*, 5 Cal.3d 771, 783 (1971). A public employee serving at the pleasure of the appointing authority is, by the terms of his employment, subject to removal without judicially cognizable good cause. *Id.*"

**75. Count No. 15**. Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

Intentional Infliction of Emotional Distress.

Preventing me from obtaining relief in the U.S. District Court for the Northern District of California and in the 9th Circuit. Preventing me from getting reinstated back to work at the Alameda Health System and being awarded with a full amount of my lost salary and benefits as a result of retaliation and unlawful termination of my employment from the Alameda Health System on September 07, 2013.

**76. Count No. 16**. Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

The Intentional Interference with a Prospective Economic Advantage.

Preventing me from obtaining relief in the U.S. District Court for the Northern District of California and in the 9th Circuit. Preventing me from getting reinstated back to work at the

Complaint for Damages.

Alameda Health System and being awarded with a full amount of my lost salary and benefits as a result of retaliation and unlawful termination of my employment from the Alameda Health System on September 07, 2013.

**77. Count No. 17**. Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

Loss of Consortium.

Preventing me from obtaining relief in the U.S. District Court for the Northern District of California and in the 9th Circuit. Preventing me from getting reinstated back to work at the Alameda Health System and being awarded with a full amount of my lost salary and benefits as a result of retaliation and unlawful termination of my employment from the Alameda Health System on September 07, 2013.

**78. Count No. 18**. Against the Alameda Heath System, the Narayan Travelstead Professional Law Corporation, and Attorneys Mr. Travelstead and Ms. Cho.

Harassment, C.C.P. § 527.6

Preventing me from obtaining relief in the U.S. District Court for the Northern District of California and in the 9th Circuit. Preventing me from getting reinstated back to work at the Alameda Health System and being awarded with a full amount of my lost salary and benefits as a result of retaliation and unlawful termination of my employment from the Alameda Health System on September 07, 2013.

**79. Prayer for Relief.**

80. I am demanding a Jury trial.

81. I am demanding to be reinstated back to work at the Alameda Health System and to receive all my lost salary and benefits as a result of retaliation and unlawful termination of my employment from the AHS in 2013.

Complaint for Damages.

82. The AHS terminated my employment in 2013 that is over 8.5 years ago. For all this time, I've been deprived of the basic needs. I was unemployed and underemployed. I was subjected to slavery and involuntary servitude, I was subjected to a cruel and unusual punishment, I didn't have a permanent place of living, I didn't have health insurance, I didn't have a car, I didn't have an opportunity to get a better paid job, and I didn't have an opportunity to study.

83. For the purpose of this pleading, I will not describe a full range of the damages that I am demanding. I will only cite the case law *Juarez v. AutoZone Stores, Inc.,* Case No. 08-CV-00417-WVG (S.D. Cal. Nov. 17, 2014) that was a court case in the United States District Court for the Southern District of California which is believed to be the largest single-plaintiff employment verdict in United States history at $185,872,719.52.

84. Because both the AHS, the NTPC, and Attorneys Mr. Travelstead and Ms. Cho prevented me from obtaining relief pursuant to the Federal laws, I am demanding two hundred and fifty million dollars from the Alameda Health System and two hundred and fifty million dollars from the Narayan Travelstead Professional law Corporation.

85. I am also demanding additional two hundred and fifty million dollars from Attorney Mr. Timothy C. Travelstead for criminally and maliciously preventing me from obtaining relief pursuant to the Federal laws in my Original December 29, 2016 and my Amended April 10, 2017 Complaints No. 3:16-cv-07414-LB and in Appeal No. 17-16382.

86. I am demanding ten million U.S. dollars from Attorney Ms. Julie Cho for criminally and maliciously preventing me from obtaining relief pursuant to the Federal laws in my Original December 29, 2016 and my Amended April 10, 2017 Complaints No. 3:16-cv-07414-LB.


**Verification.**

I, a Pro Se Plaintiff Tatyana Drevaleva, am a Party to this action. I have prepared and read the foregoing pleading and know its contents. The facts alleged in the pleading are within my own knowledge and I know these facts to be true.

Complaint for Damages.

I declare under penalty of perjury and under the Federal laws that the foregoing is true and correct and that this verification was executed on this 30th day of March 2022 at San Francisco, California. Respectfully submitted,

Date: March 30, 2022                    Sign Name:

Print Name:  Tatyana E. Drevaleva

Complaint for Damages.